UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAUI JIM, INC., | ) |
|     Plaintiff and Counterclaim Defendant, | ) ) ) ) |
|     v. | )   No. 1:16 CV 9788 )   Hon. Marvin E. Aspen |
| SMARTBUY GURU ENTERPRISES, MOTION GLOBAL LTD., SMARTBUYGLASSES SOCIETA A RESPONSABILITA LIMITATA, SMARTBUYGLASSES OPTICAL LIMITED, | ) ) ) ) ) ) |
|     Defendants and Counterclaimants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Plaintiff and Counterclaim Defendant Maui Jim, Inc.'s ("Maui Jim") motion to dismiss Defendants and Counterclaimants SmartBuy Guru Enterprises, Motion Global Ltd., SmartBuyGlasses Societá a Responsabilitá Limitata, and SmartBuyGlasses Optical Limited's (collectively "SmartBuyGlasses") counterclaims. (Dkt. No. 44.) For the reasons stated below, we grant Maui Jim's motion in part and deny it in part.

## BACKGROUND

At the motion to dismiss stage, we accept all well-pleaded factual allegations in the counterclaim as true and draw all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). Maui Jim is a designer, manufacturer, and provider of prescription and non-prescription sunglasses. (Compl. (Dkt. No. 1) ¶ 15.) SmartBuyGlasses is an online retailer of luxury designer eyewear. (Counterclaim

(Dkt. No. 20) ¶ 14.)[1]  It sells products from more than 180 designer brands, including Maui Jim, on its websites in 30 countries. (*Id.* ¶¶ 14, 17.)  SmartBuyGlasses alleges it "neither purchases nor sells to consumers eyewear that is not new or genuine." (*Id.* ¶ 16.)  It notifies customers that it is an independent retailer, and is not affiliated with the brands it sells unless it states otherwise. (*Id.*)  It further asserts that all trademarks and brand names shown on its website "are the property of their respective companies which retain all rights." (*Id.*)

SmartBuyGlasses alleges it procures genuine Maui Jim sunglasses primarily through European affiliates and distributors that purchase directly from Maui Jim. (*Id.* ¶ 18.)  It contends that its distribution channel "is not unknown to Maui Jim," as the executive leadership at Maui Jim has been aware of SmartBuyGlasses' supply chain since at least 2011. (*Id.*) SmartBuyGlasses further alleges it partners with at least one authorized distributor of Maui Jim sunglasses for its online sales. (*Id.*)  Maui Jim never objected to its supply chain or otherwise questioned its authorization to procure Maui Jim sunglasses through its partners. (*Id.* ¶¶ 19–21.)

Maui Jim brought suit against SmartBuyGlasses on October 17, 2016, asserting claims of trademark counterfeiting and infringement, unfair competition, false advertising, and trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.* (Counts I–III); copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* (Count IV); and unfair trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 5/10, *et seq.* (Count V). (Compl. ¶¶ 71–107.)  Maui Jim alleges the SmartBuy entities have never been authorized retailers of Maui Jim sunglasses, yet they sold and offered for sale counterfeit sunglasses under Maui Jim's trademarks. (*Id.* ¶ 2.)  Maui Jim

---

[1] In its counterclaim, SmartBuyGlasses does not allege the relationship between the various SmartBuy entities.  Maui Jim's complaint includes allegations regarding the role of the various entities, but the allegations are disputed. (*See* Answer ¶¶ 7–10.)

contends SmartBuyGlasses "significantly alter[s] Plaintiff's genuine sunglasses by replacing the lenses—an integral part of sunglasses—with Defendants' own, lesser quality prescription lenses and offer[s] the counterfeit prescription sunglasses for sale under Plaintiff's registered marks, without Plaintiff's authorization." (*Id.*)

SmartBuyGlasses answered the complaint on March 3, 2017 and set forth 13 affirmative defenses. (Defs.' Answer, Affirmative Defenses, and Counterclaim (Dkt. No. 20).) SmartBuyGlasses also asserted counterclaims for unfair competition in violation of the UDTPA (Count I) and Illinois Consumer Fraud and Deceptive Practices Act ("CFA"), 815 ILCS § 505/1, *et seq.* (Count II); trade disparagement (Count III); trademark misuse (Count VII); and in the alternative, unjust enrichment (Count VIII). (Counterclaim ¶¶ 36–56, 71–81.) In addition, SmartBuyGlasses asserted declaratory judgment counterclaims for copyright invalidity (Count IV), non-infringement of copyrights (Count V), and non-infringement of trademarks (Count VI). (*Id.* ¶¶ 57–70.)

SmartBuyGlasses does not contest that it sells Maui Jim prescription sunglasses without the genuine Maui Jim prescription lenses. (*Id.* ¶ 24.) Instead, SmartBuyGlasses asserts that "[e]ach customer purchasing Maui Jim prescription sunglasses from SmartBuyGlasses received 100% genuine Maui Jim frames and the genuine Maui Jim non-prescription lenses that came with the frame," and the "customers also received prescription lenses fabricated through SmartBuyGlasses by a premium optical laboratory." (*Id.*) SmartBuyGlasses alleges customers are expressly advised regarding the lenses before they make their purchase, and its customers "were never promised prescription lenses through Maui Jim." (*Id.* ¶ 25.) Instead, SmartBuyGlasses informed customers about its "prescription lens program," which states that the prescription lenses are made by "premium lens producer Essilor as well as our premium

3

quality house brands." (*Id.*) SmartBuyGlasses alleges that "[l]ike the non-prescription sunglasses, the Maui Jim prescription sunglasses SmartBuyGlasses sold to its customers were absolutely authentic." (*Id.* ¶ 23.)

SmartBuyGlasses alleges it brings its counterclaims "to expose and rectify Maui Jim's ongoing illegal campaign to stifle competition." (Counterclaim ¶ 1.) According to SmartBuyGlasses, Maui Jim "seeks to eradicate lawful competition and monopolize control over its worldwide supply chain, allowing it to illegally prop up prices of its eyewear," calling the instant litigation "integral to such efforts." (*Id.* ¶ 2.) SmartBuyGlasses further alleges Maui Jim's efforts to stifle competition from discount retailers include "the fabrication of baseless intellectual property claims against SmartBuyGlasses coupled with a xenophobic propaganda campaign that disparages SmartBuyGlasses' business by falsely asserting that they are counterfeiters." (*Id.* ¶¶ 2, 28–29.) In furtherance of its efforts, SmartBuyGlasses alleges Maui Jim issued a press release dated January 23, 2017, "in which it publicized false allegations that comprise its complaint, adding false and disparaging commentary from its Vice President of Global Marketing." (*Id.* ¶ 34.) Specifically, Maui Jim's press release included the following statement from Jay Black, Maui Jim Vice President, Global Marketing:

> Companies that utilize these types of disingenuous and misleading sales practices undermine the integrity of the Maui Jim brand and the quality and technology it has come to represent . . . . This lawsuit was filed to protect our brand and the inherent value of its earned reputation, as well as our customers and our authorized retailers. We simply cannot allow our brand to be harmed by the sale of counterfeit or non-genuine Maui Jim products that do not live up to our—and most importantly our customers'—expectations.

(*Id.* ¶ 34; *see also* Press Release, Mem. in Support of Mot. to Dismiss, Ex. A (Dkt. No. 44–1) at 2–3.) SmartBuyGlasses alleges that as a result of the press release and Maui Jim's other actions, SmartBuyGlasses has been harmed in the marketplace. (*Id.* ¶ 35.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief may be granted. A motion to dismiss pursuant to Rule 12(b)(6) must be made before pleading if a responsive pleading is allowed. Fed. R. Civ. P. 12(b). "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Failure to state a claim upon which relief can be granted may be raised by motion under Rule 12(c). Fed. R. Civ. P. 12(h)(2)(B). We review a motion for judgment on the pleadings under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015); *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014).

We accept "the allegations in the complaint as true unless they are 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Katz-Crank*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). The pleading must state a claim that is plausible on its face to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65). That is, while the plaintiff need not plead "detailed factual allegations,"

5

the counterclaim must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.

## ANALYSIS

### I. UDTPA, CFA, AND TRADE DISPARAGEMENT COUNTERCLAIMS

SmartBuyGlasses alleges that Maui Jim's complaint and in its January 23, 2017 press release constitute trade disparagement (Count III) and violate the UDTPA (Count I) and the CFA (Count II). (Counterclaim ¶¶ 36–56.) Maui Jim argues the counterclaims must be dismissed because its conduct in filing a lawsuit is absolutely privileged under Illinois law. (Mem. in Support of Mot. to Dismiss ("Mem.") (Dkt. No. 44) at 5–6, 11.) Maui Jim also asserts SmartBuyGlasses has failed to state a claim upon which relief can be granted. (*Id.* at 6–10, 11–13.)

The UDTPA states that "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person . . . (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; (8) disparages the goods, services, or business of another by false or misleading representation of fact; . . . or (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(7), (8), (12). (*See also* Counterclaim ¶¶ 37–39.) SmartBuyGlasses alleges Maui Jim violated the UDTPA[2] by misrepresenting that SmartBuyGlasses "sold inferior and counterfeit versions of Maui Jim sunglasses when, in fact, SmartBuyGlasses sold genuine Maui Jim sunglasses with warranties

---

[2] The parties agree the analysis is the same for both the UDTPA and trade disparagement claims. (Mem. at 13; Resp. (Dkt. No. 56) at 14.) *See also Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 710 (N.D. Ill. 2006). ("Illinois state courts have held that, in effect, the UDTPA codified the common law tort of commercial disparagement." (citing *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 876, 385 N.E.2d 714, 719 (1st Dist. 1978)).

better than the product warranties Maui Jim issued." (Counterclaim ¶ 37.) SmartBuyGlasses also alleges Maui Jim improperly "disparaged the goods and services of SmartBuyGlasses by falsely representing that SmartBuyGlasses sold counterfeit and inferior products," and "created a likelihood of confusion or misunderstanding as to the quality and authenticity of Maui Jim products that SmartBuyGlasses offered." (*Id.* ¶¶ 38–39.)

SmartBuyGlasses also alleges Maui Jim violated the CFA. "The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17, 775 N.E.2d 951, 960 (Ill. 2002). "To state a claim under the Act, a plaintiff must allege: '(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce.'" *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 954 (N.D. Ill. 2016) (quoting *Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (Ill. 2002); *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 24, 988 N.E.2d 168, 176. SmartBuyGlasses asserts Maui Jim violated the CFA because it "misled consumers into believing that products purchased directly through Maui Jim were superior to those purchased through SmartBuyGlasses." (Counterclaim ¶ 44.) In addition, SmartBuyGlasses alleges Maui Jim "fraudulently misrepresented to the public, through its baseless litigation and false press release (among other things), that SmartBuyGlasses was a counterfeiter to induce customers to purchase from Maui Jim directly." (*Id.*) It alleges Maui Jim's "malicious and willful" actions constitute unfair competition and have caused damage. (*Id.* ¶¶ 45–46.)

### A. Absolute Litigation Privilege

Maui Jim first argues SmartBuyGlasses' trade disparagement, UDTPA, and CFA counterclaims are barred by Illinois' absolute litigation privilege to the extent they are based on the allegations asserted in Maui Jim's complaint.[3] (Mem. at 5–6, 11; Reply at 2–4.) SmartBuyGlasses responds that the absolute litigation privilege is limited to claims for defamation, false light, and invasion of privacy—none of which are alleged here. (Resp. at 3.)

"In essence, the absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litigation." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process. *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983); *Junction Sols., LLC v. MBS Dev, Inc.*, No. 06 C 1632, 2007 WL 4234091, at *5 (N.D. Ill. Nov. 20, 2007); *PSN Ill., Inc. v. Ivoclar Vivadent, Inc.*, No. 04 C 7232, 2005 WL 2347209, at *5–6 (N.D .Ill. Sept. 21, 2005). Consequently, "misrepresentations made in the course of prosecuting a meritless lawsuit do not give rise to a cause of action at common law or under the [CFA] or UDTPA because of the litigation privilege, Illinois's 'absolute privilege protect[ing] anything said or written in a legal proceeding.'" *Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, No. 15 C 3702, 2015 WL 5934834, at *16 (N.D. Ill. Oct. 12, 2015)

---

[3] The parties agree that insofar as SmartBuyGlasses' counterclaims rest on Maui Jim's January 23, 2017 press release, the privilege does not apply. (Reply at 4, n.1; Resp. at 4). *See Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) ("[J]udicial proceeding immunity extends only to the complaint itself. Statements concerning []judicial proceedings are no longer privileged once given to third parties such as the media, and therefore the press release would not receive privilege under this theory." (internal quotations omitted)); *Lykowski v. Bergman*, 299 Ill App. 3d 157, 165, 700 N.E.2d 1064, 1071 (1st Dist. 1998) (finding the litigation privilege does not extend to statements made to third parties).

(quoting *Skopp v. First Fed. Sav. of Wilmette*, 189 Ill. App. 3d 440, 447, 545 N.E.2d 356, 360 (1st Dist. 1989)); *see also Ivoclar*, 2005 WL 2347209, at *5–6 (dismissing ICFA unfair competition claim that was "based on the defendant's improper use of litigation as a means of competition").

SmartBuyGlasses argues in response that the privilege applies primarily to claims of defamation, false light, and invasion of privacy. *See, e.g.*, *Conditioned Ocular*, 458 F. Supp. 2d at 708. However, Illinois courts have clarified that the absolute litigation privilege applies outside the context of such claims. *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 16, 7 N.E.3d 52, 56 (explaining Illinois courts have not "specifically discussed" whether absolute immunity extends to claims other than defamation, but finding "the absolute privilege would be meaningless if a simple recasting of the cause of action could void its effect"). The majority of courts in this District agree. *See Rosales v. Weltman, Weinberg & Reis Co.*, No. 15 C 06943, 2017 WL 1436957, at *5 (N.D. Ill. Apr. 24, 2017) (collecting cases and agreeing "with the majority rule that [an] ICFA claim is barred by the litigation privilege under Illinois law, because the only claims for a wrongful lawsuit are malicious prosecution and abuse of process"). This conclusion is further supported by the policy justifications for immunity. Absolute immunity "is based upon the public interest in according to all . . . the utmost freedom of access to the courts of justice for the settlement of their private disputes." Restatement (Second) of Torts § 587, cmt. a (1977); *see also Lyddon v. Shaw*, 56 Ill. App. 3d 815, 821–22, 372 N.E.2d 685, 690 (2d Dist. 1978) ("Free access to the courts as a means of settling private claims or disputes is a fundamental component of our judicial system, and courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights. . . . This same public interest demands that

we reject any effort to extend the tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process." (internal quotations omitted)). Accordingly, insofar as SmartBuyGlasses' claims are based on allegedly false statements and misrepresentations Maui Jim made in its complaint and in litigating its lawsuit, such conduct cannot give rise to liability under Illinois law. *Havoco*, 702 F.2d at 647; *Lyddon*, 56 Ill. App. 3d at, 821–22, 372 N.E.2d at 690.

### B. Connection to Illinois

SmartBuyGlasses' counterclaims must be dismissed in their entirety for an additional reason. To raise a claim under the UDTPA or CFA, "the circumstances that relate to the disputed transaction [must] occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187, 835 N.E.2d 801, 854 (Ill. 2005); *see also IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 807 (N.D. Ill. 2016) ("Although the [U]DTPA does not contain text expressly confining its application to events or circumstances arising in Illinois, there is a 'long-standing rule of construction in Illinois which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" (quoting *Avery*, 216 Ill. 2d at 184, 835 N.E.2d at 854)); *Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *10 (N.D. Ill. Sept. 22, 2014) (collecting cases applying the reasoning in *Avery* to UDTPA claims); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011) (holding the rule stated in *Avery* applies to the UDTPA as well as to the CFA). There is "no single formula or bright-line test" for determining whether a transaction occurs within Illinois. *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 854; *accord Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App. 3d 53, 58, 865 N.E.2d 310, 315 (1st Dist. 2007). Several factors, however,

are relevant to determining whether a transaction occurred "primarily and substantially" in Illinois: "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Specht v. Google, Inc.,* 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009); *see also In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 2623, 2005 WL 3077606, at *1 (N.D. Ill. Nov. 14, 2005).

At this stage, we look to whether the allegations of the counterclaim are factually sufficient such that one could plausibly conclude that the circumstances that relate to the allegedly fraudulent transaction occurred primarily and substantially in Illinois. *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008). First, it is undisputed that none of the SmartBuy entities are residents of Illinois. (Counterclaim ¶¶ 9–12.) Rather, each entity is a foreign business organized and with principal places of business in the Cayman Islands, Hong Kong, or Italy. (*Id.*) Aside from Illinois being Maui Jim's principle place of business and the location where this lawsuit was filed—both of which are insufficient alone to establish an Illinois connection—the counterclaim is devoid of allegations connecting Maui Jim's alleged actions to Illinois. *Avery*, 216 Ill. 2d at 189, 835 N.E.2d at 855 (holding claims of non-Illinois plaintiffs insufficient where the only connection to Illinois is the headquarters of the defendant and the fact that a scheme "was disseminated" from Illinois); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 782 (N.D. Ill. 2011) (dismissing claim where "Illinois is implicated only because [one defendant] is headquartered in Illinois," despite the fact it was alleged to have carried out its part of the deceptive conduct there); *Phillips*, 372 Ill. App. 3d at 58, 865 N.E.2d at 315 ("The fact that a scheme to defraud was disseminated from a company's headquarters in Illinois is insufficient."). Furthermore, a plaintiff's claims are insufficient to

state a claim under the UDTPA where, as here, the plaintiff "exclusively offers evidence of . . . nationwide, as opposed to Illinois-specific, conduct." *LG Elecs.*, 809 F. Supp. 2d at 862.

SmartBuyGlasses nevertheless argues "the misrepresentation was about an Illinois proceeding," and "it is likely that the press release actually originated from Maui Jim's corporate headquarters in Illinois." (Resp. at 9.) However, the press release states it was issued from Maui Jim's business location in Lahaina, Hawaii, and there are no allegations in the counterclaim establishing any connection between the press release or the complaint and any Illinois transaction. (Press Release at 2.) Where the complaint and press release were drafted may be a relevant factor in determining the location of the transaction, but in this case, on the face of the counterclaim, SmartBuyGlasses has not alleged any such connection to Illinois, and the press release indicates it originated in Hawaii. *Avery*, 216 Ill.2d at 187, 835 N.E.2d at 854. SmartBuyGlasses' assertion that it is "likely" the press release originated from Illinois is pure speculation.

Nor does the counterclaim contain allegations permitting a plausible inference that SmartBuyGlasses has suffered any damage in Illinois. (*See* Counterclaim ¶¶ 35, 41, 46 (alleging broadly that SmartBuyGlasses has been damaged "in the marketplace").) Likewise, the counterclaim is devoid of allegations indicating SmartBuyGlasses communicated with Maui Jim in Illinois. "Out-of-state plaintiffs 'have no cognizable cause of action under the Consumer Fraud Act' where 'the overwhelming majority of the circumstances' pertaining to their claims took place outside Illinois." *Phillips*, 372 Ill. App. 3d at 58–59, 865 N.E.2d at 316. Accordingly, SmartBuyGlasses has not alleged facts that, if true, establish a factual nexus with Illinois as required to entitle it to relief under the UDTPA or CFA. *Id.*; *In re Sears Roebuck*, 2005 WL 3077606, at *2. Therefore, Claims I, II, and III are dismissed, without prejudice.

## II. TRADEMARK MISUSE COUNTERCLAIMS

In Count VII, SmartBuyGlasses alleges Maui Jim engaged in trademark misuse by asserting "unfounded" and "objectively baseless" claims of trademark infringement "brought in bad faith" against SmartBuyGlasses. (Counterclaim ¶¶ 72–73.) SmartBuyGlasses further alleges Maui Jim's infringement allegations constitute anti-competitive behavior and attempt to impermissibly broaden its rights in its registered marks. (*Id.* ¶ 73.) As a result, SmartBuyGlasses argues it is entitled to recover attorney fees and costs pursuant to 15 U.S.C. § 1117(a) for defending against Maui Jim's "baseless claims under the Lanham Act." (*Id.* ¶ 77.)

In response, Maui Jim contends trademark misuse is not a cognizable affirmative claim. (Mem. at 13.) "Unclean hands, or trademark misuse, is purely an affirmative defense and does not form the basis for an affirmative claim for recovery." 6 McCarthy on Trademarks and Unfair Competition § 31:44 (5th ed.); *see also Arcadia Grp. Brands Ltd. v. Studio Moderna SA*, No. 10 C 7790, 2011 WL 3584469, at *4 (N.D. Ill. Aug. 15, 2011) (dismissing a trademark misuse claim because its proponent failed to show it "is a recognized affirmative claim or that such a claim should be recognized in this case"); *Nw. Corp. v. Gabriel Mfg. Co.*, No. 95 C 2004, 1998 WL 525431, at *8 (N.D. Ill. Aug. 19, 1998) (observing the "fragmented case history" concerning trademark misuse claims and concluding it is a "phantom defense" whose existence the court is "reticent to even acknowledge"); *Juno Online Servs., L.P. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 687–91 (N.D. Ill. 1997) (rejecting affirmative claim of trademark misuse as lacking precedent).

In response, SmartBuyGlasses acknowledges there is "conflicting case law" regarding whether trademark misuse may be asserted as an affirmative claim, but it argues we should delay

decision on the matter until summary judgment.  (Resp. at 14–15.)  In support, SmartBuyGlasses relies on a single non-precedential decision that likewise observes "the novelty of the cause of action" but allowed discovery to proceed nonetheless.  *See McGuire v. Regents of Univ. of Mi.*, No. 2:99 C 1231, 2000 WL 1459435, at *6 (S.D. Ohio Sept. 21, 2000).  We find the weight of authority dismissing affirmative trademark misuse claims as a matter of law persuasive and therefore find no reason to delay decision.  Count VIII is dismissed with prejudice for failure to state a claim upon which relief may be granted because trademark misuse may not serve as the basis for an affirmative claim for recovery.  *Arcadia*, 2011 WL 3584469, at *4; *Gabriel*, 1998 WL 525431, at *8; *Juno*, 979 F. Supp. at 691.

## III.   UNJUST ENRICHMENT COUNTERCLAIM

In Claim VIII SmartBuyGlasses alleges a claim of unjust enrichment in the alternative.  (Counterclaim ¶¶ 78–81.)  SmartBuyGlasses contends "Maui Jim knowingly and intentionally used the trademark and copyright laws for the improper purpose of stifling competition in a relevant market and enriched itself to the detriment of SmartBuyGlasses." (*Id.* ¶ 79.)  Maui Jim argues the claim should be dismissed because SmartBuyGlasses has failed to state a claim under Illinois law.  (Mem. at 16.)

Unjust enrichment is an equitable remedy that is available when no adequate remedy at law exists.  *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 922 (N.D. Ill. 2013).  Under Illinois law, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160,

14

545 N.E.2d 672, 679 (Ill. 1989)). Simply stated, unjust enrichment "is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment." *Id.* at 520.

Maui Jim first argues SmartBuyGlasses' unjust enrichment claim must be dismissed because it is based in part on the same improper conduct as alleged in counterclaim Counts I, II, III, and IV, which for the reasons stated above, we have dismissed. *See Cleary*, 656 F.3d at 517 ("So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). However, we agree with SmartBuyGlasses that because we have found the UDTPA, CFA, trademark disparagement, and trademark misuse claims fail for reasons unrelated to the alleged underlying improper conduct—namely, because SmartBuyGlasses failed to allege a sufficient Illinois connection to its claims—we may still assess SmartBuyGlasses' independent unjust enrichment claim as a standalone claim. (Resp. at 16.)

Maui Jim next argues the counterclaim lacks plausible allegations identifying any benefit Maui Jim has retained to SmartBuyGlasses' detriment. (Mem. at 16.) Maui Jim also contends that SmartBuyGlasses fails to adequately plead how the retention of any benefit was unjust. (*Id.*) In response, SmartBuyGlasses contends it has stated a proper claim for unjust enrichment. (Resp. at 16–17.) It contends Maui Jim retained a benefit that was unjust by "illegally prop[ping] up prices of its eyewear" by seeking "to eradicate lawful competition and monopolize control over its worldwide supply chain." (Counterclaim ¶ 2.) SmartBuyGlasses further argues it identified how that benefit was used to SmartBuyGlasses' detriment: Maui Jim engaged in a public relations effort that "exploited recent zenophobia by claiming that SmartBuyGlasses was a

15

counterfeiter" and issued a press release that publicized false allegations and included "false and disparaging commentary." (*Id.* ¶¶ 2, 29, 34; *see also id.* ¶ 35 (alleging Maui Jim's actions "have and will continue to harm SmartBuyGlasses in the marketplace").)

While a plaintiff "need not show loss or damages, he must show a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit." *Cleary*, 656 F.3d at 518–19. An unjust enrichment claim may lie where the plaintiff seeks an award in the amount of the defendant's "unjust gain, rather than the plaintiffs' loss." *Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248, 258, 807 N.E.2d 439, 445 (Ill. 2004). Taking SmartBuyGlasses' allegations as true, it has set forth a plausible claim that Maui Jim publicized false allegations and commentary regarding SmartBuyGlasses' products in a press release, thereby wrongfully disparaging SmartBuyGlasses' business and falsely asserting it sells counterfeit products. (Counterclaim ¶¶ 2, 29, 34–35.) SmartBuyGlasses alleges it has suffered harm in the marketplace as a result. (*Id.* ¶ 35.) The counterclaim therefore connects Maui Jim's unjust benefit (increased prices of its products due to its allegedly anti-competitive and fraudulent conduct) to a detriment to SmartBuyGlasses (disparagement of its products as counterfeit). *Cleary*, 656 F.3d at 518–20. As a result, SmartBuyGlasses' allegations in Count VIII are sufficient to survive dismissal at this stage.

## IV. DECLARATORY JUDGMENT COUNTERCLAIMS

Finally, SmartBuyGlasses asserts three declaratory judgment claims. (Counterclaim ¶¶ 57–70.) In Count IV, SmartBuyGlasses alleges it is entitled to a declaratory judgment that "any existing or future copyright registrations that issue as a result of any pending applications are invalid." (*Id.* ¶ 60.) In Count V, it contends it is entitled to a declaratory judgment that "its use of the images at issue did not infringe any purported copyrights of Maui

Jim." (*Id.* ¶ 63.) SmartBuyGlasses also asks for a declaratory judgment in Count VI that its use of Maui Jim's registered trademarks "does not and will not infringe or tarnish the marks or otherwise violate state or federal statutory or common law." (*Id.* ¶ 70.) Maui Jim argues we should decline to hear Counts IV, V, and VI by (1) exercising our discretion under the Declaratory Judgment Act, 29 U.S.C. § 2201(a); (2) striking the claims pursuant to Rule 12(f); or (3) dismissing the claims under Rule 12(b)(6).

"The purposes of declaratory judgments are to 'clarify[ ] and settl[e] the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (quoting Borchard, *Declaratory Judgments* 299 (2d ed. 1941)). "It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Id.* at 747. Likewise, courts may strike *sua sponte* "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Nielsen Co. (US), LLC v. Truck Ads, LLC*, No. 08 C 6446, 2011 WL 221838, at *5 (N.D. Ill. Jan. 24, 2011). The court's discretion in deciding whether to hear a declaratory judgment action is "broad, and should be based on 'practicality and wise judicial administration.'" *Nielsen*, 2011 WL 221838, at *5 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S. Ct. 2137, 2143 (1995)). Where a counterclaim merely restates an issue already before the court, "[i]t is well settled that such repetitious and unnecessary pleadings should be stricken." *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.*, 362 F. Supp. 78, 82 (N.D. Ill. 1973); *see also*, *e.g.*, *Bodum USA, Inc. v. A Top New Casting Inc.*, No. 16 C 2916, 2016 WL 4440258, at *2 (N.D. Ill. Aug. 23, 2016) (dismissing counterclaim that "essentially presents nothing more than the flip side of [plaintiff's] claims" and "adds nothing to

the case beyond the issues that [plaintiff's] claims call upon the Court to adjudicate"); *Nielsen*, 2011 WL 221838, at *5 (striking without prejudice a declaratory judgment counterclaim for non-infringement, finding it was "redundant, unnecessary, and would potentially complicate resolution of the copyright infringement claim at issue"); *Sarkis' Cafe*, 55 F. Supp. 3d at 1038 (dismissing declaratory judgment counterclaim that served no "useful purpose" because the substantive suit would resolve the issues raised by the declaratory judgment action); *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (considering "matters of practicality and of wise judicial administration" and striking repetitious declaratory judgment counterclaim as "unnecessary and improper"). "[C]ourts routinely dismiss counterclaims that seek to generate an independent piece of litigation out of issues that are already before the court; this includes counterclaims that merely restate an affirmative defense, as well as those which simply seek the opposite effect of the complaint." *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065 (N.D. Ill. 2013).

The validity of Maui Jim's copyrights and the issue as to whether SmartBuyGlasses infringed them are already before the court. SmartBuyGlasses' Count IV, which seeks a declaration of copyright invalidity, seeks the opposite effect of Maui Jim's complaint and merely restates SmartBuyGlasses' affirmative defenses: SmartBuyGlasses has denied Maui Jim's allegations that the subject photographs are original, and it asserts in its Thirteenth Affirmative Defense that "[t]he copyrights at issue are invalid because the images are not sufficiently creative." (Answer ¶ 58; *see also id.* at 38.) Likewise, SmartBuyGlasses' counterclaims seeking declarations of non-infringement based on an alleged license, the fair use and first sale doctrine, and Maui Jim's acquiescence and authorization are all presently before the court. SmartBuyGlasses denied Maui Jim's allegations that SmartBuyGlasses did not have a license to

18

copy the photographs at issue and that the Maui Jim branded sunglasses sold by SmartBuyGlasses are not authentic. (Answer ¶¶ 3, 56, 69.) Similarly, SmartBuyGlasses' Third, Ninth, and Twelfth Affirmative Defenses raise acquiescence, license, and fair use defenses, and its Second and Fifth Affirmative Defenses assert alleged authorization from Maui Jim and the first sale doctrine as defenses. (Answer at 20, 36.) Because SmartBuyGlasses' declaratory judgment counterclaims seek the opposite effect of the complaint or are redundant of the substantive issues raised in its affirmative defenses, a separate declaratory judgment action is unnecessary to resolve the issues set forth in SmartBuyGlasses' Counts IV, V, and VI. *See Intercon Sols.*, 969 F. Supp. 2d at 1065. Accordingly, these counterclaims are stricken, without prejudice.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part Maui Jim's motion to dismiss. We deny Maui Jim's motion with respect to Count VIII. Maui Jim's motion to dismiss is granted as to SmartBuyGlasses' remaining counterclaims. Accordingly, Counts I, II, III are dismissed, without prejudice. In addition, Counts IV, V, and VI are stricken, without prejudice. Count VII is dismissed, with prejudice for failure to state a claim. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: January 23, 2018
    Chicago, Illinois