IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAUI JIM, INC., an Illinois Corporation, | ) |
| | ) |
| Plaintiff, | ) No. 16 C 9788 |
| | ) |
| v. | ) Jeffrey T. Gilbert |
| | ) Magistrate Judge |
| SMARTBUY GURU ENTERPRISES, a Cayman Island Company; MOTION GLOBAL LTD., a Hong Kong Company; SMARTBUYGLASSES SOCIETÀ A RESPONSABILITÀ LIMITATA, an Italian company; SMARTGUYGLASSES OPTICAL LIMITED, a Hong Kong company, | ) |
| | ) |
| Defendants. | ) |

## ORDER

SmartBuy's Motion to Compel [ECF No. 171] is granted in part and denied in part. See also the Court's Order entered on August 30, 2018 [ECF No. 246] with respect to one aspect of Plaintiff's Motion. See generally Statement below for further details.

## STATEMENT

This case is presently before the Court on Defendant and Counter-plaintiff SmartBuy's Motion to Compel [ECF No. 171] Plaintiff and Counter-defendant Maui Jim to produce documents and answer interrogatories. The Court held a hearing on SmartBuy's Motion on August 30, 2018 and ruled on the portion of the Motion that dealt with SmartBuy's request that Maui Jim de-designate over 800 documents it had produced as Attorneys' Eyes Only ("AEO"). For the reasons discussed on the record at that time, SmartBuy's request that the Court order the wholesale de-designation of documents that Maui Jim labeled as Attorneys' Eyes Only is denied without prejudice. See the Order entered on August 30, 2018 for further details on that aspect of SmartBuy's Motion [ECF No. 246].

The Court addresses in this Order the remaining aspects of SmartBuy's Motion to Compel [ECF No. 171] with respect to (a) Maui Jim's refusal to answer certain interrogatories in full and produce all the documents SmartBuy says it should produce relating to Maui Jim's operations in European countries other than Italy, and (b) Maui Jim's refusal to produce certain documents relating to the reasons it terminated an executive that worked for its Italian affiliate.

I.

When a party does not respond properly to a discovery request, the party that issued the request may file a motion to compel a proper response under Federal Rule of Civil Procedure 37(a). FED. R. CIV. P. 37(a); *Vukadinovich v. Hanover Cmty. Sch. Corp.*, 2014 WL 667830, at *4 (N.D. Ind. Feb. 20, 2014). The court then must independently determine the proper course of discovery. *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, 2013 WL 505252, at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the court has significant discretion. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994). "Unless the requestor can demonstrate that the materials sought are relevant, judges should not hesitate to exercise appropriate control over the discovery process. Phrased differently, 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'" *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018); *see also Vajner v. City of Lake Station*, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010) ("When the request is overly broad on its face, or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request.").

At issue now for purposes of SmartBuy's Motion to Compel [ECF No. 171] are SmartBuy's requests for production of documents ("RFPs") Nos. 4, 5, 8, 9, 11, 31, 33, 38, 40, 41, 42, 50, 51, 56, 57, and 99, and Interrogatory Nos. 13, 16, and 19–23. SmartBuy asks the Court to compel Maui Jim to produce documents responsive to the referenced RFPs relating to its operations mot only the United States and Italy, but also in other European countries, and to answer the referenced interrogatories within the same framework.

Maui Jim objects to responding to SmartBuy's discovery to the extent it implicates Maui Jim's European operations other than Italy, although in certain instances it apparently has agreed to produce a limited number of documents sufficient to provide SmartBuy with some information about the subjects of inquiry of certain RFPs for European countries other than Italy. Broadly speaking, however, Maui Jim says it only should have to produce documents from its operations in the United States and Italy in response to SmartBuy's RFP Nos. 4, 5, 6, 8, 38, and 56 and Interrogatory No. 16, and that it only should have to produce documents from the United States in response to SmartBuy's RFP Nos. 9, 11, 31, 33, 36, 40–42, and 57 and Interrogatory Nos. 13, 19, and 20–23.

SmartBuy says Europe-wide discovery is relevant primarily for three reasons. First, SmartBuy claims that the discovery is relevant to its argument that the anti-diversion provisions in Maui Jim's Italian contracts are unenforceable under European Union ("EU") law. Second, SmartBuy says the discovery is relevant to its affirmative defense of trademark misuse. Third, SmartBuy asserts that the discovery is relevant to its counterclaims for violation of American and

2

EU antitrust laws.[1] For the reasons discussed below, the Court agrees for the most part with Maui Jim that SmartBuy has not met its burden to show the information it is seeking beyond Maui Jim's United States operations in some instances and beyond the United States and Italy in others is relevant or proportional to the needs of the case.

II.

SmartBuy's central relevance argument for Europe-wide discovery is that the enforceability of Maui Jim's contracts in Italy is germane to Maui Jim's claim that SmartBuy tortuously interfered with Maui Jim's contracts in that country, and discovery with respect to Maui Jim's European operations is relevant and proportional to that inquiry.[2] According to SmartBuy, Maui Jim's Italian contracts, which impose various obligations or restrictions upon Italian companies that Maui Jim says prevent them from dealing with SmartBuy, are not enforceable under EU law unless Maui Jim has what SmartBuy characterizes as a "selective distribution system." The determination of whether Maui Jim has a selective distribution system, according to SmartBuy, is a fact-intensive inquiry that requires the Court to look at not only Maui Jim's Italian contracts but also at its contracts in other countries within the EU.[3] Maui Jim contends, on the other hand, that, even if EU law were to apply to a determination of whether its contracts in Italy are enforceable, "it does not follow that *Europe-wide* discovery is relevant for the Court to evaluate *Italian* contracts between *Italian* entities." Plantiff's Memorandum in Opposition to SmartBuy's Motion to Compel ("Plaintiff's Opposition") [ECF No. 212], at 13 (emphasis original).

Neither party does a very good job of providing the Court with information – either facts or law – sufficient for the Court to determine whether the documents SmartBuy is seeking are relevant to its argument that Maui Jim's contracts in Italy are unenforceable under EU law. In the first instance, however, it is SmartBuy's obligation to convince the Court that the discovery it seeks is relevant to a claim or defense and proportional to the needs of this case. *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2018 WL 946396, at *4; *Vajner v. City of Lake Station*, 2010 WL 4193030, at *2. While SmartBuy says "it is unnecessary to delve into the details of EU law for purposes of this motion," [ECF No. 172, at 11], it is necessary for the Court to understand—at least to some extent—EU law to determine whether SmartBuy's relevance

---

[1] The Court has stayed antitrust discovery pending a ruling on Maui Jim's motion to dismiss. [ECF No. 234.]

[2] Fairly read, Maui Jim's now operative Amended Complaint [131] alleges that SmartBuy interfered with Maui Jim's contracts in the United States, Italy, and elsewhere. But Maui Jim said during the hearing on August 30, 2018, that it is going to seek leave to file an amended complaint that limits its tortious interference claim to the United States and Italy and that it does not intend to pursue such a claim that relates to its operations in any other countries.

[3] SmartBuy references Article 101 of the Treaty on the Functioning of the European Union ("TFEU"), and Commission Regulation (EU) No. 330/2010, as being relevant to whether Maui Jim's Italian contracts are enforceable. According to SmartBuy, Article 101 of the TFEU and Regulation 330/2010 describe the types of restrictions manufacturers permissibly may place on the downstream distribution of products, and that Treaty directly impacts whether the restrictions Maui Jim purports to impose in its agreements are enforceable. [ECF No. 127, at 11.] The portion of the TFEU SmartBuy references does not use the term "selective distribution system."

3

argument holds water. SmartBuy's decision to sidestep a more thorough discussion of the legal underpinnings for its relevance argument therefore does not advance its cause in support of its Motion to Compel.

In essence, as the Court understands it, Smart-Buy says the anti-diversion provisions in Maui Jim's Italian contracts are unenforceable under EU law, so Maui Jim cannot prevail on its claim that SmartBuy tortiously interfered with an unenforceable contract. It is not clear to the Court, however, that contracts between Maui Jim and its customers or retailers in other European countries are relevant to determining whether Maui Jim's Italian contracts are enforceable under Italian law. Although SmartBuy makes this point rhetorically, nothing it says or cites convinces the Court that discovery into Maui Jim's contractual relations in other European countries is necessary for SmartBuy to defend Maui Jim's tortious interference claim with respect to Maui Jim's Italian contracts, or that such discovery is relevant to that defense, and even if it is somehow relevant in a tangential sense, that such broad discovery is proportional to the needs of this case.

Maui Jim also points out that "[t]o the extent Maui Jim's EU-based personnel or management communicate with Maui Jim custodians in the U.S. on issues relevant to this case, Maui Jim has collected and produced those documents as part of its extensive U.S. search and collection efforts." [ECF No. 212, at 14.] So, to some extent, SmartBuy will get some documents in discovery that may shed some light on the way in which Maui Jim does business in European countries other than Italy. The Court does not mean to say that SmartBuy will get everything it is looking for as a result of these more limited productions; it likely will not. But this approach appears to be more consistent with the proportionality requirements now embedded in Rule 26(b)(1) than is SmartBuy's "kitchen sink" approach particularly given SmartBuy's weak showing that the discovery it is seeking is relevant.

III.

The Court also does not agree that SmartBuy has met its threshold burden of showing that Europe-wide production of documents by Maui Jim is relevant to SmartBuy's trademark misuse defense (to the extent that does not overlap with its antitrust claims as to which discovery has been stayed for now). SmartBuy does not provide much insight to this argument in its briefs. It's focus seems to be on the tortious interference claim and the existence of a "selective distribution system." Again, though, it is SmartBuy's obligation in the first instance to make a threshold showing of relevance before Maui Jim must show the extent of the burden that would be imposed upon it if it were required to comply with SmartBuy's discovery requests. And SmartBuy has not met that burden here.

Further, although SmartBuy says Maui Jim has not shown it would suffer undue burden if it had to produce the requested documents, the Court disagrees. Most of SmartBuy's discovery requests as framed are extraordinarily broad. Most requests, for example, ask for "all documents," and the few that ask for "documents sufficient to reflect [XX]" still seek information that is not relevant. For example, RFP No. 4 seeks "documents sufficient to reflect the terms of the standard Maui Jim Retailer Agreement . . . that Maui Jim entered into with authorized retailers over the past five years in any country in which Maui Jim does business." But, as discussed above, SmartBuy

4

has not shown that the terms of Maui Jim's contracts other than in the United States and Italy are relevant to the claims or defenses in this case or proportional to the needs of the case.

Similarly, SmartBuy's RFP No. 8 requests "all documents that relate to disputes between Maui Jim and an authorized retailer concerning the 'Anti-Diversion' provision specified in paragraph 32 of the Complaint, including but not limited to the actions Maui Jim took to enforce the provision." First, this request is overbroad and vague because it requests "all documents that relate" to disputes. It is difficult to see how all such documents would be relevant to any legitimate inquiry SmartBuy might make in this regard. Second, even if the agreements between Maui Jim and retailers in other European countries with anti-diversion provisions themselves are relevant to SmartBuy's effort to discover whether Maui Jim has a "selective distribution system" (and again, SmartBuy has not met its burden in that respect), one would think that disputes arising out of the use of the anti-diversion provision clearly are less relevant than simply the terms of the agreements themselves for SmartBuy's purposes, at least as the Court understands SmartBuy's argument.

Common sense dictates that producing agreements, communications, and documents relating to "relationships" (RFP No. 33) and "disputes" (Interrogatory No. 16) from multiple European countries in foreign languages regarding transactions that have little or nothing to do with the claims and defenses in this case is overly burdensome and not proportional to needs of case. This is especially true considering the level of importance these documents might have to resolving the central issues in the case. In the Court's view, any minimal relevance to some tangential issue is far outweighed by the burden that production would place on Maui Jim. SmartBuy has not done enough to justify why Maui Jim should be required to carry that burden in this case. This is not an exhaustive list or discussion of the overbreadth of SmartBuy's discovery requests, but it is indicative of the Court's view and sufficient for these purposes given SmartBuy's failure to pass muster on the threshold relevance issue for the discovery it is seeking.

IV.

The Court does, however, agree that two of SmartBuy's requests for production seek information that is relevant to a claim or defense in this case and proportional to the needs of the case. Maui Jim claims that the Maui Jim-branded sunglasses that SmartBuy imports and sells in the United States are materially different from the glasses that Maui Jim's authorized retailers sell here because they are not covered by a Maui Jim warranty, they may include prescription lenses not manufactured by Maui Jim, and potentially for other reasons. *See, e.g.,* Amended Complaint [131] at ¶¶ 29, 35, 60, 63, 84. If the material differences are sufficient to mislead Maui Jim's consumers then SmartBuy's conduct might violate the Lanham Act. Plaintiff's Opposition [ECF No. 212] at 15, citing *R. J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 71 U.S.P.Q. 2d 1670 (N.D. Ill. 2004), *aff'd* 462 F.3d 690 (7th Cir. 2006). That determination is fact intensive. *Id.*

According to Maui Jim, to the extent that SmartBuy purchases Maui Jim sunglasses from vendors who are authorized to sell those products to end-users but not authorized to resell them to an intermediary like SmartBuy, who then resells the products to end-users, Maui Jim's warranty is void as to those sunglasses. In those instances, Maui Jim says the "Maui Jim" sunglasses that SmartBuy sells in the United States are "materially different" than the sunglasses Maui Jim sells.

5

Maui Jim also accuses SmartBuy of inserting non-Maui Jim made prescription lenses into Maui Jim sunglass frames and selling those sunglasses to consumers in the United States. Again, in those instances, Maui Jim says the "Maui Jim" sunglasses that SmartBuy sells in the United States with "prescription lenses" are "materially different" than the prescription sunglasses Maui Jim sells that contain its own prescription lenses.

For its part, SmartBuy says that it provides its own warranty for all the Maui Jim sunglasses that it sells. So, in that respect, according to SmartBuy, the sunglasses SmartBuy sells are not materially different than the same sunglasses sold by Maui Jim. SmartBuy also says Maui Jim allows retailers in certain European countries to insert non-Maui Jim made prescription lenses into Maui Jim's frames. Maui Jim interprets SmartBuy to be arguing that it would not be unlawful for SmartBuy to buy Maui Jim sunglasses with third-party made prescription lenses in Europe and to resell them in the United States. Maui Jim says it would indeed be unlawful for SmartBuy to do that because "the importation and sale of those materially different sunglasses into the United States without Maui Jim's consent would still violate U.S. trademarking laws." Plaintiff's Opposition [ECF No. 212], at 15 (case citation omitted). The Court, however, interprets SmartBuy also (or maybe primarily) to be arguing that because Maui Jim supposedly allows European retailers to insert third-party made lenses into Maui Jim frames in Europe, those sunglasses cannot be all that different from a quality perspective (and thus not so different in the eyes of the consumer) than the prescription sunglasses Maui Jim manufactures and sells with its own prescription lenses.

SmartBuy's RFP No. 50 requests "documents sufficient to identify countries and all retailers in which Maui Jim does include the prescription lens requirement into their distribution agreements." SmartBuy's RFP No. 51 requests "documents sufficient to identify all instances of Maui Jim being aware of retailers installing third-party lenses into Maui Jim frames for its customers." In the Court's view, to the extent such documents exist, they could be relevant to a claim or defense in this case and production of a subset of those documents, based on the record now before the Court, would be proportional to the needs of the case. In particular, these documents could be relevant to the parties' respective arguments about whether insertion of non-Maui Jim made prescription lenses into Maui Jim sunglass frames renders those sunglasses materially different from sunglasses containing Maui Jim made prescription lenses, and to SmartBuy's argument concerning the significance or materiality of the "difference" in the two types of prescription sunglasses. So long as Maui Jim includes this claim as part of its Lanham Act causes of action, then the discovery is relevant, in the Court's view.[4]

In response to RFP No. 50, it will be sufficient for Maui Jim to produce a representative sample of its European contracts that include the prescription lens requirement – perhaps three to five per country if this is sufficient to be representative – but the Court does not mean to stymie

---

[4] Maui Jim's final rejoinder on this score is that it "prohibits any modification of its sunglasses in Europe, the same as it does in the US [sic], and it has produced representative documents of its European agreements and policies to that effect." [ECF No. 212], at 15. But it is unclear whether the use of the term "modification" means Maui Jim prohibits European retailers from inserting non-Maui Jim made prescription lenses into Maui Jim frames. Of course, if Maui Jim prohibits the insertion of third-party prescription lenses into its sunglasses anywhere in the world, then SmartBuy also should be able to discover that fact as it also is relevant to Maui Jim's Lanham Act claims.

discussion by the parties concerning a different representative sample. To be clear, however, documents sufficient to identify all retailers in each country is not required or proportional to the needs of the case. In response to RFP No. 51, Maui Jim can produce documents sufficient to identify all instances in which it is aware a retailer installed third-party prescription lenses in Maui Jim frames whether in the United States or in Europe. Maui Jim has produced documents responsive to this RFP for its United States operations. In the Court's view, similar documents (if they exist) relating to Maui Jim's European operations also must be produced for the reasons discussed above.

V.

Finally, SmartBuy's request that the Court compel production of documents responsive to its RFP No. 94, which relates to the termination of a SmartBuy executive whose identity and role in certain activities in relation to SmartBuy has surfaced in this case, is denied because the request is overbroad as framed. For the reasons discussed on the record on August 30, 2018, however, the Court believes SmartBuy is entitled to know the reason the executive was terminated because his conduct is likely to be relevant to the claims being made in this case and his credibility or bias may be an issue as well. But "all documents that relate to the decision …" is overbroad in this context and given the limited relevance of the documents in question – which is mainly to credibility or bias.

If, however, SmartBuy limited its request to documents sufficient to show the reason the executive was terminated, that request would be proper in the Court's view. At the hearing on August 30, 2018, Maui Jim directed the Court and SmartBuy to a declaration filed under seal in February 2018 [ECF No. 103-1], at 9–13 as articulating the reason the executive was terminated. That document, however, speaks only in generalities and most likely summarizes more specific source documents in Maui Jim's possession. In the Court's view, SmartBuy can discover certain of those source documents in this particular instance for an important witness, no matter which party ends up calling the witness at trial.

Accordingly, for all these reasons, SmartBuy's Motion to Compel [ECF No. 171] is granted in part and denied in part.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 12, 2018