IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAUI JIM, INC., an Illinois Corporation | )<br>) Case No. 1:16-cv-09788<br>)<br>) District Judge Aspen<br>) Magistrate Judge Gilbert<br>)<br>) **DEFENDANTS' MOTION TO COMPEL THE DEPOSITION OF ▮▮▮▮ Z▮▮▮▮ PURSUANT TO RULE 30(B)(1) AND TO COMPEL ANSWERS TO QUESTIONS RELATED TO UNAUTHORIZED SALES OUTSIDE OF ITALY PURSUANT TO RULE 30(C)(2)**<br>)<br>) **PUBLIC VERSION**<br>) |
| Plaintiff, | |
| v. | |
| SMARTBUY GURU ENTERPRISES, a Cayman Island Company, MOTION GLOBAL LTD., a Hong Kong Company, SMARTBUYGLASSES SOCIETÁ A RESPONSABILITÁ LIMITATA, an Italian Company, SMARTBUYGLASSES OPTICAL LIMITED, a Hong Kong company, | |
| Defendants. | |

Defendants SmartBuy Guru Enterprises, Motion Global Ltd., SmartBuyGlasses Societá a Responsabilitá Limitata, and SmartBuyGlasses Optical Limited (collectively, "Motion Global"), in support of their Amended Motion to Compel the Deposition of ▮▮▮▮ Z▮▮▮▮ Pursuant to Rule 30(b)(1) and to Compel Answers to Questions Related to Unauthorized Sales Outside of Italy Pursuant to Rule 30(c)(2) (the "Motion")[1], state the following:

### INTRODUCTION

Maui Jim is actively attempting to frustrate Motion Global's efforts to obtain lawful discovery in this case. First, Maui Jim terminated its relationship with Ms. Z▮▮▮▮ (a Maui Jim sales representative in Italy) **after** it knew that her testimony was essential to this matter, **after** Motion Global advised that it was seeking her deposition, and **after** Motion Global raised the issue of Ms. Z▮▮▮▮'s deposition with this Court on October 23, 2018. Maui Jim now

---

[1] Pursuant to Local Rule 37.2 and Federal Rule of Civil Procedure 37(a)(1), Motion Global certifies that the parties engaged in a telephone conference regarding the issues discussed in this Motion on December 29, 2018, and followed that discussion with two emails concerning the matters raised herein. The parties were unable to resolve their disagreement, necessitating this Motion.

{7794059: }  1

claims that it has no control over Ms. Z███████, a condition – if it is even true – that its own actions and failure to secure her cooperation before her termination caused.

In addition to improperly attempting to thwart Motion Global's ability to take the deposition of Ms. Z███████, Maui Jim also inappropriately instructed one of its European executives not to answer a series of questions concerning the termination of retailers in connection with unauthorized sales of Maui Jim products in Europe. When Motion Global recently took the deposition of Hans Jurgen-P███████ in London, counsel for Maui Jim instructed him not to answer such questions based – erroneously – on this Court's September 12, 2018 Order (the "Document Production Order".) (Dkt. 251.) Maui Jim's instruction based on the Document Production Order is improper because that order never restricted oral discovery, it related only to the burden/proportionality of producing documents Europe-wide. Such a concern does not exist with respect to deposition testimony admittedly within the scope of knowledge of the witness. However, even when presented with the exact language from the Document Production Order at the deposition, Maui Jim persisted in its improper instruction.

Accordingly, Motion Global requests that this Court order Maui Jim to produce Ms. Z███████ for deposition (or alternatively grant Motion Global an adverse inference as to her expected testimony) and order the continuation of Mr. P███████'s deposition at Maui Jim's cost.

## ARGUMENT

### I. MAUI JIM HAD CONTROL OVER MS. Z███████ AND TERMINATED HER TO FRUSTRATE MOTION GLOBAL'S ABILITY TO REQUIRE HER ATTENDANCE AT DEPOSITION

Maui Jim falsely claims that Ms. Z███████ was simply an independent contractor over whom they had no control and cannot currently control. The facts do not support such a claim.

{7794059: } 2

Ms. Z▇▇ was the Maui Jim sales representative that dealt directly with ▇▇▇ and Motion Global since 2011. She took numerous orders from ▇▇▇ that she knew were destined for Motion Global, and Maui Jim granted her significant discretionary authority over the ▇▇▇ and other Maui Jim authorized retailer accounts. (*See* Exhibit A.) As a result, her testimony is essential to many issues in this case, including Maui Jim's knowledge of and acquiescence of Motion Global's purchases/sales.

During Ms. Z▇▇'s employ by Maui Jim, she was given an official Maui Jim email account, signed her email with the official Maui Jim signature line with the title "Representative," and took orders from retailers (including ▇▇▇ for Maui Jim sunglasses. (*See id*.) In fact, Mr. P▇▇ – Maui Jim's Vice President for Europe and corporate representative – testified that sales representatives, like Ms. Z▇▇:

- ▇▇▇
- ▇▇▇
- ▇▇▇
- ▇▇▇
- ▇▇▇
- ▇▇▇

Mr. ▇▇▇ S▇▇ – an Italian executive for Maui Jim and a corporate representative – also testified that ▇▇▇. (Exhibit C, 92:23-93:8.) Mr. Salmaso also testified that Ms. Z▇▇ ▇▇▇

███████████████████████████████████████. (*See id.*, 141:14-17.) No matter what Maui Jim attempts to call Ms. Z██████, she was in essence a Maui Jim employee invested by Maui Jim with general powers to exercise her judgment and discretion with respect to the subject matter of the litigation and over whom Maui Jim had significant control.

Maui Jim terminated Ms. Z██████'s employment in the beginning of November **2018**, just days before the parties traveled to London for the Maui Jim European depositions and after Motion Global had asked for her deposition and even initially raised the issue with this Court. (Ex. B, 51:20-52:2.) Maui Jim now conveniently claims that it is unable to produce Ms. Z██████ for deposition because she is out of its control.

The fact that Maui Jim no longer employs Ms. Z██████ is, however, irrelevant as a matter of law. Numerous court have held that a court may compel a company to produce former foreign-national employees (who, like Ms. Z██████, are managing agents) when they are removed – as Maui Jim apparently did here – for the purposes of avoiding discovery. *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 268 F.R.D. 45, 49 (E.D. Va. 2010) (granting a motion to compel the deposition of several of the defendant's Korean employees to take place in Virginia where the "timing and circumstances of [the companies'] reassignment or termination of its employees render the true status of the proposed deponents highly suspect, and allow for a strong inference that [defendant] is moving its employees around like chessman, conveniently shielding them from [plaintiff's] access"; *see also In re: Lithium Ion Batteries Antitrust Litig.,* No. 13-md-02420-YGR(DMR), 2016 WL 1161575, at *3-4 (N.D. Cal. Mar. 24, 2016) (granting plaintiff's motion, pursuant to Rule 30(b)(1), to compel the deposition in Korea of a Korean employee who was terminated shortly before his requested deposition); *Boston Diagnostics Development Corp., Inc. v. Kollsman Mfg. Co., Div. of Sequa Corp.*, 123 F.R.D.

415, 415-16 (D. Mass. 1988) (granting defendants' motion to compel the deposition in Boston of a British subject formerly employed by the plaintiff Swiss-based multinational corporation with managing agent powers in part because he was "invested by [the plaintiffs] with general powers to exercise his judgment and discretion in dealing with [plaintiff'] matters *with respect to the subject matter of the litigation*" … "even though he was responsible to higher authority to some extent.") (emphasis in original)

As courts have recognized, "the law concerning who may properly be designated as a managing agent is sketchy." *E.I. DuPont*, 268 F.R.D. at 48 (quoting *Founding Church of Scientology, Inc. v. Webster*, 802 F.2d 1448, 1452 (D.C. Cir. 1986). Specifically, "[l]argely because of the vast variety of factual circumstances to which the concept must be applied, the standard … remains a functional one to be determined largely on a case-by-case basis." *E.I.DuPont*, 268 F.R.D. at 48. (citing *Webster*, 802 F.2d at 1452; *In re Honda, Am. Motor Co.*, 168 F.R.D. 535, 540 (D. Md. 1996). The several factors that generally are considered in making a case-specific determination of a person's managing agent status: (1) the discretionary authority vested in the person by the corporation; (2) the employee's dependability in following the employer's directions; (3) whether the individual is more likely to identify with the corporation or the adverse party in the litigation; and (4) the degree of supervisory authority in areas pertinent to the litigation. *E.I. DuPont,* 268 F.R.D. at 48-49. As set forth above, all of these factors weigh in favor of a finding that Ms. Z█████ is a managing agent. Significantly, "[w]hen a person's managing agency status is debatable, 'courts in pretrial proceedings have resolved doubts under the standard in favor of the examining party." *Id.* (citing *Webster,* 802 F.2d at 1452 n.4.)

The fact that Ms. Z█████ was terminated:

- **after** Maui Jim knew her importance to this case,

- **after** Motion Global had specifically asked Maui Jim to produce her for deposition,

- **after** Motion Global had expressly raised with this Court on October 23, 2018, the issue of Maui Jim's obligation to produce her,

- **with Maui Jim's knowledge** that obtaining her deposition outside of Maui Jim producing her would be exceedingly difficult under the Hague Conventions because of the restrictions on pretrial discovery under Italian law,[2]

- **before** advising and **without notice** to Motion Global or this Court of its intention to terminate her so that discovery could be completed before her last day with Maui Jim, and

- **apparently without securing her cooperation** despite having a severance relationship with her,

establishes Maui Jim's intent to avoid discovery through her termination. Therefore, even if Maui Jim were to claim that its decision to terminate Ms. Z█████ was independent of its discovery obligations and was made well before the deposition notices were issued, Maui Jim's execution of the termination still supports an intention to avoid discovery and subjects it to the dictates of *E.I. Dupont* and *Lithium Ion*. Maui Jim (including its European operations) clearly knew Ms. Z█████'s importance as European executives and counsel met with Ms. Z█████ about her relationship with █████ and Motion Global just prior to her termination. (Ex. C, 138:20-139:9.) Then, the parties submitted their joint deposition schedule (dkt. 275) on October 19, 2018, wherein the parties specifically acknowledged that Motion Global seeks to take the deposition of Ms. Z█████ and that Motion Global takes the position that Maui Jim must produce her for deposition because she was a Maui Jim employee. (*Id*., p. 3.) Four days later, the parties debated the issue of Maui Jim's duty with regard to Ms. Z█████ before this Court—with the Court specifically noting Ms. Z█████'s use of a Maui Jim email address and

---

[2] The parties have already addressed this issue with regard to the deposition of █████

footer.³ At no time did Maui Jim's counsel mention Ms. Z███████'s impending termination to Motion Global or the Court. Then, less than two weeks later, Maui Jim terminates Ms. Z███████ and apparently makes no provision for her continued cooperation. Such conduct is, at the very least, bad faith and gamesmanship. Motion Global did not discover Ms. Z███████'s termination until one of Maui Jim's witnesses testified about it at the London depositions.

Moreover, Motion Global has information from third parties that lead it to believe that Maui Jim maintains – even today – significant control over Ms. Z███████ because of the severance obligations it owes her. Ms. Z███████ spoke with ███████████ (the ███████████ on November 25, 2018, and advised ██ ███████ that that she will not testify about the Motion Global situation because of her ██████ severance with Maui Jim.

Because Maui Jim's decision to terminate Ms. Z███████ (or at the very least its stealth and timing) was designed to prevent her from being deposed, and because Maui Jim apparently still maintains some control over her, this Court should order Maui Jim to produce Ms. Z███████ for her deposition. In the alternative, Motion Global requests that this Court grant it an adverse inference against Maui Jim for Ms. Z███████'s anticipated testimony concerning Maui Jim's relationship with ███████ and Motion Global.

II.  **MAUI JIM'S INSTRUCTION TO ITS DEPONENT NOT TO ANSWER QUESTIONS RELATED TO ITS UNAUTHORIZED SALES OUTSIDE OF ITALY WAS IMPROPER**

Maui Jim improperly instructed Mr. P████, during his individual deposition, not to answer a question concerning his knowledge of authorized retailers that Maui Jim closed for noncompliance with the restriction on sales to unauthorized third parties.

Mr. P████ established that he had knowledge of authorized resellers other than ██ in Italy (█████████████████████████) that were terminated for such noncompliance. (Ex. B,

---

³ Motion Global does not currently have a copy of the transcript.

171:3-7, 172:9-12.) However, Maui Jim's counsel instructed Mr. P█████ not to answer any questions concerning such retailers. Indeed, counsel instructed him not to answer how many such retailers existed (*id.*, 172:13-173:5) or even whether any of the retailers outside of Italy involved sales to Motion Global (*id.*, 175:5-179:19). Maui Jim's basis for its instruction was that they "have a court order that it [meaning Maui Jim's actions outside of Italy] is not relevant to the case." (*Id.* at p. 171:13-16.) This is untrue. The Document Production Order states, in pertinent part, that:

> The court also does not agree that Smartbuy has met its threshold burden of showing that **Europe-wide production of documents** by Maui Jim is relevant to Smartbuy's trademark misuse defense (to the extent that does not overlap with the antitrust claims as to which discovery has been stayed for now).

(Dkt. 251, PageID #:3856) (emphasis added.) As Motion Global's counsel pointed out during Mr. P█████'s deposition (Ex. B, 178:17-179:11), this Court's order related to **document** production and not deposition testimony. Specifically, this Court noted the breadth of Motion Global's discovery requests and that "any minimal relevance to some tangential issue is far outweighed by the burden that production would place on Maui Jim." (Dkt. 251, PageID #:3857.) The same concerns about undue burden are simply not present here. If not for Maui Jim's inappropriate instruction, Mr. P█████ would have been able to answer questions related to the termination of retailers outside of Italy without any additional burden.

Federal Rule of Civil Procedure 30(c)(2) states that instructions preventing a witness from answering questions in a deposition are appropriate "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." None of these circumstances are present here. Maui Jim's objection was not connected with this Court's Order, which dealt with the propriety of a request for the production of documents rather than deposition testimony. As stated above, the concerns with undue burden

that this Court highlighted in its Order are not present in the context of a discovery deposition. Motion Global therefore requests that this Court order the continuation of Mr. P████'s deposition at Maui Jim's cost.

## **CONCLUSION**

For the foregoing reasons, Motion Global respectfully requests that this Court grant their Motion in its entirety – ordering Maui Jim to produce Ms. Z██████ for deposition (or alternatively grant Motion Global an adverse inference as to her expected testimony) and ordering the continuation of Mr. P████'s deposition at Maui Jim's cost.

Dated: December 6, 2018

Respectfully submitted,

SMARTBUY GURU ENTERPRISES, MOTION GLOBAL LTD., SMARTBUYGLASSES SOCIETÁ A RESPONSABILITÁ LIMITATA, SMARTBUYGLASSES OPTICAL LIMITED

By: /s/ Stephen J. Rosenfeld
One of their attorneys

Stephen J. Rosenfeld (Bar No. 6216769)
Jennifer D. Armstrong
Jacob D. Radecki
McDonald Hopkins LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 642-6103
Attorneys for Defendants
E-mail: srosenfeld@mcdonaldhopkins.com
jarmstrong@mcdonaldhopkins.com
jradecki@mcdonaldhopkins.com

## CERTIFICATE OF SERVICE

    This is to certify that on December 6, 2018, Stephen J. Rosenfeld, an attorney, caused to be served a true and correct copy of the foregoing document via electronic mail on all counsel of record who have consented to electronic service.

                                                   /s/ *Stephen J. Rosenfeld*