# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAUI JIM, INC.,                              )
                                             )
    Plaintiff and                       )
    Counterclaim Defendant,             )
                                             )
v.                                           )   No. 1:16 CV 9788
                                             )   Hon. Marvin E. Aspen
SMARTBUY GURU ENTERPRISES,                   )
MOTION GLOBAL LTD.,                          )
SMARTBUYGLASSES SOCIETA                      )
A RESPONSABILITA LIMITATA,                   )
SMARTBUYGLASSES OPTICAL                      )
LIMITED,                                     )
                                             )
    Defendants and                      )
    Counterclaimants.                   )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

    Before us is Plaintiff and Counterclaim Defendant Maui Jim, Inc.'s ("Maui Jim") motions

to dismiss Defendants and Counterclaimants SmartBuy Guru Enterprises, Motion Global Ltd.,

SmartBuyGlasses Societá a Responsabilitá Limitata, and SmartBuyGlasses Optical Limited's

(collectively "SBG") amended counterclaims. (Dkt. Nos. 184, 196, 278.)[1] Maui Jim also moves

---

[1] We previously terminated Maui Jim's first two motions to dismiss as moot. (Dkt. No. 310.)
We did so because, after Maui Jim filed these motions, SBG filed a second amended
counterclaim. (2d Am. Countercl. (Dkt. No. 259).) It is generally black letter law that an
"amended pleading supersedes the original pleading." *Wellness Cmty.-Nat'l v. Wellness House*,
70 F.3d 46, 49 (7th Cir. 1995) (citing *Lubin v. Chi. Title and Trust Co.*, 260 F.2d 411, 413
(7th Cir. 1958); *Nisbet v. Van Tuyl,* 224 F.2d 66, 71 (7th Cir. 1955); *Fry v. UAL Corp.*,
895 F. Supp. 1018 (N.D. Ill. 1995)). "Once an amended pleading is interposed, the original
pleading no longer performs any function in the case." *Id.* (quoting 6 C. Wright,
A. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1476 at 556–57, 559 (1990)).
Although Maui Jim refers to its first two motions to dismiss in its latest motion to dismiss,
(Dkt. No. 278 at 1), it does not expressly renew its prior motions on what had become
superseded pleadings. The parties now jointly move to reinstate Maui Jim's first two motions,
either by vacating our earlier termination of the motions, or by treating those motions and the

to strike two of SBG's affirmative defenses.  (Dkt. No. 278.)  For the reasons stated below, we grant Maui Jim's motions to dismiss Counts I, III, IV, V, and VI of SBG's second amended counterclaim, grant in part and deny in part Maui Jim's motion to dismiss Count II, and deny Maui Jim's motion to dismiss Count VII.  In addition, we grant Maui Jim's motion to strike SBG's first affirmative defense (inequitable restraint of trade) with prejudice and fourth affirmative defense (unclean hands) without prejudice.

## BACKGROUND

Much of this case's background can be found in our memorandum and order on Maui Jim's earlier motion to dismiss SBG's prior counterclaims.  (Order (Dkt. No. 89).)  We assume familiarity with that opinion and repeat here only as necessary.  At the motion to dismiss stage, we accept all well-pleaded factual allegations in the counterclaim as true and draw all inferences in the plaintiff's favor.  *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).  Maui Jim is a designer, manufacturer, and provider of prescription and non-prescription sunglasses.  (2d Am. Compl. (Dkt. No. 257) ¶ 16.)  SBG is an online retailer of luxury designer eyewear.  (2d Am. Countercl. (Dkt. No. 259) ¶ 13.)  It sells products from more

---

briefing on them as renewed *instanter*.  (Dkt. No. 311 at 4.)  The parties argue that SBG's second amended counterclaim was filed "without change" from its previous version, and that Maui Jim incorporated by reference its arguments to dismiss SBG's other counterclaims in its latest motion on the second amended counterclaim.  (*Id.* at 3–4.)  Of course, the amended and second amended counterclaims are not identical.  (*Compare* Am. Countercl. (Dkt. No. 131) ¶ 9, *with* 2d Am. Countercl. ¶ 8 (stating same information at different paragraph number, with discrepancy continuing throughout the remainder of the documents).)  While we do not wish to foster "needlessly duplicative pleadings and make-work for district courts" or for litigants, *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013), the parties' previous submissions on now-superseded claims have required us to hold the various pleadings up to the light to compare their content and ensure accurate exposition of the operative allegations and arguments.  However, the parties' general argument is well taken that the issues remain the same and the briefing adequate to address them.  Accordingly, we grant the parties' joint motion to reinstate Maui Jim's prior motions to dismiss *instanter*, and we consider those motions and arguments in this opinion.

than 180 designer brands, including Maui Jim, on its websites in twenty countries.
(*Id.* ¶¶ 13, 16.)

Maui Jim alleges SBG entities have never been authorized retailers of Maui Jim sunglasses, yet they sold and offered for sale counterfeit sunglasses under Maui Jim's trademarks.  (2d Am. Compl. ¶ 2.)  Maui Jim brought suit against SBG, asserting (as amended) claims of trademark counterfeiting and infringement, unfair competition, false advertising, and trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.* (Counts I–III); copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* (Count IV); unfair trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 5/10, *et seq.* (Count V); and tortious interference with contract (Count VI). (*Id.* ¶¶ 85–127.)

SBG alleges it procures genuine Maui Jim sunglasses primarily through affiliates and distributors that purchase directly from Maui Jim.  (2d Am. Countercl. ¶ 17.)  SBG does not contest that it sells Maui Jim prescription sunglasses without the genuine Maui Jim prescription lenses.  (*Id.* ¶ 21.)  Instead, SBG asserts that the Maui Jim frames and non-prescription lenses SBG sells are "100% genuine," and that SBG customers also receive prescription lenses "fabricated through [SBG] by a premium optical laboratory."  (*Id.*)

SBG's amended responsive pleading asserts counterclaims against Maui Jim for trade disparagement (Count I); defamation (Count II); violation of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.* (Count III); violation of California's Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.* (Count IV), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (Count V); violation of Article 101 of the Treaty on the Functioning of the European Union (Count VI); and in the alternative, unjust enrichment (Count VII).  (*Id.* ¶¶ 33–94.)

SBG alleges it brings its counterclaims "to compensate it for, and put an end to, Maui Jim's ongoing illegal campaign to stifle competition." (*Id.* ¶ 1.) According to SBG, Maui Jim "seeks to eradicate lawful competition and monopolize control over its worldwide supply chain, allowing it to illegally prop up prices of its eyewear." (*Id.* ¶ 2.) SBG further alleges Maui Jim's efforts to stifle competition from discount retailers include Maui Jim's alleged attempt to "exploit recent xenophobia by engaging in a negative public relations campaign that painted SmartBuyGlasses as a dishonest, foreign counterfeiter." (*Id.* ¶¶ 2, 26.) In furtherance of its efforts, SBG alleges Maui Jim issued a press release dated January 23, 2017, which included the following statement from Maui Jim's Vice President of Global Marketing:

> Companies that utilize these types of disingenuous and misleading sales practices undermine the integrity of the Maui Jim brand and the quality and technology it has come to represent . . . . [Maui Jim] simply cannot allow our brand to be harmed by the sale of counterfeit or non-genuine Maui Jim products that do not live up to our— and most importantly our customers'—expectations.

(*Id.* ¶ 28.) SBG also alleges that Maui Jim's corporate headquarters and customer service representatives falsely instructed potential customers that SBG sells "fake" or inauthentic products, and that SBG is "not an authentic website." (*Id.* ¶ 29.) Maui Jim has allegedly made the same claims of inauthenticity to United States customs officials. (*Id.* ¶ 30.) Moreover, SBG asserts Maui Jim "used this case to discover and then attempt to eviscerate SmartBuyGlasses' supply chain" by cancelling accounts with certain SBG suppliers after they were confidentially disclosed in discovery. (*Id.* ¶ 31.) SBG alleges that it has been harmed in the marketplace as a result of Maui Jim's actions. (*Id.* ¶ 32.)

Separately, SBG alleges that Maui Jim has entered into anticompetitive agreements with its distributors to maintain minimum retail prices and to restrict to whom distributors can sell. (*Id.* ¶ 52.) Maui Jim has allegedly threatened to terminate and has actually terminated retailers that have sold authentic goods to SBG. (*Id.* ¶¶ 56, 68.) As a result of these agreements, SBG

claims that consumers paid artificially high prices for Maui Jim sunglasses and that SBG's business was injured by Maui Jim's efforts to eliminate SBG's supply of Maui Jim sunglasses. (*Id.* ¶ 58.)

In addition, SBG alleges that it "sources the vast majority of its Maui Jim product from Member States within the European Union, and the alleged restrictive contracts at issue (particularly with respect to Maui Jim's tortious interference with contract claims) all involve retailers in the European Union." (*Id.* ¶ 88.) SBG claims that these contracts and Maui Jim's "actions to discover and close the accounts of [SBG's] suppliers within the European Union" caused SBG damage and violate European antitrust law. (*Id.* ¶¶ 89, 90.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief may be granted. We accept "the allegations in the complaint as true unless they are 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). The pleading must state a claim that is plausible on its face to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65). That is, while the plaintiff need not plead "detailed

factual allegations," the counterclaim must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.

Maui Jim's motion to strike is governed by Federal Rule of Civil Procedure 12(f), which states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because they "potentially serve only to delay," and so affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). To survive a motion to strike, an affirmative defense must satisfy a three-part test: "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge." *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014) (citation omitted). We follow the majority view of district court decisions in this circuit, which apply the pleading standard set forth in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, and *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, to affirmative defenses. *See Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015) ("aligning with the majority of courts in this district" in applying the *Twombly-Iqbal* standard); *Sarkis' Cafe*, 55 F. Supp. 2d at 1040; *Shield Tech. Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440, at *8 (N.D. Ill. Sept. 19, 2012) ("[W]e believe that the test applicable to affirmative defenses should reflect current pleading standards, and therefore adopt the majority view that *Twombly* and *Iqbal* apply to affirmative defenses."); *Riemer v. Chase Bank USA, N.A.*, 274 F.R.D 637, 639–40 (N.D. Ill. 2011) (collecting cases).

**ANALYSIS**

Maui Jim moves to dismiss with prejudice four counts in SBG's amended counterclaim. Specifically, Maui Jim argues SBG fails to allege the required elements of a trade disparagement claim (Count I); fails to plead defamation (Count II) with particularity or fails to state a claim because some of the allegedly defamatory statements are substantially true or constitute non-actionable opinion statements; does not allege an antitrust injury or a plausible relevant market in its federal antitrust claim (Count III); and fails to identify which counterclaimant has standing to sue under European antitrust law (Count VI). (Dkt. No. 184 at 1.)

In addition, Maui Jim moves to dismiss SBG's counterclaims under California law (Counts IV and V) for failure to allege the requisite elements or connection to California, and argues they are barred by the statute of limitations. (Dkt. No. 278 ¶ 1.) Maui Jim moves to dismiss SBG's European antitrust claim (Count VI) under *forum non conveniens* and principles of international comity. (Dkt. No. 196 at 1–2.) Maui Jim moves to dismiss SBG's unjust enrichment counterclaim (Count VII) under the *Noerr-Pennington* doctrine. (Dkt. No. 278 ¶ 2.) Finally, Maui Jim moves to strike SBG's first and fourth affirmative defenses. (*Id.* ¶¶ 3–4.)

## I.    TRADE DISPARAGEMENT (COUNT I)

SBG alleges Maui Jim published "false, disparaging, and highly damaging messages about the products and services that SmartBuyGlasses sells, namely that SmartBuyGlasses is selling and servicing counterfeit and non-genuine products." (2d Am. Countercl. ¶ 34.) Maui Jim argues this counterclaim must be dismissed because SBG fails to allege any connection to Illinois—a required element for bringing a trade disparagement claim in this forum. (Mem. in Support of Mot. to Dismiss ("Mem.") (Dkt. No. 186) at 6–10.) Maui Jim contends SBG fails to allege the circumstances related to the disputed transaction occurring "primarily and

substantially in Illinois." (*Id.* at 6–9.) Nor has SBG alleged any injury in Illinois, according to Maui Jim. (*Id.* at 9–10.)

SBG argues "there are no territorial limits to common law claims." (SBG's Opp'n to Pl.'s Mot. to Dismiss Countercls. I–IV in Defs.' Am. Countercl. ("Resp.") (Dkt. No. 231) at 3.) However, as a federal court exercising supplemental jurisdiction over state law claims, we apply the governing state law—here, Illinois. Illinois has codified the common law tort of trade disparagement in the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2(8). *Am. Wheel & Eng'g Co. v. Dana Molded Prod., Inc.*, 132 Ill. App. 3d 205, 211, 476 N.E.2d 1291, 1295 (1st Dist. 1985) ("Section 2(8) of the Uniform Act substantially embodies the common law tort of commercial disparagement."). Consequently, both common law trade disparagement and statutory UDTPA claims "are subject to the same analysis: in order to state a claim for trade disparagement and under the UDTPA a plaintiff must allege that defendant published untrue or misleading statements that disparaged the plaintiff's goods or services." *Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 494 F. Supp. 2d 934, 943 (N.D. Ill. 2007).

Furthermore, as Maui Jim correctly observes, many courts have held that claims that a defendant made false and misleading representations concerning the quality of plaintiff's goods must have a nexus to Illinois. *Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *10 (N.D. Ill. Sept. 22, 2014). Thus, as we previously explained, "the circumstances that relate to the disputed transaction [must] occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187, 835 N.E.2d 801, 854 (Ill. 2005); *Green Light Nat'l, LLC v. Kent*, No. 17 C 6370, 2018 WL 4384298, at *5 (N.D. Ill. Sept. 14, 2018) ("The [U]DTPA does not expressly confine its application to events or circumstances arising in Illinois. However, a 'long-standing rule of construction in Illinois holds

that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" (quoting *Avery*, 216 Ill. 2d at 184–85, 835 N.E.2d at 852)); *Underground Sols.*, 2014 WL 4703925, at *10 (collecting cases applying the reasoning in *Avery* to UDTPA claims); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011) (holding the rule stated in *Avery* applies to the UDTPA). There is "no single formula or bright-line test" for determining whether a transaction occurs within Illinois. *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 854; *accord Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App. 3d 53, 58, 865 N.E.2d 310, 315 (1st Dist. 2007). Several factors, however, are relevant to determining whether a transaction occurred "primarily and substantially" in Illinois: "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009); *see also In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 2623, 2005 WL 3077606, at *1 (N.D. Ill. Nov. 14, 2005).

SBG makes no attempt to show any connection to Illinois, and for the same reasons we previously dismissed its trade disparagement claim, we do so again for failure to allege a nexus to Illinois. It is undisputed that none of the SmartBuy entities are residents of Illinois, but are rather foreign businesses organized and with principal places of business in the Cayman Islands, Hong Kong, and Italy. (2d Am. Countercl. ¶¶ 8–11.) While the second amended counterclaim alleges that both this lawsuit and Maui Jim are located in Illinois, SBG fails to connect any of Maui Jim's alleged action forming the basis of its trade disparagement claim to Illinois. *Avery*, 216 Ill. 2d at 189, 835 N.E.2d at 855 (holding claims of non-Illinois plaintiffs insufficient where the only connection to Illinois is the headquarters of the defendant and the fact that a scheme "was disseminated" from Illinois); *Van Tassell v. United Mktg. Grp., LLC*,

795 F. Supp. 2d 770, 782 (N.D. Ill. 2011) (dismissing claim where "Illinois is implicated only because [one defendant] is headquartered in Illinois," despite the fact it was alleged to have carried out its part of the deceptive conduct there); *Phillips*, 372 Ill. App. 3d at 58, 865 N.E.2d at 315 ("The fact that a scheme to defraud was disseminated from a company's headquarters in Illinois is insufficient."). Furthermore, a plaintiff's claims are insufficient to state a claim under the UDTPA where, as here, the plaintiff "exclusively offers evidence of . . . nationwide, as opposed to Illinois-specific, conduct." *LG Elecs.*, 809 F. Supp. 2d at 862. Nor does the counterclaim contain allegations permitting a plausible inference that SBG has suffered any damage in Illinois. (*See* 2d Am. Countercl. ¶¶ 32, 39 (alleging broadly that SBG has been damaged "in the marketplace" or in "global commerce").) Accordingly, SBG has not alleged facts that, if true, establish a factual nexus with Illinois as required to entitle it to the relief it seeks in its trade disparagement claim. Count I is therefore dismissed, with prejudice.

## II.   DEFAMATION (COUNT II)

Maui Jim also moves to dismiss SBG's defamation counterclaim. (Mem. at 10–16.) To state a defamation claim in Illinois, a claimant "must present facts showing that the defendant made a false statement about [it], that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 836 (N.D. Ill. 2015) (quoting *Green v. Rogers,* 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (Ill. 2009)). Certain categories of defamatory statements are considered so damaging on their face that a plaintiff need not plead or prove damages. *Bryson v. News Am. Publications, Inc.*, 174 Ill. 2d 77, 87, 672 N.E.2d 1207, 1214 (Ill. 1996). Among those categories of defamation *per se* are defamatory statements that "impute a person is unable to perform or lacks integrity in performing her or his employment duties" and words that

"otherwise prejudice[] that person in her or his profession." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 580, 852 N.E.2d 825, 839 (Ill. 2006).

SBG identifies five paragraphs in its counterclaim that constitute its claim for defamation *per se* because they either impute a want of integrity in SBG's professional duties or prejudice SBG's business. (2d Am. Countercl. ¶¶ 26–30, 43.)[2] Maui Jim argues SBG fails to plead some of the allegedly defamatory statements with the required specificity and argues the claim is foreclosed because other alleged statements are substantially true or are not defamatory *per se* under Illinois' innocent construction rule. (Mem. at 10–16.)

### A. Paragraphs 29 and 30: Pleading Defamation *Per Se*

Maui Jim argues that paragraphs 29 and 30 of SBG's defamation *per se* counterclaim is not pleaded with the required particularity. (Mem. at 10.)[3] Maui Jim argues that these paragraphs constitute "disjointed snippets" that are insufficient to meet Illinois' standard for pleading defamation *per se*. (Mem. at 11 (referring to 2d Am. Countercl. ¶¶ 29, 30).)

A claim in federal court for defamation *per se* is held to "the usual rules for notice pleading established by Rule 8." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). "The complaint must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *McGreal v. AT & T Corp.*,

---

[2] The parties' briefs refer to paragraph numberings in SBG's amended counterclaim, which are off by one from the paragraph numberings in the second amended counterclaim. (*Compare* Am. Countercl. (Dkt. No. 131) ¶ 27, *with* 2d Am. Countercl. ¶ 26 (identical).) This opinion uses the second amended counterclaim, as the operative pleading, *see supra* n.1, to reference the relevant paragraphs and the parties' arguments pertaining to them.

[3] The parties' arguments center on four paragraphs in SBG's counterclaims. (*See* 2d Am. Countercl. ¶¶ 26, 27, 29, 30.) The parties agree that paragraphs 26 and 27 of SBG's second amended counterclaim are not defamatory statements, and we thus do not consider them in our analysis. (*See* Mem. at 11; Resp. at 3 (clarifying that these paragraphs are not defamatory statements, but provide context in which defamatory statements are made).)

892 F. Supp. 2d 996, 1016–17 (N.D. Ill. 2012) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S. Ct. 992, 995 (2002)). The complaint need not report the allegedly defamatory statement verbatim, "but its substance must be pleaded with 'sufficient precision and particularity so as to permit initial judicial review of its defamatory content.'" *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 836 (N.D. Ill. 2015) (quoting *Green*, 234 Ill. 2d at 492, 917 N.E.2d at 459). This standard does not amount to a heightened pleading requirement, but instead constitutes the requirements to plead substantive elements for defamation *per se* under Illinois law. *Id.*

The relevant paragraphs in SBG's counterclaim sufficiently plead defamation *per se* under the Rule 8 standard. SBG's counterclaim alleges that, in responding to consumer questions about SBG, "Maui Jim's corporate headquarters and customer service representatives have falsely instructed potential SmartBuyGlasses' customers that SmartBuyGlasses sells counterfeit goods, that the Maui Jim sunglasses SmartBuyGlasses sells are 'fake' or 'not authentic,' and that SmartBuyGlasses 'is not an authentic website.'" (2d Am. Countercl. ¶ 29.) SBG also alleges that Maui Jim "contacted SmartBuyGlasses' customers directly and claimed that the sunglasses the customers purchased through SmartBuyGlasses are not genuine." (*Id.*) SBG claims that Maui Jim's communications with SBG consumers cause SBG to "lose substantial business from potential customers and to refund existing customers who returned Maui Jim sunglasses solely because of Maui Jim's false claims that the product SmartBuyGlasses sold was counterfeit." (*Id.*) These allegations detail who was speaking (Maui Jim representatives), to whom (potential SBG customers), and what made the statements defamatory (that Maui Jim sunglasses sold by SBG are fakes). Similarly, SBG alleges that "Maui Jim has falsely claimed to customs officials that Maui Jim sunglasses shipped by SmartBuyGlasses to U.S. consumers were 'not genuine,' causing the authentic sunglasses to be

seized by U.S. customs." (2d Am. Countercl. ¶ 30.) Here too, SBG pleads who spoke (Maui Jim), to whom (U.S. customs officials), and what was said (sunglasses were "not genuine") with sufficient precision to allow for initial judicial review. *Ludlow*, 79 F. Supp. 3d at 836.

Maui Jim relies primarily on *McGreal v. AT & T Corp.* to argue that SBG's claims are mere "snippets" of quotes that amount to "words or phrases without any context." (Mem. at 11–12 (quoting *McGreal*, 892 F. Supp. 2d at 1017).) The comparison is inapposite. In *McGreal*, the plaintiff generally alleged the defendant made public statements against her veracity and integrity by stating she made misrepresentations, concealed lies, schemed, had been untruthful, made false statements, engaged in a conspiracy, was disingenuous, and made "dishonest attempt." 892 F. Supp. 2d at 1016. The plaintiff did not otherwise clarify who made these statements or how they were published. *Id.* at 1017. She also failed to tie the statements to her integrity in performing her employment duties beyond abstractly reciting that "veracity and integrity are two required traits" for her profession. *Id.* By contrast, SBG alleges who made the defamatory statements, how they were published, and the substance of those statements with enough specificity to provide notice of its claim. *See Ludlow*, 79 F. Supp. 3d at 836–37. Furthermore, SBG's allegations tie the defamatory statements into categories of defamation *per se*, namely words that impute lack of integrity in employment duties or that prejudice a person in his or her profession. *Green*, 234 Ill. 2d at 492, 917 N.E.2d at 459.

Accordingly, SBG's allegations in paragraphs 29 and 30 of its second amended counterclaim are sufficiently pleaded. *See Gehrls v. Gooch*, No. 09 C 6338, 2010 WL 1849400, at *3 (N.D. Ill. May 7, 2010) ("[A]t the motion to dismiss stage, plaintiff is entitled to all reasonable inferences and the exact details and substance of the statements made will be discerned through discovery.") Maui Jim's motion to dismiss SBG's defamation claim is denied as to these paragraphs.

13

## B.    Paragraph 28: Innocent Construction

Paragraph 28 of SBG's counterclaim alleges that Maui Jim's Vice President of Global

Marketing made defamatory statements in a press release issued by Maui Jim.

(2d Am. Compl. ¶ 28.)[4]  The press release, which publicized Maui Jim's present suit against

SBG, contains five paragraphs.  (Press Release (Dkt. No. 131–1).)  The first four paragraphs

discuss Maui Jim's allegations against SBG.  (*Id.*)  The fifth paragraph contains the allegedly

defamatory quotes, as follows:

> "Companies that utilize these types of disingenuous and misleading sales practices
> undermine the integrity of the Maui Jim brand and the quality and technology it has come
> to represent," said Jay Black, Maui Jim Vice President, Global Marketing.  "This lawsuit
> was filed to protect our brand and the inherent value of its earned reputation, as well as
> our customers and our authorized retailers.  We simply cannot allow our brand to be
> harmed by the sale of counterfeit or non-genuine Maui Jim products that do not live up to
> our—and most importantly, our customers'—expectations."

(*Id.*)

Maui Jim argues that these statements fall under Illinois' innocent construction rule and

thus are not actionable as defamation *per se*.  (Mem. at 14.)  In Illinois, a statement that is

allegedly defamatory "will not be actionable *per se* if it is reasonably capable of an innocent

construction."  *Tuite v. Corbitt*, 224 Ill. 2d 490, 502, 866 N.E.2d 114, 121 (Ill. 2006); *see also*

*Bryson*, 174 Ill. 2d at 90, 672 N.E.2d at 1215 ("Only *reasonable* innocent constructions will

remove an allegedly defamatory statement from the *per se* category.").  "Whether a statement is

reasonably susceptible to an innocent interpretation is a question of law for the court to decide."

---

[4] Paragraph 28 indicates that the press release is "[a]ttached hereto as Exhibit A."
(2d Am. Countercl. ¶ 28.)  While the full press release was attached as an exhibit to SBG's first
amended counterclaim, (*see* Dkt. No. 131–1), it is not attached to SBG's second amended
counterclaim.  Nonetheless, "pleadings may incorporate earlier pleadings by reference,"
Fed. R. Civ. P. 10(c)," *Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir. 1977).  Accordingly, we
consider the full press release attached to SBG's prior pleading as incorporated by reference in
SBG's second amended counterclaim.

*Bryson*, 174 Ill. 2d at 90, 672 N.E.2d at 1215. In so deciding, "courts must interpret the words 'as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader.'" *Tuite*, 224 Ill. 2d at 512, 866 N.E.2d at 127 (quoting *Bryson*, 174 Ill. 2d at 93, 672 N.E.2d at 1217).

The parties agree that the first four paragraphs of the press release are not defamatory because they refer to Maui Jim's allegations against SBG. (Mem. at 14; Resp. at 9 (distinguishing fifth paragraph from remainder of press release).) However, SBG argues that "the fifth paragraph—which includes the defamatory statements—does not signal to the reader that Maui Jim is referring to allegations in its complaint." (Resp. at 9.)

On this score, SBG is incorrect: SBG's second amended counterclaim excises a sentence in the middle of the supposedly offending paragraph that refers to the lawsuit. (*Compare* Press Release at 1 (including sentence that states "*This lawsuit was filed* to protect our brand and the inherent value of its earned reputation, as well as our customers and our authorized retailers." (emphasis added), *with* 2d Am. Countercl. ¶ 28 (replacing this sentence with ellipses).) What is more, the fifth paragraph is devoid of any reference to SBG. The only way the fifth paragraph refers to SBG is if it is read in the context of the entire press release, the remainder of which deals entirely with Maui Jim's lawsuit against SBG. (*Id.*) When the press release is "read as a whole and the words given their natural and obvious meaning," the statements in the fifth paragraph refer to Maui Jim's lawsuit and its allegations against SBG, instead of a defamatory attack that can be separated from the bulk of the press release. *Tuite*, 224 Ill. 2d at 502, 866 N.E.2d at 121.

Accordingly, Maui Jim's motion to dismiss SBG's defamation *per se* counterclaim is granted as to the allegations in paragraph 28 of SBG's second amended counterclaim, with prejudice.

## III.    ANTITRUST COUNTERCLAIM (COUNT III)

In Count III, SBG alleges Maui Jim has violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  (2d Am. Countercl. ¶¶ 47–60.)  SBG asserts Maui Jim enters into contracts with authorized distributors, setting minimum retail prices and restricting resale "for the express purpose of eliminating or suppressing price competition among retailers of Maui Jim sunglasses."  (*Id.* ¶¶ 52, 55.)  SBG further alleges Maui Jim has threatened to terminate retailers that "failed to adhere to this anticompetitive policy, including retailers that sold authentic products to SmartBuyGlasses."  (*Id.* ¶ 56.)  As a result, SBG alleges Maui Jim's anticompetitive conduct caused consumers to pay artificially high prices for Maui Jim sunglasses and be deprived of free and open competition in the market and caused injury to SBG's business through the restriction and elimination of its supply of Maui Jim sunglasses.  (*Id.* ¶ 58.)

"The purpose of the Sherman Act is to protect consumers from injury that results from diminished competition."  *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334–35 (7th Cir. 2012).  "To state a Section 1 claim, a plaintiff must plead facts plausibly suggesting: (1) a contract, combination, or conspiracy (meaning, an agreement); (2) a resulting unreasonable restraint of trade in a relevant market; and (3) an accompanying injury."  *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 949 (N.D. Ill. 2018).  Maui Jim does not take issue with the first element, but argues that SBG's counterclaim fails the second and third elements as it does not allege a "relevant market" and fails to assert a cognizable injury.  (Mem. at 17–21.)

### A.    Antitrust Injury

Maui Jim argues SBG's Section 1 claim must be dismissed because SBG has not alleged an antitrust injury necessary to bring the claim as a beneficiary of the alleged antitrust violation. (Mem. at 17–19.)  To maintain a claim under the Sherman Act, "Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that

16

flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 697 (1977).

 "A competitor may not 'recover damages for any conspiracy . . . to charge higher than competitive prices," because although "[s]uch conduct would indeed violate the Sherman Act," it cannot injure a claimant competitor because competitors "'stand to gain from any conspiracy to raise the market price.'" *O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc.*, 36 F.3d 565, 573 (7th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 582, 106 S. Ct. 1348, 1354 (1986)); *see also JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 778 (7th Cir. 1999) (holding that there was no injury and stating, "You want your competitors to charge high prices."). SBG squarely characterizes itself as a "direct competitor of Maui Jim." (2d Am. Countercl. ¶ 54.) SBG's allegations claim that Maui Jim eliminated other competitors that did not adhere to Maui Jim's alleged artificially high price restraints. (2d Am. Countercl. ¶¶ 55–56, 58.) SBG's antitrust claim therefore does not allege antitrust injury because, as a "direct competitor of Maui Jim," Maui Jim's alleged contracts resulted in "artificially high prices for Maui Jim sunglasses." (*Id.* ¶¶ 54, 58.) *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d at 954 (finding no antitrust injury where "the alleged market allocation [plaintiff] complains of would have *helped* [it] by eliminating its alleged competitors and, after they raised prices, allowing it to undercut them"). On this ground alone, SBG's Sherman Act claim should be dismissed.

SBG nevertheless alleges it was harmed "because Maui Jim has unlawfully restricted and seeks to eliminate [SBG's] supply of Maui Jim sunglasses." (2d Am. Countercl. ¶ 58.) SBG's brief characterizes this injury as impacting SBG's business model and forcing SBG out of the market because SBG "can no longer source [Maui Jim sunglasses] from certain distributors or buy in bulk at a certain price." (Resp. at 14.) SBG's elucidation of this injury conflicts with

SBG's clear framing of itself as Maui Jim's direct competitor. (*See* 2d Am. Countercl. ¶ 54.)

*O.K. Sand & Gravel, Inc.*, 36 F.3d 565, 572–73 ("Clearly, price increases could not be considered an antitrust injury to competitors.") Moreover, SBG cites no authority tying its claimed harm to a recognized antitrust injury. (*See* Resp. at 14–15.) *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("'[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'" (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *see also Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 775 (N.D. Ill. 2005) ("It is not this Court's job to make parties' arguments for them, and it will not do so in this case.").

### B.     Single-Brand Market

In addition, Maui Jim argues that SBG's antitrust claim cannot survive because SBG improperly alleges a single-brand market. (Mem. at 19–21.) SBG identifies the alleged relevant antitrust market as the "Maui Jim sunglasses market, specifically Maui Jim sunglasses that are marketed and sold throughout the United States either online or through retail stores." (2d Am. Countercl. ¶ 50.) To establish a Section 1 claim, a plaintiff has the burden of identifying the existence of a relevant product market. *Agnew*, 683 F.3d at 337. A relevant product market is defined by "the reasonable interchangeability of the products and the cross-elasticity of demand for those products." *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1011 (N.D. Ill. 2017) (quoting *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1070 (N.D. Ill. 2016)); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 901 (N.D. Ill. 2011) ("In other words, the products in a market must have unique attributes that allow them to be substituted for one another, but make them difficult to replace with substitute products from outside the market.").

"When a complaint limits the relevant market to a 'single brand, franchise, institution, or comparable entity that competes with potential substitutes,' a court should dismiss the complaint unless the complaint contains sufficient factual allegations that make it plausible there is no substitute." *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *4 (N.D. Ill. Aug. 29, 2013) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001)).  The requirement that a relevant product market for antitrust purposes comprises more than a single brand "stems from the principle that antitrust law serves to protect competition, not competitors." *House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 64657, at *6 (N.D. Ill. Jan. 8, 2014) (citing *42nd Parallel N. v. E St. Denim Co.*, 286 F.3d 401, 405 (7th Cir. 2002) ("Antitrust laws protect competition and not competitors.")).  In limited circumstances, a relevant single-brand market has been found where consumers were "locked in" to purchasing a future product or service or where the product is so unique that there is no substitute. *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 136 F. Supp. 3d 911, 917 (N.D. Ill. 2015), *aff'd*, 870 F.3d 682 (7th Cir. 2017) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461–79, 112 S. Ct. 2072, 2079–89 (1992)); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 961 (N.D. Ill. 2018) ("In rare circumstances, a single brand of a product or service can constitute a relevant market for antitrust purposes." (quoting *PSKS, Inc. v. Leegin Creative Leather Prod., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010)).

Although a single-brand market may exist, SBG has not pleaded facts demonstrating that Maui Jim's sunglasses are unique and cannot be substituted with other manufacturers' sunglasses.  SBG's minimal allegations say nothing regarding cross-elasticities of supply or demand.  *Int'l Equip. Trading*, 2013 WL 4599903, at *4; *see also House of Brides*, 2014 WL 64657, at *6 (finding allegations that the brand had "an inelasticity of demand, and

little cross-elasticity of demand" between the product and competing products, along with allegations that customers do not consider other brands suitable substitutes even in the face of a "significant, non-transitory increase in the price," fell short of "rendering it plausible that there exist no interchangeable substitutes"). Consumer preferences do not create a single-brand market. *House of Brides*, 2014 WL 64657, at *6 (citing *Spahr v. Leegin Creative Leather Prods., Inc.*, 2008 WL 3914461 at *9–10 (E.D. Tenn. 2008) ("While Brighton-brands may enjoy some market loyalty, it cannot reasonably be argued that other handbags, wallets, shoes, jewelry and the like do not serve the same purpose and have the same use as Brighton-brand products."); *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) ("The plaintiff's argument is analogous to a contention that a consumer is 'locked into' Pepsi because she prefers the taste, or NBC because she prefers 'Friends,' 'Seinfeld,' and 'E.R.' A consumer might choose to purchase a certain product because the manufacturer has spent time and energy differentiating his or her creation from the panoply of products in the market, but at base, Pepsi is one of many sodas, and NBC is just another television network.")). SBG's counterclaim includes no allegation creating a plausible inference that this is the rare case in which a single-brand market is actionable. *See, e.g.*, *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1012 (N.D. Ill. 2017) (dismissing antitrust claim for lack of plausible relevant market, explaining "the counterclaims leave the matter to speculation, which they cannot do"). The asserted single-brand market in Maui Jim sunglasses is all the more implausible in light of SBG's allegation that it sells "products from more than 180 of the world's best-selling designer brands at attractive prices." (2d Am. Countercl. ¶ 13.) SBG's counterclaim thus "contradicts its narrow market definition" by revealing that upward of 179 other sunglasses brands are competitive alternatives to Maui Jim sunglasses. *Int'l Equip.*

*Trading*, 2013 WL 4599903, at *4. SBG's failure to plead a plausible relevant market renders dismissal appropriate.

SBG argues that we cannot determine there are no interchangeable substitutes for Maui Jim sunglasses without the aid of discovery. (Resp. at 13–14.) In support, SBG points to Maui Jim's allegation in its amended complaint that its sunglasses incorporate "patented, color-infused lens technology" and this proprietary technology "distinguishes [Maui Jim] Sunglasses from its competitors." (*Id.*; *see also* Am. Compl. ¶ 20.) SBG's only other allegation that Maui Jim sunglasses constitute a market unto themselves states, "Maui Jim's products are differentiated by virtue of their labeling and design." (2d Am. Countercl. ¶ 49.) "Although market definition is a deeply fact-intensive inquiry, failure to offer a plausible relevant market is a proper ground for dismissing an antitrust claim." *Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 886 (N.D. Ill. 2015) (quotations omitted) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001); *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719–20 (6th Cir. 2003); *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *Int'l Equip. Trading*, 2013 WL 4599903, at *3). "That market definition is often, or even usually, a fact-intensive exercise, however, says nothing about whether the plaintiffs' allegations of a single brand market in this case warrant further discovery." *House of Brides*, 2014 WL 6845862, at *4. Even though Maui Jim has alleged some basis for the uniqueness of its sunglasses and the proprietary technology used therein, our conclusion remains the same that the counterclaims do not permit an inference the sunglasses are not interchangeable or that consumers are at all "locked in" to purchasing sunglasses only from Maui Jim.

As SBG's antitrust allegations fail on two essential elements of a Sherman Act claim and further amendment would be futile, we grant Maui Jim's motion to dismiss Count III of SBG's second amended counterclaim with prejudice.

## IV. CALIFORNIA COUNTERCLAIMS (COUNTS IV & V)

SBG's second amended counterclaim asserts two violations of California law against Maui Jim. Count IV of SBG's counterclaim alleges that Maui Jim violated California's antitrust law, the Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.* (2d Am. Countercl. ¶¶ 61–76.) Count V alleges that Maui Jim violated California's unfair competition law, Cal. Bus. & Prof. Code § 16720 *et seq.* (2d Am. Countercl. ¶¶ 77–85.) Maui Jim moves to dismiss these counterclaims under Rule 12(b)(6). (Dkt. No. 278 at 1.)

### A. Cartwright Act Counterclaim

Count IV of SBG's counterclaims alleges Maui Jim violated California's Cartwright Act. (2d. Am. Countercl. ¶ 71.) Maui Jim argues that SBG has no standing to bring the claim because it has not adequately alleged injury under the Cartwright Act. (Dkt. No. 280 ("MJ Cal. Mem.") at 8–10.) As with the Sherman Act claim, Maui Jim argues that SBG benefits, as a competitor, from allegedly higher prices of Maui Jim's product. (*Id.* at 9–10.) SBG counters that standing under the Cartwright Act is broader than under the federal Sherman Act. (Dkt. No. 289 ("SBG Cal. Resp.") at 5.)

SBG is correct that federal and California antitrust standing are not coterminous. "Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century." *Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal. 4th 1185, 1195, 292 P.3d 871, 877 (Cal. 2013). The Cartwright Act is broader in that it allows one whose business or property is injured by

prohibited conduct to sue "regardless of whether such injured person dealt directly or indirectly with the defendant." Cal. Bus. & Prof. Code § 16750(a); *see also Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1233–34 (Cal. Ct. App. 1993) (analyzing Cartwright Act antitrust standing under § 16750(a).) Nonetheless, to establish standing under the Cartwright Act, SBG must still show actionable injury, which has four requirements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999)).

SBG does not allege that it was overcharged by retailers of Maui Jim sunglasses because of Maui Jim's alleged price fixing, which is a typical form of injury. *See, e.g., Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 784 (Cal. 2010) (characterizing a purchaser as injured by an initial overcharge, even if that purchaser passed on the overcharge to a downstream consumer); *Cellular Plus, Inc.*, 14 Cal. App. 4th at 1234–35 (finding consumers "injured directly by the alleged retail price fixing and indirectly by the alleged wholesale price fixing"). Nor does SBG allege that it ever tried to purchase Maui Jim sunglasses from its California distributors. Instead, SBG's claimed injury is more tenuous. It first alleges that Maui Jim required its distributors to agree to its General U.S. Policies, which contained within them a policy that Maui Jim retailers may not sell below the manufacturer's suggested retail price. (2d Am. Countercl. ¶¶ 65–67.) Then, SBG alleges that Maui Jim threatened to terminate, and did terminate, retailers who failed to adhere to the Policies, including retailers that sold to SBG. (*Id.* ¶ 68.) As a result, SBG claims it lost revenue from its inability to sell Maui Jim sunglasses. (*Id.* ¶ 73.)

SBG's claimed injury is insufficient for at least two reasons. First, as discussed above, SBG has alleged that it is Maui Jim's direct competitor (*id.* ¶ 54), and thus it would stand to gain by an agreement to raise Maui Jim prices. *Am. Ad Mgmt., Inc.*, 190 F.3d at 1056 ("There can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct. Competitors who challenge a rival's price-fixing are often unable to show injury." (citation omitted)). Even that aside, SBG does not claim that Maui Jim terminated retailers *because of* violations of its alleged price-fixing policy. (*See* MJ Cal. Reply at 2.) SBG in fact alleges that Maui Jim terminated retailers who sell to SBG for another reason: because of this litigation. (2d Am. Countercl. ¶ 31 (alleging that Maui Jim closed accounts of SBG suppliers disclosed in this litigation).) Injury under the Cartwright Act must "flow[] from that which makes the conduct unlawful," *Knevelbaard*, 232 F.3d at 987; *see also Am. Ad Mgmt., Inc.*, 190 F.3d at 1056 (describing this requirement); *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 723, 187 Cal. Rptr. 797, 807 (Cal. Ct. App. 1982) (under the Cartwright Act, "[a]n 'antitrust injury' must be proved; that is, the type of injury the antitrust laws were intended to prevent, and which flows from the invidious conduct which renders defendants' acts unlawful."). SBG fails to draw a plausible connection between Maui Jim's alleged price fixing and its reason for terminating retailers that sold product to SBG. *See Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966 (requiring antitrust allegations to cross the plausibility threshold).

Accordingly, we dismiss Count IV of SBG's second amended counterclaim. SBG seeks leave to amend to include additional facts produced in discovery. (SBG Cal. Resp. at 5.) SBG added its California counterclaims without leave of this Court after it had already amended its counterclaims against Maui Jim once. (Dkt. No. 131.) *See* Fed. R. Civ. P. 15(a) (a party may amend a pleading once as a matter of course, and further "only with the opposing party's written consent or the court's leave"). We see no reason to allow this claim to go to discovery only so

that SBG may conduct a "fishing expedition" that may result in a viable antitrust claim. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015); *see also Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 759 (7th Cir. 2002) ("It is well within the province of the district court to deny leave to amend if, among other things, there is undue delay or undue prejudice would result to the opposing party if the amendment were allowed."). We therefore dismiss Count IV with prejudice.

### B. Unfair Competition Law Claim

Count V of SBG's second amended counterclaim asserts violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.* (2d Am. Countercl. ¶¶ 77–85.) The UCL proscribes both "unlawful" and "unfair" business practices, and a claimant "can only assert an 'unlawful' practice insofar as it can assert violations of other laws." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1011 (N.D. Cal. 2013). The factual allegations of Count V are the same as those of Count IV. (2d Am. Countercl. ¶ 78 ("The conduct of Maui Jim and the retailers set forth above in [SBG's] Cartwright Act claim (Count III [sic]) constitutes unlawful practices" under the UCL); *id.* ¶ 80 (same facts supporting "unfair" conduct under the UCL).)

The parties essentially agree that SBG's UCL claim must rise or fall with SBG's Cartwright Act claim. (*Compare* MJ Cal. Mem. at 14 (arguing failure to establish Cartwright Act claim requires dismissal of UCL claim), *with* SBG Cal. Resp. at 7 ("Because [SBG] sufficiently alleges a Cartwright Act claim, its UCL claim is proper.") As we have dismissed SBG's Cartwright Act claim, we also dismiss Count V. *See Cascades Computer Innovation LLC v. RPX Corp.*, No. 12 C 1143 YGR, 2013 WL 316023, at *15 (N.D. Cal. Jan. 24, 2013) ("[B]ecause [Plaintiff's] UCL claim is not materially different than its federal and state antitrust claims, its UCL claim necessarily fails as well."); *Ingels v. Westwood One Broad. Servs.,*

*Inc.,* 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933 (Cal. Ct. App. 2005) ("'If the [underlying] claim is dismissed, then there is no 'unlawful' act upon which to base . . . the derivative Unfair Competition claim.'") (second alteration in original)). For the reasons stated above, we do so with prejudice.

## V. EUROPEAN ANTITRUST COUNTERCLAIM (COUNT VI)

Count VI of SBG's counterclaim ("EU Antitrust Claim") alleges that Maui Jim's contracts with "authorized" distributors and its actions to uncover and close accounts of suppliers of Maui Jim sunglasses to SBG violate Article 101(1)(a)–(c) of the Treaty on the Functioning of the European Union ("TFEU"). (2d Am. Countercl. ¶¶ 87–89.) Maui Jim mounts three attacks on this claim. First, in its Rule 12(b)(6) motion to dismiss, Maui Jim argues that SBG fails to plead with specificity which defendant brings the EU Antitrust Claim. (Mem. at 21–22.) Second and third, Maui Jim asserts in a separate motion that the EU Antitrust Claim should be dismissed based on the principle of *forum non conveniens*, or, in the alternative, international comity. (Dkt. No. 196.) Although principles of international comity are central to this claim, they are best considered within the doctrine of *forum non conveniens*, which here counsels dismissal. As we grant Maui Jim's motion to dismiss on *forum non conveniens* grounds, we do not consider its other 12(b)(6) arguments.

### A. *Forum Non Conveniens* Standard

The doctrine of *forum non conveniens* allows a federal court to dismiss a claim when a foreign jurisdiction would provide a more convenient forum to adjudicate the matter, and dismissal would serve the ends of justice. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 127 S. Ct. 1184, 1188 (2007); *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S. Ct. 828, 833 (1947). "Stated more simply, a district court may dismiss a case on *forum non conveniens* grounds when it determines that there are 'strong reasons for

believing it should be litigated in the courts of another, normally a foreign, jurisdiction.'"

*Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (quoting *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015)). District courts approach the doctrine with caution as it is "an exceptional one that a court must use sparingly." *Id.* As such, "[t]he exceptional nature of a dismissal for *forum non conveniens* means that a defendant invoking it ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Id.* at 806 (citing *Sinochem*, 549 U.S. at 430, 127 S. Ct. at 1191).

To determine whether dismissal on *forum non conveniens* grounds is appropriate, a district court must decide whether there is an available and adequate alternative forum to hear the case and evaluate relevant private and public interest factors identified by the Supreme Court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252, 258 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S. Ct. 839, 843 (1947); *Deb*, 832 F.3d at 807 (7th Cir. 2016); *Fischer*, 777 F.3d at 867. The private interest factors to consider are:

> [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and [3] the cost of obtaining attendance of willing, witnesses; [4] possibility of view of premises, if view would be appropriate to the action; and [5] all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (quoting *Gilbert*, 330 U.S. at 508, 67 S. Ct. at 843). The public interest factors to consider are:

> [1] the administrative difficulties stemming from court congestion; [2] the local interest in having localized disputes decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (citing *Gilbert*, 330 U.S. at 508–09, 67 S. Ct. at 843). "The *forum non conveniens* determination is committed to the sound discretion of the trial court. . . . [W]here the court has considered all relevant public and private interest factors, and where its balancing of these

factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co.*,

454 U.S. at 257, 102 S. Ct. at 266.

### B.     Available and Adequate Alternative Forum

As an initial matter, the parties do not dispute that a European Union member state would

provide an available and adequate forum to adjudicate SBG's EU Antitrust Claim.

(*See* Dkt. No. 233 ("SBG EU Resp.") at 4 ("SBG does not dispute that there are several available

and adequate forums in EU member states that would possess jurisdiction over the TFEU

claim.").)  Thus, the first step in the *forum non conveniens* analysis is satisfied, leaving only the

requisite balancing of private and public interest factors.  *Sinochem Int'l Co.*, 549 U.S. at 429,

127 S. Ct. at 1190; *Fischer*, 777 F.3d at 867–68.

### C.     Balancing of Factors

Turning to the balancing of factors, we first observe that, generally, "a plaintiff's choice

of forum should be disturbed only if the balance of public and private interest factors strongly

favors the defendant."  *Clerides*, 534 F.3d at 628.  Typically, the presumption in favor of the

plaintiff's choice of forum "applies with less force when the plaintiff or real parties of interest

are foreign."  *Piper Aircraft Co.*, 454 U.S. at 255, 102 S. Ct. at 266.  In this case, Maui Jim's

challenge to a sole SBG counterclaim for inconvenient forum is striking given that it was Maui

Jim, not SBG, who chose to litigate in this forum.  However, the practice is not unprecedented in

this district.  *See, e.g.*, *Nalco Co. v. Chen*, No. 12 C 9931, 2013 WL 4501425, at *7

(N.D. Ill. Aug. 22, 2013) (considering and denying plaintiff's motion to dismiss counterclaims

on *forum non conveniens* grounds).  Moreover, our analysis of the relevant private interest

factors—and in particular the public interest factors—leads us to conclude that dismissal of

SBG's EU Antitrust Claim on *forum non conveniens* is appropriate here.

### 1. Private Interest Factors

Maui Jim argues that access to sources of proof and the availability of compulsory process in Europe both weigh in favor of dismissal. (Dkt. No. 199 ("MJ EU Mem.") at 8–9.)[5] *See Clerides*, 534 F.3d at 28. As Maui Jim points out, (MJ EU Mem. at 8–9), SBG's allegations reveal that the EU Antitrust Claim and underlying evidence are centered almost exclusively in Europe. SBG alleges that it "sources the vast majority of its Maui Jim product from Member States within the European Union, and the alleged restrictive contracts at issue . . . all involve retailers in the European Union." (2d Am Countercl. ¶ 88.) It also alleges that "Maui Jim's anticompetitive actions caused the restriction of trade between retailers in the European Union and [SBG]." (*Id.*)

SBG faults Maui Jim for failing to identify specific witnesses or documents that would be difficult to obtain outside of Europe. (SBG EU Resp. at 5–6.) SBG also argues that the availability of compulsory process in Europe is at best a neutral factor because the subject matter of Maui Jim's affirmative Lanham Act and tortious interference claims cover the same subject matter as SBG's EU Antitrust Claim and would produce overlapping evidence. (*Id.* at 6–8.) SBG contends further that documents concerning European supply chains and contractual arrangements "are not only accessible but have also been accessed and are being produced." (*Id.* at 8.)

In reply, Maui Jim vigorously disputes that any such production of evidence from SBG has occurred. (Dkt. No. 238 ("MJ EU Reply") at 10; *see also* Dkt. No. 234 (Order staying

---

[5] Maui Jim has filed two versions of its memorandum of law in support of its motion to dismiss SBG's EU Antitrust Claim, one public, the other under seal. (*See* Dkt. No. 199 (public); Dkt. No. 200 (under seal); *see also* Dkt. No. 323 (granting filing under seal).) The two versions are identical aside from select redactions in the text of the memorandum and three sealed exhibits. This opinion refers only to the public version unless otherwise specified.

antitrust discovery).)  Maui Jim also argues that while its tortious interference claim is limited to the United States and Italy, SBG's EU Antitrust Claim has a much wider potential scope covering several European countries or the whole of Europe, while not including the United States.  (*Id.* at 3.)  Maui Jim's Lanham Act claims, moreover, do not appear to require application of European law, and SBG does not explain how this subject matter would overlap with its EU Antitrust Claim.  (*Id.* at 6.)

We agree with Maui Jim that, while its affirmative tortious interference claim may require evidence centered in Italy and the United States, the potential reach of SBG's EU Antitrust Claim weighs in favor of dismissal because most of the evidence regarding this claim is likely to be in Europe.  SBG's point is well taken that compulsory process in Europe may be a wash, depending on the course of litigation of Maui Jim's claims regarding agreements in European countries.  On balance, though, the private interest factors weigh slightly toward dismissal on *forum non conveniens* grounds.

### 2.  Public Interest Factors

Maui Jim and SBG also dispute relevant the public interest factors.  Maui Jim contends that congestion in this district warrants dismissal, that Europe's local interest is better vindicated by hearing SBG's EU Antitrust Claim in a European Union member state, and that applying the governing European Union law and burdening a domestic jury with European Union law favors dismissal.  (MJ EU Mem. at 10–11.)  Maui Jim also advances an extended argument in the alternative that principles of international comity require dismissal.  (*Id.* at 11–15.)  SBG counters that Maui Jim does not analyze court congestion appropriately because it provides no information as to how fast a disposition might be reached in a European court.  (SBG EU Resp. at 9.)  SBG also argues that a domestic jury will be empaneled in any event should this case reach trial, and having that jury decide the additional matter of its EU Antitrust Claim would

constitute a *de minimis* burden.  (*Id.* at 11.)  Moreover, SBG contends that its defenses to Maui Jim's counterclaims may require the Court to interpret European law, and that courts routinely apply matters of foreign law when called upon to do so.  (*Id.* at 11–12.)

While we consider all of the above public interest concerns, we find that "the local interest in having localized disputes decided at home," "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action," and "the avoidance of unnecessary problems in . . . the application of foreign law" weigh most heavily in favor of dismissal.  *Clerides*, 534 F.3d at 628.

Maui Jim's persuasive comity arguments implicate each of these public interest factors.  (*See* MJ EU Mem. at 11–15; MJ EU Reply at 11–13.)  "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.27, 107 S. Ct. 2542, 2556 n.27 (1987).  As usually stated, comity

> is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S. Ct. 139, 143 (1895).  Although some circuits consider international comity a form of abstention doctrine when adjudication would implicate sensitive matters of foreign law, *e.g.*, *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006), direct authority to decline to exercise jurisdiction on comity grounds has not been so clearly spelled out in this circuit.  *See, e.g.*, *Fischer*, 777 F.3d at 854 (describing comity as incorporating a foreign exhaustion principle).  However, the public interest factors of *forum non conveniens* overlap with many articulated comity concerns.  William S.

Dodge, *International Comity in American Law*, 115 Colum. L. Rev. 2071, 2109–10 (2015) ("Because the doctrine of forum non conveniens allows U.S. courts to restrain their exercise of jurisdiction in deference to foreign courts, it is properly considered a doctrine of international comity."). As the Seventh Circuit has opined, "asking a U.S. court to wade into an area of EU law that is fraught with uncertainty risks offending principles of international comity," and these "concerns can be more generally addressed under the auspices of the doctrine of forum non conveniens." *Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 356 (7th Cir. 2015).

To our knowledge, no United States court has entertained a claim under the TFEU's antitrust provisions or its equivalent predecessors. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775JGVVP, 2008 WL 5958061, at *31–34 (E.D.N.Y. Sept. 26, 2008), *report and recommendation adopted in part,* 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012) (reasoning that EU antitrust claims under TFEU predecessor be dismissed on *forum non conveniens* and international comity grounds, and observing that all other known U.S. courts to consider such claims have refused to exercise jurisdiction over them); *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1223 (D. Kan. 2010) (declining supplemental jurisdiction over EU antitrust claim and reporting the parties were "unable to identify any reported case in which a court in the United States exercised jurisdiction over antitrust claims asserted under European law"); 7 Callmann on Unfair Comp., Tr. & Mono. § 28:5 (4th Ed. Dec. 2018 Update) ("Several private antitrust claims based on EC [European Community] law have been filed in American courts, but those courts in their discretion have declined to exercise jurisdiction.").

Being the first U.S. court to adjudicate a TFEU antitrust claim would "undoubtedly raise unsettled issues of EU antitrust law, because the private enforcement of EU antitrust law is underdeveloped." *In re Air Cargo*, 2008 WL 5958061, at *33. Concurring with this view, Maui

Jim submits by uncontested declaration an opinion on European Union law under Rule 44.1.[6] (Op. of Aidan Robertson, Queens Counsel (Dkt. No. 199–2).)  The opinion states that the "interpretation of EU . . . competition law remains in a state of development," particularly because "development of online retailing and online marketplaces has posed questions as to the compatibility of restrictions on online activity imposed by suppliers on distributors and retailers."  (*Id.* ¶ 27.)

Complicating matters is the dual-tiered system of adjudicating European antitrust claims, where unsettled questions of law are determined first in a member state's court, and then, sometimes mandatorily, by recourse to the European Court of Justice ("ECJ"), the highest European Union court.  (*Id.* ¶ 28.)  *See generally In re Air Cargo*, 2008 WL 5958061, at *32 (describing European antitrust litigation framework).  As the well-reasoned report and recommendation in *In re Air Cargo Shipping Services Antitrust Litigation* similarly found, "This court would be forced to fly blind on these unsettled issues, because it does not have a mechanism by which to obtain an opinion from the ECJ on an unresolved issue of EU antitrust law."  *Id.* at *33.  That court also concluded that "adjudication, by this court, or any other United States Courts, of the EU claims asserted by plaintiffs could not operate within the framework described above, would disturb the uniformity of EC competition law, and would undermine the European interest in developing its own European antitrust law."  *Id.*

Applying the foregoing analysis to the relevant *forum non conveniens* public interest factors, dismissing SBG's EU Antitrust Claim would most saliently avoid "unnecessary problems in . . . the application of foreign law."  *Clerides*, 534 F.3d at 628.  And while there is a

---

[6] Federal Rule 44.1 states, in relevant part, "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.

marginal interest in a court in this forum determining whether Maui Jim, an Illinois corporation, engaged in anticompetitive practices, the local interest in alleged European Union antitrust violations sits more comfortably in the European Union than here. *See id.* (enumerating public interest factor of "the local interest in having localized disputes decided at home"). Likewise, "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" also points toward adjudication in a European Union member state. *Id.; see Volodarskiy*, 784 F.3d at 353 ("One good reason to dismiss a case based on forum non conveniens is to avoid the administrative or legal complications of interpreting and applying a foreign country's law. Relatedly, the doctrine permits dismissal in deference to a foreign sovereign's superior competence and public interest in adjudicating its own law." (citations omitted)).

Accordingly, because an available and adequate alternative forum for SBG's EU Antitrust Claim exists in European Union member states, and as the balance of private and public interest factors weighs in favor of dismissal, we grant Maui Jim's motion to dismiss this counterclaim on *forum non conveniens* grounds.

## VI.   UNJUST ENRICHMENT (COUNT VII)

Count VII of SBG's second amended counterclaim alleges unjust enrichment. (2d Am. Countercl. ¶¶ 91–94.) The claim is identical to that included in the first version of SBG's counterclaims (*see* Dkt. No. 20 ¶¶ 78–81), which we held survived a motion to dismiss in our memorandum opinion and order on an earlier Maui Jim 12(b)(6) motion. (Order at 14–16).

Maui Jim now moves to dismiss SBG's unjust enrichment claim under the *Noerr-Pennington* doctrine. (Dkt. No. 278 ¶ 2; *see* MJ Cal. Mem. at 21–22.) The *Noerr-Pennington* doctrine grants immunity from antitrust liability to those who petition the government through courts to enforce trademark laws against their competitors. *See E. R.R.*

*Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136, 81 S. Ct. 523

(1961); *Mine Workers v. Pennington,* 381 U.S. 657, 670, 85 S. Ct. 1585 (1965); *BE & K Const.*

*Co. v. N.L.R.B.*, 536 U.S. 516, 525, 122 S. Ct. 2390, 2396 (2002) ("These antitrust immunity

principles were then extended to situations where groups 'use . . . *courts* to advocate their causes

and points of view respecting resolution of their business and economic interests *vis-á-vis* their

competitors.'" (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 511, 92 S.

Ct. 609, 612 (1972)).  SBG's counterclaim alleges in part that Maui Jim "knowingly and

intentionally used the trademark and copyright laws for the improper use of stifling competition

in the relevant market and therein enriched itself" to SBG's detriment.  (2d Am. Countercl. ¶ 92.)

Maui Jim argues that this allegation "seeks to penalize Maui Jim under an antitrust theory for

filing this lawsuit" in contravention of *Noerr-Pennington*.  (MJ Cal. Mem. at 21.)

SBG counters that its unjust enrichment counterclaim encompasses conduct well beyond

Maui Jim's present suit, including that Maui Jim defamed SBG and thereby caused SBG to

suffer harm in the marketplace.  (SBG Cal. Resp. at 13; 2d Am. Countercl. ¶¶ 41.)  Indeed,

similar allegations in SBG's original counterclaims led us to conclude that its claim for unjust

enrichment could survive the earlier motion to dismiss.  As we stated then:

> Taking SmartBuyGlasses' allegations as true, it has set forth a plausible claim that Maui
> Jim publicized false allegations and commentary regarding SmartBuyGlasses' products in
> a press release, thereby wrongfully disparaging SmartBuyGlasses' business and falsely
> asserting it sells counterfeit products.  (Counterclaim ¶¶ 2, 29, 34–35.)  SmartBuyGlasses
> alleges it has suffered harm in the marketplace as a result.  (*Id.* ¶ 35.)  The counterclaim
> therefore connects Maui Jim's unjust benefit (increased prices of its products due to its
> allegedly anti-competitive and fraudulent conduct) to a detriment to SmartBuyGlasses
> (disparagement of its products as counterfeit).  *Cleary* [*v. Philip Morris Inc.*],
> 656 F.3d [511,] 518–20 [(7th Cir. 2011)].  As a result, SmartBuyGlasses' allegations in
> Count VIII [for unjust enrichment] are sufficient to survive dismissal at this stage.

(Order at 16.)  Although, in the present opinion, we grant in part Maui Jim's motion to dismiss

SBG's defamation claim based on the press release referenced in the above passage, we also

deny in part that motion based on other alleged defamation that goes beyond this suit, *see supra* Part II(A). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517. SBG's unjust enrichment claim encompasses all of its allegations, including those that make up its defamation claim and which survive this opinion. (*See* 2d Am. Countercl. ¶¶ 29–30, 91.) The *Noerr-Pennington* doctrine thus does not bar this claim, because it covers allegations going beyond the current suit. We therefore deny Maui Jim's motion to dismiss Count VII.

## VII. MOTION TO STRIKE AFFIRMATIVE DEFENSES

In addition to its motions to dismiss, Maui Jim also moves under Rule 12(f) to strike two affirmative defenses that SBG pleaded in its answer. (Dkt. No. 278 ¶¶ 3–4.) We consider each argument in turn.

### A. First Affirmative Defense

Maui Jim moves to strike SBG's first affirmative defense, "inequitable restraint of trade." (*Id.* ¶ 3; Answer (Dkt. No. 259) at 31.) This affirmative defense reads:

> Maui Jim's use of its trademarks in violation of the antitrust laws precludes enforcement of the trademarks at issue on both equitable grounds and under § 33(b)(7) of Lanham Act. 15 UCSC § 1115(b)(7). Plaintiffs are attempting to misuse their trademarks to acquire a monopoly in violation of U.S. antitrust laws.

(Answer at 31.) Maui Jim argues first that this defense should be stricken because it depends on SBG's deficient Sherman Act claim. (MJ Cal. Mem. at 15.) Maui Jim also argues that under the *Noerr-Pennington* doctrine, SBG is foreclosed from arguing that Maui Jim is using its suit against SBG to violate antitrust laws. (*Id.* at 16–18.)

SBG agrees that its Sherman Act claim is "coterminous" with its first affirmative defense, and the allegation that Maui Jim is "attempting to misuse their trademarks to acquire a monopoly

in violation of U.S. antitrust laws" refers to SBG's Sherman Act claim, not to Maui Jim's lawsuit. (SBG Cal. Resp. at 9; Answer at 31.) As SBG's Sherman Act claim is dismissed, *see supra* Part III, its "coterminous" defense also fails.

However, SBG argues that Section 33(b)(7) of the Lanham Act can operate as an independent affirmative defense. (SBG Cal. Resp. at 10–11.) Section 33(b)(7) allows a defense if a "mark has been or is being used to violate the antitrust laws of the United States." 15 U.S.C. § 1115(b)(7). Assuming only for purposes of this opinion that Section 33(b)(7) provides an affirmative defense, SBG has no surviving claim that Maui Jim's use of trademark violates the antitrust laws. SBG's affirmative defense alleges no ground for antitrust violation that we have not already addressed. And SBG implicitly admits that its defense could not be based on Maui Jim's lawsuit. (SBG Cal. Resp. at 9 (arguing *Noerr-Pennington* not implicated because the defense "relates to [SBG's] Sherman Act claim rather than the mere fact that Maui Jim filed the instant lawsuit" (citation omitted).) *BE & K Const. Co.*, 536 U.S. at 525, 122 S. Ct. at 2396; *California Motor Transport Co.*, 404 U.S. at 511, 92 S. Ct. at 612.

SBG's cited authority is not to the contrary. SBG relies on *Dell, Inc. v. 3K Computers, LLC*, No. 08-80455-CIV, 2008 WL 6600766, at *1 (S.D. Fla. Oct. 7, 2008), for the proposition that Section 33(b)(7) is an affirmative defense. (*See* SBG Cal. Resp. at 10.) But that case found an affirmative defense under Section 33(b)(7) could not stand because the defendant's only Sherman Act claim derived from the plaintiff's lawsuit, and the *Noerr-Pennington* doctrine barred the defense. *Dell, Inc.*, 2008 WL 6600766, at *3 (because defendant's only ground for liability under the Sherman Act against plaintiff failed, "there is no longer a legal basis for [defendant's] § 1115(b)(7) affirmative defense"). Similarly, the other case SBG cites, *Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F. Supp. 968, 975 (W.D. Mo. 1966), found that

Section 33(b)(7) was an affirmative defense when a violation of antitrust laws had also been established.  (SBG Cal. Resp. at 11.)  Such is not the case here.

For these reasons, we strike SBG's first affirmative defense for failure to "withstand a 12(b)(6) challenge," with prejudice.  *Sarkis' Cafe, Inc.*, 55 F. Supp. 3d at 1039; *see also Thermos Co. v. Igloo Prod. Corp.*, No. 93 C 5826, 1995 WL 745832, at *8 (N.D. Ill. Dec. 13, 1995) (adopting Report and Recommendation that affirmative defense based on violation of antitrust laws be stricken because it relied on antitrust counterclaims that failed to state a claim).

### B.      Fourth Affirmative Defense

Maui Jim also moves to strike SBG's fourth affirmative defense. (Dkt. No. 278 ¶ 4.)[7] This defense reads:

> Maui Jim broadly asserts Lanham Act claims that unfairly and improperly intend to restrain legitimate competition in genuine Maui Jim products sold outside distribution channels that Maui Jim desires and the prosecution of these claims is undertaken with unclean hands, rendering Maui Jim's asserted rights unenforceable.

(Answer at 32.)  Maui Jim argues that SBG's unclean hands defense cannot stand because it relies solely on the fact of Maui Jim's suit against SBG.  (MJ Cal. Mem. at 20–21.)

"The unclean hands doctrine provides that a party to a lawsuit may not obtain the relief it seeks if it has engaged in wrongful conduct."  *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002).  "The bad conduct constituting unclean hands must involve fraud, unconscionability or bad faith toward the party proceeded against, and must pertain to the subject matter involved and affect the equitable relations between the litigants."  *Int'l Union, Allied Indus. Workers of Am., v. Local Union No. 589, Allied Indus. Workers of Am.*, 693 F.2d 666, 672 (7th Cir. 1982) (internal quotations and citations omitted).  Although unclean hands is not listed

---

[7] Two of SBG's affirmative defenses are labeled "Fourth Defense," one for exhaustion and the other for unclean hands.  (Answer at 31–32.)  Maui Jim's motion to strike is directed at SBG's unclean hands defense.  (MJ Cal. Mem. at 20.)

in the Lanham Act, "courts have recognized it as an affirmative defense to claims of trademark infringement." *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2016 WL 723135, at *2 (N.D. Ill. Feb. 24, 2016); *see also R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2001 WL 747422, at *2 (N.D. Ill. June 29, 2001) ("In appropriate cases, 'unclean hands can constitute a bar to some or all of the relief sought for trademark infringement or unfair competition.'" (quoting J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31.47 (5th ed. 2001) ("*McCarthy on Trademarks*"))).

"The allegedly unfair or improper filing of a trademark infringement lawsuit cannot itself constitute a basis for an unclean hands defense to that lawsuit." 6 *McCarthy on Trademarks* § 31:51 (5th ed. March 2019 Update). This is because "[t]he act of bringing the lawsuit is not the subject matter concerning which plaintiff seeks relief. Unclean hands must relate to the getting or using the alleged trademark rights." *Id.*; *see also Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) ("Filing a trademark or trade dress infringement lawsuit, therefore, cannot be a basis for an unclean hands defense to that lawsuit because any bad faith or inequitable conduct in filing the lawsuit is unrelated to the plaintiff's acquisition or use of the trademark or trade dress rights."); *Ty, Inc. v. Publ'n Int'l, Ltd.*, No. 99 C 5565, 2004 WL 1588256, at *1–2 (N.D. Ill. July 16, 2004) (citing *McCarthy on Trademarks* § 31:51 and finding that a trademark misuse defense based on the plaintiff's filing the present lawsuit could not stand).

SBG contends that its defense is not limited to Maui Jim's filing of the instant suit, but instead refers to Maui Jim's "use" of its trademarks and its "intent" in filing the current suit. (SBG Cal. Resp. at 12.) We do not agree. SBG's defense states that "Maui Jim broadly asserts Lanham Act claims that unfairly and improperly intend to restrain legitimate competition," and

that Maui Jim's "prosecution of these claims is undertaken with unclean hands." (Answer at 32.) The defense squarely alleges that Maui Jim has unclean hands because of its law suit, and as such, it fails as a matter of law. *Coach, Inc.*, 756 F. Supp. 2d at 429. We therefore grant Maui Jim's motion to strike this affirmative defense. However, because it may be possible for SBG to adequately plead an unclean hands defense that relates to Maui Jim's use of trademark beyond this suit, we do so without prejudice.

## CONCLUSION

For the foregoing reasons, we grant Maui Jim's motion to dismiss Counts I, III, IV, V, and VI of SBG's second amended counterclaim. (Dkt. No. 184, 196, 278.) We grant in part and deny in part Maui Jim's motion to dismiss SBG's Count II. (Dkt. No. 184.) We deny Maui Jim's motion to dismiss Count VII. (Dkt. No. 278.) Finally, we grant Maui Jim's motion to strike SBG's first affirmative defense with prejudice, and fourth affirmative defense (unclean hands) without prejudice. (*Id*.) It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: May 10, 2019
        Chicago, Illinois