**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MAUI JIM, INC., an Illinois Corporation )
)   Case No. 1:16-cv-09788
       Plaintiff, )
)
)   District Judge Marvin E. Aspen
       v. )   Magistrate Judge Jeffrey T. Gilbert
)
SMARTBUY GURU ENTERPRISES, a )
Cayman Island Company, MOTION )
GLOBAL LTD., a Hong Kong Company, )
SMARTBUYGLASSES SOCIETÁ A )
RESPONSABILITÁ LIMITATA, an )
Italian Company, SMARTBUYGLASSES )
OPTICAL LIMITED, a Hong Kong )
company, )
)
       Defendants. )


**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION
FOR RECONSIDERATION OF ECF 358 WITH RESPECT TO COUNTS II, IV, V,
AND VI OF DEFENDANTS' COUNTERCLAIM
OR, IN THE ALTERNATIVE,
FOR DISMISSAL OF PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.   DISMISSAL OF THE PRESS RELEASE DEFAMATION CLAIM WAS A
     MANIFEST ERROR OF LAW ...................................................................................... 2

     A.   The Press Release Is Not Capable Of An Innocent Construction .......................... 3

          1.   Under the republication rule, press releases that repeat allegations
               made in court are defamatory if the underlying allegations themselves
               are defamatory. ......................................................................................... 3

          2.   Under the republication rule, the Maui Jim press release is not
               reasonably susceptible to an innocent construction. ................................. 5

     B.   SmartBuyGlasses Never Conceded That References To Allegations In Maui
          Jim's Complaint Are Not Defamatory .................................................................. 7

     C.   Neither The Litigation Privilege Nor Fair Report Privilege Apply ....................... 8

          1.   The litigation privilege does not apply because the statements were
               made outside of court. ................................................................................ 8

          2.   The fair report privilege does not apply for multiple reasons. ................... 9

     D.   The Seventh Circuit's *Republic Tobacco* Decision Confirms That
          SmartBuyGlasses Has Stated A Defamation Claim, And Maui Jim Is Not
          Shielded By Referring To Its Allegations From This Lawsuit ............................ 11

II.  THIS COURT MISAPPLIED THE DOCTRINE OF *FORUM NON CONVENIENS*
     AND INTERNATIONAL COMITY ............................................................................ 12

     A.   The Balancing Factors Do Not Heavily Favor Dismissal .................................... 13

          1.   This Court applied an incorrect legal standard. ........................................ 13

          2.   The private interest factors do not favor dismissal. ................................. 14

          3.   The public interest factors do not favor dismissal. .................................. 15

          4.   The principle of international comity does not support dismissal. ........... 18

     B.   Maui Jim Did Not Concede That It Is Amenable to Service In European
          Forums ............................................................................................................... 19

III. IN THE ALTERNATIVE, THIS COURT MUST DISMISS MAUI JIM'S
     EUROPEAN TORTIOUS INTERFERENCE CLAIMS BASED ON *FORUM NON
     CONVENIENS* AND INTERNATIONAL COMITY ..................................................... 20

IV.  THE COURT MISAPPREHENDED SMARTBUYGLASSES' CARTWRIGHT ACT
     CLAIM – SMARTBUYGLASSES ALLEGES A CARTWRIGHT ACT INJURY
     FROM MAUI JIM'S ANTICOMPETITIVE PRICE-FIXING POLICIES ..................... 21

V.      THIS COURT SHOULD RECONSIDER ITS DISMISSAL OF
        SMARTBUYGLASSES' THE UNFAIR COMPETITION CLAIM. ............................ 24

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. MD 06-1775JGVVP, 2008 WL 5958061 (E.D. N.Y. Sept. 26, 2008) ...........................16

*Batchelder v. Kawamoto*,
147 F.3d 915 (9th Cir. 1998) ................................................19

*Blanco v. Banco Industrial De Venezuela, S.A.*,
997 F.2d 974 (2d Cir. 1993)..................................................21

*Bodum USA, Inc. v. La Cafetière, Inc.*,
621 F.3d 624 (7th Cir. 2010) ................................................19

*Cobbs v. The Chicago Defender*,
308 Ill. App. 55 ....................................................................5

*In re Condor Ins., Ltd.*,
601 F.3d 319 (5th Cir. 2010) ................................................19

*Empagran S.A. v. F. Hoffman-La Roche Ltd.*,
453 F. Supp. 2d 1 (D. D.C. 2006) ........................................16

*Fitzgerald v. Willott*,
2010 WL 610673 (C. D. Ill. 2010)........................................20

*In re Ford Motor Company*,
344 F.3d (7th Cir.2002) .......................................................20

*Gulf Oil v. Gilbert*,
330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)..........................19, 20

*Horowitz v. Animal Emergency and Treatment Centers of Chicago, LLC*,
No. 12 C 2561, 2012 WL 3598807 (N.D.Ill. Aug. 20, 2012)....................8

*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
127 F. Supp. 2d 411 (S.D. N.Y. 2000)..................................16

*Knevelbaard Dairies v. Kraft Foods, Inc.*
232 F.3d 979 (9th Cir. 2000) ..........................................22, 23

*Kurczaba v. Pollock,*
    318 Ill. App. 3d 686, 742 N.E.2d 425 (1st Dist. 2000).........................................8, 9

*Laker Airways Ltd. v. Pan American World Airways,*
    568 F. Supp. 811 (D. D.C. 1983) .........................................................................18

*Lawrence v. Bauer Pub. & Printing Ltd.,*
    446 A.2d 469 (N.J. 1982).......................................................................................4

*LB Credit Corp. v. Resolution Trust Corp.,*
    49 F.3d 1263 (7th Cir. 1995) ...............................................................................13

*Missner v. Clifford,*
    393 Ill. App. 3d 751 (1st Dist. 2009) .......................................................... *passim*

*Multi-Juice, S.A. v. Snapple Beverage Corp.,*
    No. 02 4635, 2003 WL 1961636 (S.D. N.Y. Apr. 25, 2003)................................16

*Nalco Co. v. Chen,*
    2013 WL 4501425 (N.D. Ill. 2013) ........................................................13, 14, 15

*Nashua Sav. Bank v. Anglo-Am. Land, Mortg. & Agency Co.,*
    189 U.S. 221 (1903)..............................................................................................18

*Owens v. CBS Inc.,*
    173 Ill. App. 3d 977 (5th Dist. 1988)..................................................................4, 5

*Piper Aircraft Co. v. Reyno,*
    102 S.Ct. 252, 454 U.S. 235, 102 S. Ct. 252 (1981)...........................................14

*Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,*
    762 F.2d 557 (7th Cir. 1985) .................................................................................1

*Republic Tobacco Co. v. N. Atlantic Trading Co.,*
    381 F.3d 717 (7th Cir. 2004) ....................................................................... *passim*

*Shield Technologies Corp. v. Paradigm Positioning, LLC,*
    No. 11 C 6183, 2012 WL 4120440 (N.D. Ill. Sept. 19, 2012)................................8

*Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.,*
    297 Ill. App.3d 304 (1st Dist. 1998)................................................................4, 5, 6

*Solaia Technology v. Specialty Pub Co.,*
    221 Ill. 2d 558, 585 (2006) ....................................................................................9

*Sunstar, Inc. v. Alberto-Culver Co.,*
    586 F.3d 487 (7th Cir. 2009) ...............................................................................18

*Thompson v. Frank*,
313 Ill. App. 3d 661 (3d Dist. 2000) ........................................................................8

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*,
978 F. Supp. 266 (S.D. Tex. 1997), aff'd, 161 F.3d 314 (5th Cir. 1998) ...............19

*Tuite v. Corbitt*,
224 Ill. 2d 490 (2006) ...............................................................................................6

*In re Urethane Antitrust Litig.*,
683 F. Supp. 2d 1214 (D. Kan. 2010) .....................................................................16

## Statutes

18 U.S.C. § 2320 .............................................................................................................6

Cal. Bus & Prof. Code § 16720 *et seq.* .......................................................................24

## <u>INTRODUCTION</u>

SmartBuyGlasses is mindful of the Seventh Circuit's admonition to litigants that motions for reconsideration should be rare and are only proper to "correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). SmartBuyGlasses respectfully submits that this is one of the rare cases where reconsideration is appropriate. This Court clearly erred as a matter of law in dismissing three counts and part of a fourth in ECF No. 358 since:

> (1)      the innocent construction rule does not protect Maui Jim's defamatory statements contained in its press release because Maui Jim has no privilege to repeat its defamatory allegations outside of the litigation;

> (2)      neither the doctrine of *forum non conveniens* nor the doctrine of international comity supports dismissal of SmartBuyGlasses' claim under the Treaty on the Functioning of the European Union ("TFEU") because Maui Jim chose this forum and the same issues will necessarily be litigated in connection with Maui Jim's tortious inference claim; and

> (3)      SmartBuyGlasses pled a plausible claim for injury under the Cartwright Act because it pled injury from Maui Jim's unfair support of its own website and from its termination of those suppliers who violate the pricing policy to sell to SmartBuyGlasses.

For these reasons, SmartBuyGlasses moves this Court for reconsideration under Fed. R. Civ. P. 59(e) of the dismissal of Counts IV (Cartwright Act), V (California UCL), and VI (TFEU) of SmartBuyGlasses' counterclaim and the dismissal in part of Count II (defamation relating to the press release) of the counterclaim.

Moreover, should this Court maintain its dismissal of SmartBuyGlasses' TFEU claim, SmartBuyGlasses moves – in the alternative – to dismiss Count VI of Maui Jim's Second Amended Complaint for tortious interference because it relies on a determination of the same law and facts upon which the Court based its dismissal of the TFEU claim. Maui Jim alleges that SmartBuyGlasses tortiously interfered with the anti-diversion agreements Maui Jim has with its

Italian authorized retailers. (ECF No. 257.) If this Court is an inappropriate forum to adjudicate SmartBuyGlasses' TFEU claim, the same logic applies to Maui Jim's Italian tortious interference claim. Both claims require that this Court adjudicate issues of European antitrust and contract law. Bifurcating SmartBuyGlasses' TFEU claim and Maui Jim's Italian tortious interference claim risks inconsistent cross-national rulings and is manifestly unfair and prejudicial to SmartBuyGlasses. Dismissal of the TFEU claim therefore requires dismissing the relevant portions of Count IV Maui Jim's Second Amended Complaint on the basis of *forum non conveniens* and international comity.

## ARGUMENT

## I.  DISMISSAL OF THE PRESS RELEASE DEFAMATION CLAIM WAS A MANIFEST ERROR OF LAW

The Court should reconsider its dismissal of SmartBuyGlasses' defamation claim as it pertains to the press release (paragraph 28 of the second amended counterclaim) because the Court erred in assuming that references in the press release to allegations from the lawsuit are not actionable under the innocent construction rule. The Court therefore erroneously held that the most defamatory language in the press release—the quotes from Maui Jim's Vice President in the last paragraph of the press release—could be innocently construed as "refer[ring] to Maui Jim's lawsuit and its allegations against SBG." (Order at 14-15.) However, both Seventh Circuit and Illinois precedent are clear that republishing one's allegations from a lawsuit to third parties, whether in a press release or other manner, is defamatory if the underlying allegations themselves are false and defamatory. This is called the "republication rule."

Accordingly, under the republication rule, the Maui Jim press release must be considered and construed without regard to the allegations in the lawsuit. Using this framework, the Maui Jim press release is not capable of an innocent construction because there is no innocent

construction for direct allegations of "counterfeiting" and unethical business practices against SmartBuyGlasses. Those referenced and repeated statements are defamatory *per se* when the statements are assumed false, as they must be at this stage of the case.

The fair report privilege (which often protects the press when they republish and report on allegations from legal cases) also provides no protection to Maui Jim because the fair report privilege cannot be self-conferred. In other words, filing a lawsuit with defamatory allegations does not immunize the plaintiff to republish those allegations outside of court. The litigation privilege also could not apply because press releases to the public are not part of litigation, as required for the privilege to attach.

SmartBuyGlasses therefore states a claim for defamation *per se* by alleging in its counterclaim that Maui Jim falsely stated in a press release that SmartBuyGlasses is using "disingenuous and misleading sales practices" and selling "counterfeit and non-genuine Maui Jim products." The Court's error in dismissing the press release defamation claim appears to emanate from one of three fundamental mistakes of law: (i) the Court did not apply the republication rule; (ii) the Court incorrectly assumed that SmartBuyGlasses conceded that allegations in a lawsuit are not defamatory; or (iii) the Court erroneously believed republishing the allegations from the complaint was immunized by the litigation privilege or fair report privilege. Any of these mistakes is a fundamental error of law requiring reconsideration.

### A. The Press Release Is Not Capable Of An Innocent Construction

#### 1. Under the republication rule, press releases that repeat allegations made in court are defamatory if the underlying allegations themselves are defamatory.

Illinois, like other states, applies the republication rule. *See Missner v. Clifford*, 393 Ill. App. 3d 751, 760 (1st Dist. 2009); *see also* Restatement (Second) of Torts § 578 (1977)

(describing republication rule); *Terilli, Samuel A. et al.*, Lowering the Bar: Privileged Court Filings as Substitutes for Press Releases in the Court of Public Opinion, 12 Comm. L. & Pol'y 143, 157-58 (Spring 2007) (same). Under the republication rule, when one repeats allegations—whether the original allegations were made in court or on the street—the libelousness of the report about the allegations is judged by whether the underlying allegations themselves are false and defamatory. *See Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.*, 297 Ill. App.3d 304 (1st Dist. 1998) (holding a television station liable for repeating principal's allegations against teacher, despite couching them as allegations); *Republic Tobacco Co. v. N. Atlantic Trading Co.*, 381 F.3d 717, 731-32 (7th Cir. 2004) (finding a letter to customers describing allegations in lawsuit was defamatory because the allegations themselves were proven false); *Missner*, 393 Ill. App. 3d at 760 (holding "the republisher of defamatory material bears the same degree of liability for defamation as the original publisher").

The operative legal question is ***not*** whether the repeater truthfully described what was alleged and by whom, but instead whether the underlying allegation itself is false and defamatory. *See Owens v. CBS Inc.*, 173 Ill. App. 3d 977, 994-95 (5th Dist. 1988); *see also Republic*, 381 F.3d at 730-33; *Lawrence v. Bauer Pub. & Printing Ltd.*, 446 A.2d 469, 474 (N.J. 1982) (holding "if defendant published that a third person stated that plaintiff has committed a crime, it is no justification that the third party did in fact make that statement").

In *CBS*, for example, a television station defended its broadcast on the theory that it had truthfully reported the allegations made by the plaintiff's neighbor and had "presented [them] as mere allegations." *CBS*, 173 Ill. App. 3d at 990. The Illinois court of appeals rejected that theory as contrary to law and held that reporting the allegations was defamatory because the underlying allegations themselves were defamatory. *CBS*, 173 Ill. App. 3d at 994-95 (holding "we fail to see

how a person who republishes a defamatory statement can evade liability merely by showing that he has repeated it with precision").

Qualifying the allegations as merely "accusations," "allegations," what the accuser "believes," or expressing uncertainty about the allegations is irrelevant and does not change the legal rule that such reports are judged by whether the repeated allegation itself is defamatory. *See CBS*, 173 Ill. App. 3d at 992 (qualifying report as what someone "believed" was no defense: "we have found no authority suggesting that accusation of criminal conduct ceases to become libelous simply because it has not been uttered with certainty"); *Snitowsky*, 297 Ill. App.3d at 311 (reporting what principal had "alleged" was defamatory); *Republic Tobacco*, 381 F.3d at 723-24, 731-32 (holding that "[p]refatory language does not control whether these statements are actionable as defamation . . .").

This rule protects innocents from being harmed by the spread of false allegations. *See CBS*, 173 Ill. App. 3d at 992-93 (explaining rationale for republication rule as "repetition of the story must in the nature of things give it currency") (quoting *Cobbs v. The Chicago Defender*, 308 Ill. App. 55, 59). So, absent a privilege, a defamation defendant's press release that refers to defendant's allegations in a civil lawsuit is defamatory if the underlying allegations themselves are defamatory. *See Republic*, 381 F.3d at 731-32; *Missner*, 393 Ill. App. 3d at 765, 914 N.E.2d at 553 (holding fair report privilege does not apply under Illinois law when party authors press release about its own allegations in a lawsuit).

### 2. Under the republication rule, the Maui Jim press release is not reasonably susceptible to an innocent construction.

Even if, as this Court concluded, Maui Jim's quoted statements in the last paragraph of the press release could reasonably be construed as references to the allegations in the complaint—a conclusion with which SmartBuyGlasses disagrees—that would not dictate an

innocent construction of those words. Again, the republication rule requires the Court to read the press release as a statement that SmartBuyGlasses did what was alleged in the lawsuit, and not as a mere statement that that those allegations were made. As the Illinois Appellate Court directed in *Snitowsky*, reference to "allegations" or "on-going investigations" are irrelevant to the analysis. 297 Ill. App. 3d 304, 310 ("Insofar as a defendant relies on the accuracy of its report that someone else made certain allegations, the innocent construct rule is irrelevant."); *see also Republic*, 381 at 732-33 (viewing letter as referencing allegations in complaint was no defense and thus was not an innocent construction). That same reasoning applies here: the republication rule renders the press release defamatory.

The operative legal question is *not* whether Maui Jim accurately described its allegations, but whether the allegations themselves are defamatory. And, because Maui Jim filed a Rule 12(b)(6) motion, the Court must accept as true SmartBuyGlasses' allegations that it is not: (a) utilizing "disingenuous and misleading sales practices," or (b) selling "counterfeit and non-genuine Maui Jim products." Second Am. Countercl. ¶¶ 13-21, 41. Such statements about SmartBuyGlasses are defamatory *per se* (without any potential innocent construction) because they – at the very least – accuse SmartBuyGlasses of committing the crime of counterfeiting, *see* 18 U.S.C. § 2320 ("Trafficking in counterfeit goods or services"), impute a lack of truthfulness and integrity in employment duties, and prejudice SmartBuyGlasses in its profession. *See Missner*, 393 Ill. App. 3d at 767, 914 N.E.2d at 555 (repeating allegations of wrongdoing from complaint in press statement was defamatory per se and not subject to an innocent construction).

Indeed, in *Tuite v. Corbitt*, 224 Ill. 2d 490, 514-15 (2006), the Illinois Supreme Court held there was no innocent construction to mere ***implications*** that a lawyer had paid bribes, even without an explicit accusation, because the innocent construction rule prohibits the court from

"find[ing] an innocent meaning for words when a defamatory construction is far more reasonable." The reasons for no innocent construction here are even greater: Maui Jim did much more than imply something, it explicitly accused SmartBuyGlasses of counterfeiting and dishonest sales practices. This Court correctly ruled that such statements—when assumed false at the pleading stage—are defamatory *per se* in denying Maui Jim's motion to dismiss as to paragraphs 29 and 30 of the second amended counterclaim. (Order at 12-13.) Because of the republication rule, putting those same type defamatory statements in a press release that refers to the lawsuit does not immunize them, give them an innocent construction, or change the analysis in any material way.

### B. SmartBuyGlasses Never Conceded That References To Allegations In Maui Jim's Complaint Are Not Defamatory

The error in the Court's analysis may have occurred due to a misreading of SmartBuyGlasses' briefs. In its order, the Court bypassed an analysis of the legality of republishing lawsuit allegations by stating that the "parties agree that the first four paragraphs of the press release are not defamatory because they refer to Maui Jim's allegations against SBG." (Order at 15.)

This is not correct; SmartBuyGlasses never agreed that the other paragraphs of the press release are not defamatory. On page 9 of SmartBuyGlasses' opposition brief, which is cited by the Court, SmartBuyGlasses merely highlighted the last paragraph of the press release as far over the line—due to Maui Jim asserting false facts about SmartBuyGlasses with certainty—and contrasted it with earlier paragraphs that, while still defamatory, were phrased in terms of allegations from the lawsuit.

SmartBuyGlasses did so because Maui Jim's parting shot was the most defamatory part of the press release and pushed the press release far beyond the scope of the fair report privilege.

By focusing on the strength of its claim to survive a motion to dismiss, SmartBuyGlasses was not conceding that other parts of the press release were not defamatory. Indeed, SmartBuyGlasses' Answer (ECF #259) denies Maui Jim's allegations of infringement and violations of law that are repeated earlier in the press release, and its counterclaim avers that such allegations are false (ECF #259). Regardless of how the rest of the paragraphs compare to the most egregious paragraph of the press release, those other paragraphs are still over the legal line, and SmartBuyGlasses never stated, pleaded, or argued otherwise.

### C. Neither The Litigation Privilege Nor Fair Report Privilege Apply

#### 1. The litigation privilege does not apply because the statements were made outside of court.

The litigation privilege does not apply because it only attaches to statements made in court and does not extend to out-of-court statements to the third-parties. *See, e.g.*, *Thompson v. Frank*, 313 Ill. App. 3d 661, 664 (3d Dist. 2000) (holding the privilege does not extend to statement by one party's attorney to spouse of opposing party to pending litigation); *Kurczaba*, 318 Ill. App. 3d at 189-91 (holding the privilege does not extend to out-of-court dissemination of a complaint to third parties not involved in the case). Because the Maui Jim press release was not a part of the litigation and was published to the world, the litigation privilege does not apply. Although Maui Jim's defamatory allegations are privileged when made in its pleadings to this Court, the litigation privilege does not apply when Maui Jim repeats the allegations in its pleadings outside of court. *See Kurczaba*, 318 Ill. App. 3d at 189-91; *Republic*, 381 F.3d at 732.

In any event, the pleading stage would not be the appropriate time to dismiss a claim based on the litigation privilege. *See Shield Technologies Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440, at *3 (N.D. Ill. Sept. 19, 2012) (denying motion to dismiss defamation claim based on litigation privilege as premature); *Horowitz v. Animal Emergency and*

*Treatment Centers of Chicago, LLC*, No. 12 C 2561, 2012 WL 3598807, *4–5 (N.D.Ill. Aug. 20, 2012) (same).

### 2. The fair report privilege does not apply for multiple reasons.

The fair report privilege cannot apply here because it cannot be self-conferred and because the report was not accurate and complete. The fair report privilege is a qualified privilege that protects:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern . . . if the report is accurate and complete or [is] a fair abridgment of the occurrence reported.

Restatement (Second) of Torts § 611, at 297 (1977) (as adopted by Illinois Supreme Court in *Solaia Technology*, 221 Ill. 2d 558, 585 (2006)). The fair report privilege is an exception to the republication rule: "It is an exception to the general common law rule that the republisher of defamatory material bears the same degree of liability for defamation as the original publisher." *Missner*, 393 Ill. App. 3d at 760, 914 N.E.2d at 550.

The fair report privilege cannot apply here because it may not be self-conferred. There is no fair report privilege for a plaintiff to file a lawsuit and then report publicly on the allegations that it made in the lawsuit. *Republic Tobacco*, 381 F.3d at 732 (stating a litigant has no fair report privilege to report on its own allegations in court); *see also Missner*, 393 Ill. App.3d at 762 (finding a self-conferral exception to fair report privilege applies in Illinois); *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 708, 742 N.E.2d 425, 443 (1st Dist. 2000) (same). Because Maui Jim filed the lawsuit, it has no fair report privilege to repeat its allegations publicly in press releases.

Second, to qualify for the privilege, the report on the allegations must be "accurate and complete" or a "fair abridgement." *Missner*, 393 Ill. App.3d at 760, 914 N.E.2d at 550. The

privilege is lost when a party "mischaracterizes an allegation in a pleading as a fact." *Id.* at 761. Here, even if Maui Jim could self-confer the privilege, Maui Jim still could not qualify for the privilege because, in the last paragraph of the press release, it went beyond merely repeating the allegations, but instead asserted that its allegations against SmartBuyGlasses were factually true (*i.e.*, it mischaracterizes its allegations as a fact and, thus, abuses the privilege). Maui Jim's Vice President stated definitively that SmartBuyGlasses was utilizing "disingenuous and misleading sales practices," was "undermin[ing] the integrity of the Maui Jim brand," and was engaged in "the sale of counterfeit or non-genuine Maui Jim products."

Furthermore, Maui Jim did not provide a fair abridgment of the dispute. Among other things, Maui Jim did not acknowledge that SmartBuyGlasses denies the allegations, disclose that SmartBuyGlasses asserts various defenses, including the first-sale doctrine, or provide anything about SmartBuyGlasses' side of the case. (*See* Countercl. ¶ 22; *see generally* Answer to 2d Am. Compl., ECF # 259.) Rather than a "fair" report, it was a completely one-sided attack, specifically designed to damage SmartBuyGlasses' business and to turn suppliers and customers away from it. (*See* 2d Am. Countercl. ¶¶ 2, 24-31.) Importantly, Maui Jim omits from its press release the key fact that the sunglasses that SmartBuyGlasses is selling are genuine Maui Jim sunglasses, and the parties are in a technical legal dispute over the legal status of those resales. (Countercl. ¶¶ 15-17.) There's been no "counterfeiting," especially not under a lay person's understanding of that term.

SmartBuyGlasses has therefore stated a claim for defamation *per se*: Maui Jim's allegations against SmartBuyGlasses are assumed false at this stage, they are defamatory *per se*, and there are no privileges that would apply, especially not at the pleading stage. Respectfully, it was a manifest error of law to dismiss this claim.

### D. The Seventh Circuit's *Republic Tobacco* Decision Confirms That SmartBuyGlasses Has Stated A Defamation Claim, And Maui Jim Is Not Shielded By Referring To Its Allegations From This Lawsuit

The Seventh Circuit, in an analogous factual situation, confirmed that a party's own statements about allegations it made in a lawsuit can be defamatory *per se* as a matter of law. In *Republic Tobacco*, the Seventh Circuit ruled that a letter to customers about allegations in a lawsuit was defamatory *per se* as a matter of law. 381 F.3d at 731-32. Because the press release here is just as defamatory, if not more defamatory, than the letter in *Republic Tobacco*, that decision is binding precedent that justifies reconsideration by this Court.

Plaintiff Republic Tobacco had sued for defamation over defendant North Atlantic's letters to customers that repeated North Atlantic's allegations against Republic Tobacco in a Kentucky lawsuit. In the letter to customers, North Atlantic wrote that its "complaint alleges that Republic Tobacco's . . . activities violate federal and state antitrust and unfair competition laws." *Republic*, 381 F.3d at 724. Like Maui Jim, North Atlantic argued that the letter was "not actionable because it accurately summarized the allegations of the Kentucky lawsuit." *Id.* at 731. The Seventh Circuit rejected this argument and affirmed the district court's ruling that the letter was defamatory *per se* as a matter of law. The Court held that filing a lawsuit does not immunize one to republish its allegations to the public. It stated: "North Atlantic's position seems akin to a rule that filing a lawsuit provides blanket protection for one seeking to publicize false facts. This is a proposition that we, of course find unsettling." *Id.* at 731.

The Seventh Circuit also rejected North Atlantic's argument that it had a fair report privilege to repeat its lawsuit's allegations outside of court. The Seventh Circuit ruled that, because the Illinois Supreme Court adopted the fair report privilege from the Second Restatement of Torts, it would also apply the Second Restatement's exception to the privilege that it cannot be self-conferred: "A person cannot confer this privilege upon himself by making

the original defamatory publication himself and then reporting to other people what he had stated. This is true whether the original publication was privileged or not." *Id.* at 732 (quoting Restatement (Second) of Torts, § 611, cmt. c (1977).)

The Seventh Circuit also ruled that the statements about unfair competition were not reasonably susceptible to an innocent construction. Whether the letter "can reasonably be construed as describing North Atlantic's good-faith allegations about the legality of Republic's conduct" was "beside the point." *Id.* at 732-33. Because the allegations were of "objectively verifiable facts which can only be read one way," namely that Republic had committed acts of unfair competition, there was no reasonable innocent interpretation. *Id.*

The same is true here: Maui Jim's press release repeats factual allegations that are objectively verifiable, can be read in only one way, and have no objectively reasonable innocent interpretation when the allegations are assumed false, namely that SmartBuyGlasses is using "disingenuous and misleading sales practices" and selling "counterfeit and non-genuine Maui Jim products." Thus, SmartBuyGlasses has stated a claim for defamation *per se* against the press release under Illinois law and the *Republic Tobacco* precedent, and this Court should reconsider its previous ruling to the contrary.

## II.     THIS COURT MISAPPLIED THE DOCTRINE OF *FORUM NON CONVENIENS* AND INTERNATIONAL COMITY

This Court also manifestly erred and misapplied the doctrines of *forum non conveniens* and international comity because, *inter alia*, it did not appropriately consider that Maui Jim chose this jurisdiction and raised issues involving application of international law. Maui Jim has now convinced this Court to dispose of SmartBuyGlasses' TFEU claim while at the same time retaining jurisdiction over Maui Jim's claim that SmartBuyGlasses tortiously interfered with Maui Jim's European contracts – contracts that are unenforceable under European antitrust law.

Accordingly, while this Court will decide the enforceability of Maui Jim's Italian contracts under the TFEU with respect to Maui Jim's claims, it has punted SmartBuyGlasses' counterclaims to European courts to make the same determination with respect to the same contracts. Such a bifurcation is highly prejudicial to SmartBuyGlasses and could result in contrary international rulings on coterminous issues.

Specifically, this Court misapplied the law of *forum non conveniens* and erred in dismissing SmartBuyGlasses' TFEU claims by: (i) applying an incorrect *forum non conveniens* standard to dismiss SmartBuyGlasses' EU antitrust law counterclaim; (ii) relying on inapposite case law; (iii) overlooking Maui Jim's affirmative request that this Court adjudicate European law issues by filing a tortious interference claim based primarily in Italy; and (iv) overlooking Maui Jim's evasion of foreign jurisdiction.

### A.     The Balancing Factors Do Not Heavily Favor Dismissal

This Court concluded that SmartBuyGlasses' TFEU claim should be dismissed because it erroneously found the private and public interest factors "weigh slightly toward" dismissal. (ECF No. 358, 30-31.) However, this Court applied an incorrect standard, misapplying the standard for international comity in granting Maui Jim's motion to dismiss based on the principle of *forum non conveniens*. Moreover, neither the private nor public factors favor dismissal at all.

### 1.     This Court applied an incorrect legal standard.

The Court erred by applying a "lesser-weight" balancing test rather than requiring Maui Jim to meet the appropriate "high burden needed for dismissal under forum *non conveniens*." *Nalco Co. v. Chen*, 2013 WL 4501425, at *9 (N.D. Ill. 2013) (denying plaintiff's motion to dismiss foreign defendant's counterclaims under forum *non conveniens*); *see also*, *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (motions to reconsider

granted when there is a manifest error of law or fact).

While normally a plaintiff's choice applies with "less force" for plaintiffs not residing in a chosen jurisdiction,[1] the same is not true when a foreign defendant brings counterclaims against plaintiff who dragged them into court. Here it was Maui Jim, not SmartBuyGlasses, who chose to file suit in the Northern District of Illinois. Because SmartBuyGlasses is not the plaintiff who initiated this lawsuit, *Piper Aircraft* is inapplicable.

This Court cited *Nalco* for the proposition that it is not unprecedented for a plaintiff to move to dismiss a claim for *forum non conveniens*. (ECF No. 358 at p. 28.) However, the *Nalco* court expressly **denied** a plaintiff's motion to dismiss a foreign defendant's counterclaims based on *forum non conveniens*. *Nalco*, 2013 WL 4501425 at *6-9. The *Nalco* court further noted that plaintiff's choice of forum negates the ordinary rational for applying a lesser-weight to a foreign claimant. *Id.* The *Nalco* court required the plaintiff to show that the balancing factors heavily weigh in its favor. *Nalco*, 2013 WL 4501425 at *7. The same is true in this case. Maui Jim should have faced the same high burden because it pulled SmartBuyGlasses into this forum. Lowering the burden leads to the bizarre conclusion that—even though Maui Jim chose this forum for its convenience to Maui Jim—SmartBuyGlasses' choice of this Court for its counterclaim is somehow inconvenient.

## 2. The private interest factors do not favor dismissal.

As this Court notes, Maui Jim concedes that its tortious interference claim is based on both the United States and Italy. (ECF No. 358 at p. 30.) It is indisputable that the evidence and law required to adjudicate Maui Jim's tortious interference claim and SmartBuyGlasses' TFEU claim overlaps. Maui Jim claims SmartBuyGlasses has interfered with the contracts Maui Jim holds with its authorized retailers in Italy. As a result, the parties have undertaken significant

---

[1] *See Piper Aircraft Co. v. Reyno*, 102 S.Ct. 252, 266, 454 U.S. 235, 255, 102 S. Ct. 252, 266 (1981).

discovery in Europe, including the depositions of Hans-Jurgen Penzek, Maui Jim's Vice President for Europe based in Germany, and Andrea Salmaso, Maui Jim's Operations Director for Italy. Maui Jim has searched for and produced records in the custody of several European employees, including Messrs. Penzek and Salmaso, as well as former employees Roberto Palagi (formerly Maui Jim's Sales Director for Italy) and Antonella Zuccaroni (formerly Maui Jim's Sales Representative for Italy). The discovery taken has focused, among other things, on the applicability and development of Maui Jim's contracts with its Italian authorized retailers. This overlapping evidence was improperly discounted by this Court. (ECF No. 358 at pp. 29-30.). As a result, the private interest factors do not weigh even slightly toward dismissal.

However, to the extent this Court maintains its conclusion that the private interest factors weigh slightly toward dismissal, this Court misconstrued the standard for dismissal under the doctrine of *forum non conveniens*. This Court's conclusion that the private interest factors "weigh **slightly** toward" dismissal (ECF No. 358, 30-31) does not satisfy the appropriate "high burden," particularly as Maui Jim chose this forum. *Nalco*, 2013 WL 4501425, at *9. This Court's improper lowering of the bar caused a manifest error of law.

### 3. The public interest factors do not favor dismissal.

The public interest factors also do not favor dismissal. This Court must adjudicate European law issues surrounding Maui Jim's Italian tortious interference claim regardless of whether the TFEU claim is adjudicated here. Critically, the cases cited by this Court are fact specific EU antitrust cases – and the factual situation here is highly distinct. Each case the Court cited shares two common facts that distinguishing them from the present case: (1) the plaintiffs in those cases brought the EU antitrust claims, and (2) no other claims in those cases involved international law or international witnesses and facts. Because of the factual differences between

SmartBuyGlasses' TFEU counterclaim and the cited cases, this Court must reach a different conclusion.

None of the cases the Court cites deal with situations where the court and the parties, notwithstanding the EU antitrust claims, are going to be required to address the international factual and legal issues. The Court cites two cases, *In re Air Cargo* and *In re Urethane*, as support to decline supplemental jurisdiction over EU antitrust claims. (ECF No. 358 at p. 32.) *In re Air Cargo* collects three other cases where courts declined or dismissed a plaintiff's EU antitrust claims. Each court dismissed or declined to exercise supplemental jurisdiction over a **plaintiff's** EU antitrust claim. *See e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775JGVVP, 2008 WL 5958061 (E.D. N.Y. Sept. 26, 2008) (dismissed plaintiff's EU antitrust claim) *citing Info. Res., Inc. v. Dun & Bradstreet Corp.*, 127 F. Supp. 2d 411, 418 (S.D. N.Y. 2000) (dismissed a plaintiff's sole EU antitrust claim brought under the Treaty of Rome), *Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 4635, 2003 WL 1961636, at *5 (S.D. N.Y. Apr. 25, 2003) (dismissed plaintiff's EU antitrust claim under F.R.C.P. 12(b)(6)), and *Empagran S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1, 12 (D. D.C. 2006) (declined to exercise supplemental jurisdiction over plaintiff's only claim of EU antitrust violation when no other claim gave the court original jurisdiction); *see also In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1223 (D. Kan. 2010) (declining to exercise supplemental jurisdiction over plaintiff's EU antitrust claim). None of these cases deal with a counterclaim that deals with virtually identical issues to a claim already raised by the plaintiff which chose the forum,

SmartBuyGlasses is the defendant, not the plaintiff choosing this jurisdiction. Here, Maui Jim haled SmartBuyGlasses into court, in part based on allegations that SmartBuyGlasses is tortiously interfering with Maui Jim's Italian contracts. Critically, SmartBuyGlasses'

counterclaim directly overlaps with of Maui Jim's tortious interference claim in the following ways:

- Maui Jim filed its Second Amended Complaint ("Am. Compl.") against four different international companies for their activities in foreign jurisdictions. (Am. Compl., ¶¶ 8-11 (ECF No. 257.)

- Maui Jim's Count VI alleges tortious interference of Italian contracts under Italian law. (Am. Compl., ¶¶ 122-127 (ECF No. 257.)

- SmartBuyGlasses alleges that those same Italian contracts are invalid and violate EU antitrust law. (*Compare* the Am. Compl., ¶¶ 34, 37, 124-127 (ECF No. 257) *with* Am. Counterclaim, ¶¶ 86-90 (ECF No. 259).)

- The facts and evidence surrounding these "anti-diversion agreements" necessarily overlap with SmartBuyGlasses' EU antitrust claims. (Am. Counterclaim, ¶¶ 86-90 (ECF No. 259).)

- Maui Jim owns at least four subsidiaries in different EU countries possessing evidence surrounding contracts in multiple international jurisdictions. (Mot. to Dismiss, p. 6 (ECF No. 199).)

- SmartBuyGlasses' Italian witnesses are equally connected to Maui Jim's Italian tortious interference claims and SmartBuyGlasses' EU antitrust counterclaim. (*See e.g.,* ECF No. 233, p. 5 and ECF No. 196, p. 9.)

- Maui Jim pressured SmartBuyGlasses to terminate its international supply chain and sought discovery of SmartBuyGlasses' international supply chain to prove its Lanham Act claim. (Am. Counterclaim, ¶¶ 25-26 (ECF No. 259).)

- SmartBuyGlasses alleges that Maui Jim's same actions against SmartBuyGlasses' international supply chain violate EU antitrust laws. (*Id.*)

At a minimum, this Court will need to determine the viability of SmartBuyGlasses' defense that Maui Jim's anti-diversion agreements are illegal under European law. That determination requires that this Court rule on European law issues virtually identical to those at issue in the TFEU antitrust claim.

Moreover, it is inappropriate to dismiss a complaint on *forum non conveniens* grounds when the focus of this case is on commerce between the United States and multiple foreign

points. (*See, e.g,* Mot. to Dismiss, p. 6 (ECF No. 199) (acknowledging that Maui Jim has several international subsidiaries relevant to these proceedings); *see also* Am. Compl. ¶¶ 2, 41, 72, 73, 89, 95, 101, 111, 121, 127 (ECF No. 130) (Maui Jim does not add its subsidiaries as parties and claims that only its Illinois company will and has been damaged, not its subsidiaries); s*ee, e.g.,* *Laker Airways Ltd. v. Pan American World Airways*, 568 F. Supp. 811, 814–17, (D. D.C. 1983) (denying a motion to dismiss pursuant to *forum non conveniens* in favor of England where a minority of the parties were English and the focus of the litigation was monopolization with respect to traffic between the United States and multiple foreign points.)

### 4.     The principle of international comity does not support dismissal.

The Court erred in concluding that international comity requires dismissal of SmartBuyGlasses' TFEU claim. While SmartBuyGlasses recognizes this Court's reticence to opine on an underdeveloped area of European law (ECF No. 358 at p. 33), this Court ignored the fact that that it will need to do so regardless of the TFEU claim's disposition. Even with the dismissal of the TFEU claim, this Court still must interpret EU antitrust law to address Maui Jim's tortious interference claims. This Court must evaluate whether Maui Jim's anti-diversion contracts are valid under TFEU Article 101 and – and they are not. *See, e.g.*, European Commission Press Release, June 21, 2008 (noting that the European Union must determine if anti-diversion contracts violate EU anti-trust laws) (attached hereto as **Exhibit A**.) This case therefore requires interpretation of EU antitrust laws with or without SmartBuyGlasses' EU antitrust counterclaims.

Additionally, federal courts routinely apply foreign laws, when necessary, and look to alternative resources in addressing any challenges in interpretation. *See, e.g.*, *Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495 (7th Cir. 2009); *Nashua Sav. Bank v. Anglo-Am. Land,*

*Mortg. & Agency Co.*, 189 U.S. 221, 227–29 (1903) (discussing methods of proving foreign law in U.S. courts, including through experts). This includes complex areas of law like securities law and obscure bankruptcy laws. *See, e.g.*, *Batchelder v. Kawamoto*, 147 F.3d 915, 920–22 (9th Cir. 1998) (hearing Japanese securities law claim in relation to American Depository Receipt holders' rights); s*ee also In re Condor Ins., Ltd.*, 601 F.3d 319, 328–29 (5th Cir. 2010) (applying St. Kitts & Nevis' bankruptcy law). The Seventh Circuit previously commented approvingly on the increasing ease of interpretation of foreign laws. *See, e.g., Bodum USA, Inc. v. La Cafetière, Inc.*, 621 F.3d 624, 628 (7th Cir. 2010) (availability of laws of nations that "engage in extensive international commerce" increases ease of applying foreign laws).

This Court also has a range tools available to overcome any complications of EU antitrust law, including expert witnesses (e.g., provided by parties, on an ex parte basis, etc.), special masters, and treatises. *See, e.g.,* Comm. on Int'l Commercial Disputes, P*roof of Foreign Law After Four Decades with Rule 44.1 FRCP and CPLR 4511*, 61 Record 49, 50 (2006), available at http://www2.nycbar.org/Publications/record/vol_61_no_1.pdf, (collecting cases). The Court may do so on its own or may rely on the parties. *See* Fed. R. Civ. P. 44.1; *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 278–84 (S.D. Tex. 1997), aff'd, 161 F.3d 314 (5th Cir. 1998) (court may consult experts on its own).

Because SmartBuyGlasses' counterclaim does not present any insurmountable challenges to this Court, and because this Court will be required to opine on European law regardless of the TFEU claim's disposition, this Court should erred in dismissing SmartBuyGlasses' TFEU claim.

**B.    Maui Jim Did Not Concede That It Is Amenable to Service In European Forums**

The Court also erred in overlooking the precedent that required Maui Jim to prove the, "key element" of amenability to service under the doctrine of *forum non conveniens. Gulf Oil v.*

*Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). While SmartBuyGlasses concedes that European courts would have jurisdiction, it does not (and did not) concede that Maui Jim met its burden to establish that it would be amenable to service in any European forum. (ECF No. 233, 4.) Without service, SmartBuyGlasses has no alternative other than pursuing its TFEU claim in this forum. *Gulf Oil*, 330 U.S. at 506-507.

Maui Jim is an Illinois company with a principal place of business in Peoria, Illinois. (ECF No. 130.) As the only counter-defendant, Maui Jim must establish that it is amenable to service in any European forum. That its subsidiaries are subject to jurisdiction in the European Union is irrelevant. Yet that is precisely what Maui Jim offers. Maui Jim suggests that its subsidiaries in the United Kingdom, Italy, France, and Germany can be served in foreign courts and that those foreign courts may permit adding Maui Jim as a necessary and proper party. (ECF No. 199, 6-7.) In doing so, Maui Jim lays the groundwork for it to escape being named necessary and proper party in arguing that it "is not a direct party to the contracts." (*Id*. at 6.) Tellingly, Maui Jim never once concedes it will be amenable to service in any specific EU member state. This leaves Maui Jim free to pick its own county (if at all) in the EU for the TFEU litigation.

Because Maui Jim "utterly failed to concede or otherwise indicate in any way how they would be amenable to service of process in a [European forum], the Motion [should have been] denied on [that] basis alone." *Fitzgerald v. Willott*, 2010 WL 610673, at *3 (C. D. Ill. 2010) *citing In re Ford Motor Company*, 344 F.3d at 652 (7th Cir.2002).

### III.   IN THE ALTERNATIVE, THIS COURT MUST DISMISS MAUI JIM'S EUROPEAN TORTIOUS INTERFERENCE CLAIMS BASED ON *FORUM NON CONVENIENS* AND INTERNATIONAL COMITY

Should this Court decline to reconsider its dismissal of SmartBuyGlasses TFEU claims, it must – at the very least – dismiss Maui Jim's tortious interference claims as they pertain to

European contracts as determination of those contract will necessarily require interpretation of European contract and antitrust law. A single court (whether it is this Court or a European court) should hear these overlapping claims.

If this Court dismisses SmartBuyGlasses' TFEU claim while retaining Maui Jim's tortious interference claim, a European court and this Court may come to conflicting conclusions about the legality of Maui Jim's anticompetitive agreements. Splitting the parties' European claims presents a significant risk of inconsistent cross-national rulings and would generate numerous appellate and potential *res judicata* issues. If this Court declines to exercise jurisdiction over SmartBuyGlasses' TFEU claims, it must dismiss Maui Jim's Italian tortious interference claims for the same reasons.

"[F]orum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal." *Blanco v. Banco Industrial De Venezuela, S.A.*, 997 F.2d 974, 984 (2d Cir. 1993) (collecting cases). This Court should follow this principle. If the Court declines to reconsider its dismissal of SmartBuyGlasses' TFEU claim on the grounds set forth in Section II, *supra*, it must dismiss Maui Jim's Italian tortious interference claim as it requires this Court to adjudicate European law. To hold otherwise would undermine the same principles of international comity previously highlighted by this Court.

## IV.  THE COURT MISAPPREHENDED SMARTBUYGLASSES' CARTWRIGHT ACT CLAIM – SMARTBUYGLASSES ALLEGES A CARTWRIGHT ACT INJURY FROM MAUI JIM'S ANTICOMPETITIVE PRICE-FIXING POLICIES

This Court manifestly erred in its dismissal of SmartBuyGlasses' Cartwright Act claim because of an apparent misapprehension of the claim. This Court outlines two rationales for its dismissal of the Cartwright Act claim, neither of which is applicable. (ECF No. 358 at p. 22-25.) First, this Court based its opinion in large part on the conclusion that SmartBuyGlasses

"would stand to gain by an agreement to raise Maui Jim prices." (ECF No. 358 at p. 24.) Yet this conclusion ignores the plain language of SmartBuyGlasses' Second Amended Counterclaim and relevant California law. SmartBuyGlasses' Cartwright Act counterclaim states the following:

> Maui Jim has threatened to terminate – and has terminated – retailers that failed to adhere to this anticompetitive policy, including retailers that sold authentic products to SmartBuyGlasses.

(ECF No. 259 at p. 47, ¶ 68.) SmartBuyGlasses alleges that Maui Jim is terminating retailers that violate its anticompetitive pricing policy by selling to SmartBuyGlasses. (*Id.*) This harms SmartBuyGlasses because it inhibits SmartBuyGlasses' ability to gain a supply of Maui Jim product and it also artificially props up Maui Jim's official website. It is precisely the kind of harm the Cartwright Act was designed to prevent because the policy is an anticompetitive agreement to inflate prices. Significantly, a defendant's anticompetitive policies need not affect the plaintiff and the public at large in identical ways. The Ninth Circuit explicitly rejected that logic in *Knevelbaard Dairies v. Kraft Foods, Inc.* 232 F.3d 979, 988 (9th Cir. 2000). The defendants in that case argued that "a conspiracy to depress prices would not harm consumers but benefit them…" *Id.* The court noted that "[t]he fallacy of [defendants'] argument becomes clear when we recall that **the central purpose of the antitrust laws, state and federal, is to preserve competition.**" *Id.* (emphasis added.) Consequently, the Cartwright Act confers standing because SmartBuyGlasses alleges an injury (the inability to purchase Maui Jim product) and that harm sustained by SmartBuyGlasses stems from such anticompetitive conduct. *See id.*

Here, even if SmartBuyGlasses could theoretically benefit from an increased price for Maui Jim glasses, that is not the harm SmartBuyGlasses is claiming. Instead,

SmartBuyGlasses is alleging that Maui Jim's anti-competitive policy resulted in a decreased supply of Maui Jim product and an improper advantage to Maui Jim's own website, which stems directly from Maui Jim's illegal and anticompetitive pricing policy. This is a cognizable injury under the Cartwright Act. As Ninth Circuit in *Knevelbaard* recognized, the question is whether the injury "flows from that which makes the conduct unlawful, i.e., from the collusive price manipulation itself." *Id.* at 988. This Court's rationale for dismissing the Cartwright claim was, in essence, that SmartBuyGlasses may potentially stand to gain in ways that offset the harm from Maui Jim's price fixing. Even if that were true – and it is not – *Knevelboard* clearly rejects the use of such a potential gain to offset harm from price fixing. *Id.*

Second, the Court's Order similarly reasons that "SmartBuyGlasses does not claim that Maui Jim terminated retailers *because of* violations of its alleged price-fixing policy." (ECF No. 358 at p. 24, emphasis in original) (citing MJ Cal. Reply at 2.) This too is incorrect. SmartBuyGlasses' counterclaim alleges that Maui Jim terminates its retailers who violate its price-fixing policy by selling to SmartBuyGlasses. (ECF No. 259 at p. 47, ¶ 68.) By terminating retailers who sell to SmartBuyGlasses below Maui Jim's mandated price, Maui Jim prevents SmartBuyGlasses from accessing a supply of Maui Jim product. This is an injury under the Cartwright Act and confers standing. *Knevelbaard*, 232 F.3d at 988. As a consequence, SmartBuyGlasses' harm flows from Maui Jim's anticompetitive conduct. *Id.*

Accordingly, this Court erred in holding that SmartBuyGlasses' alleged harm – the termination of Maui Jim's retailers for violating the price-fixing policy and consequent reduction in supply of Maui Jim glasses to SmartBuyGlasses – was insufficient for standing under the Cartwright Act.

## V. THIS COURT SHOULD RECONSIDER ITS DISMISSAL OF SMARTBUYGLASSES' THE UNFAIR COMPETITION CLAIM.

As this Court and the parties recognize, SmartBuyGlasses' claim under California's Unfair Competition law ("UCL"), Cal. Bus & Prof. Code § 16720 *et seq.*, is coterminous with its Cartwright Act claim. (ECF No. 358 at p. 25-26.) For the same reasons the Court should reconsider the dismissal of Count IV for Maui Jim's violations of the Cartwright Act, it should similarly reconsider its dismissal of Count V of the UCL.

## CONCLUSION

As set forth herein, this Court made manifest errors of law in dismissing four of SmartBuyGlasses counterclaims: (1) it erroneously applied the innocent construction rule to immunize Maui Jim against defamation liability for statements in its press release; (2) it misapplied the standard for *forum non convenience* in dismissing SmartBuyGlasses' TFEU counterclaim despite the fact that the same issues will necessarily be litigated in connection with Maui Jim's tortious inference claim; and (3) it incorrectly concluded that SmartBuyGlasses failed to plead injury with respect to its counterclaims under the Cartwright Act and the California UCL when SmartBuyGlasses clearly pled that Maui Jim caused injury by terminating retailers that violate its anticompetitive pricing policy in selling to SmartBuyGlasses. For these reasons, reconsideration and reversal of the Court's decision is appropriate with respect to this Court's dismissal of Counts IV (Cartwright Act), V (California UCL), and VI (TFEU) of SmartBuyGlasses' counterclaim and its dismissal in part of Count II (defamation) of the counterclaim.

Dated: June 2, 2019

Respectfully submitted,

SMARTBUY GURU ENTERPRISES, MOTION GLOBAL LTD., SMARTBUYGLASSES SOCIETÁ A RESPONSABILITÁ LIMITATA, SMARTBUYGLASSES OPTICAL LIMITED

By: /s/ Stephen J. Rosenfeld
One of their attorneys

Stephen J. Rosenfeld (Bar No. 6216769)
Jennifer D. Armstrong
Jacob D. Radecki
McDonald Hopkins LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 642-6103
Attorneys for Defendants
E-mail: srosenfeld@mcdonaldhopkins.com
    jarmstrong@mcdonaldhopkins.com
    jradecki@mcdonaldhopkins.com

## CERTIFICATE OF SERVICE

This is to certify that on June 2, 2019, Stephen J. Rosenfeld, an attorney, caused to be served a true and correct copy of the foregoing document via electronic mail on all counsel of record who have consented to electronic service.

/s/ *Stephen J. Rosenfeld*