**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAUI JIM, INC., an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-9788 |
| | ) | |
| v. | ) | |
| | ) | Judge Aspen |
| SMARTBUY GURU ENTERPRISES, a Cayman | ) | |
| Island Company, MOTION GLOBAL LTD., a | ) | Mag. Judge Gilbert |
| Hong Kong Company, | ) | |
| SMARTBUYGLASSES SOCIETÁ A | ) | |
| RESPONSIBILITÁ LIMITATA, an Italian | ) | |
| Company, SMARTBUYGLASSES OPTICAL | ) | |
| LIMITED, a Hong Kong Company, | ) | |
| | ) | |
| Defendants | ) | |

**MAUI JIM'S OPPOSITION TO**
**"DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS [*SIC*] MOTION FOR**
**RECONSIDERATION OF ECF 358 WITH RESPECT TO COUNTS II, IV, VI, AND VI**
**OF DEFENDANTS' COUNTERCLAIM OR, IN THE ALTERNATIVE, FOR**
**DISMISSAL OF PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM"**

John Gabrielides
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606

Michelle M. Mikol
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 20006

Attorneys for Plaintiff

**TABLE OF CONTENTS**

**Page**

I.    Summary ..................................................................................................................1

II.   SBG Bears a Heavy Burden on Reconsideration ..................................................1

III.  The Court's Ruling on Maui Jim's Press Release is Not Erroneous.......................2

     A.   SBG's Argument Requires a Reconstruction of its Defamation Claim and Erasure of SBG's Previous Statements to the Court About the Claim .........................................2

     B.   SBG Repeats the Same Failed Arguments it Made in its Defamation Opposition Brief................................................................................................................5

     C.   The 'Republication Rule' is Neither Available Nor Applicable ......................................6

          1.   SBG Waived Any Argument Based on the 'Republication Rule' by Failing to Rely on it in Its Defamation Opposition Brief.........................................................6

          2.   The 'Republication Rule' Does Not Apply Because Maui Jim is Both the Original Publisher and the Republisher of the Allegedly Defamatory Statements ................................................7

          3.   The 'Republication Rule' Cannot Turn Non-Defamatory Statements Into Defamatory Statements ...........................................................8

     D.   The Court Need Not Address the Litigation or Fair Report Privileges...........................8

IV.  The Court Did Not Err in Exercising its Discretion to Dismiss SBG's EU Antitrust Claim Based on *Forum Non Conveniens* ..................................................8

     A.   The Court Applied the Correct Legal Standard ..................................................8

     B.   The Court Did Not Err in Finding That Most of the Evidence on SBG's EU Antitrust Claim is Likely to be In Europe..........................................................9

     C.   The Court Did Not Err in Finding That the Public Factors Weigh Most Heavily in Favor of Dismissal ............................................................10

     D.   The Court Correctly Evaluated the Importance of International Comity .......................11

     E.   SBG Ignores the Unchallenged Evidence That SBG Could Establish Jurisdiction Over Maui Jim in an EU Member State for SBG's EU Antitrust Claim .......................13

V.    Dismissal of MJ's Tortious Interference Claim Has No Substantive or Procedural Basis ....13

VI.   The Court Neither Misapprehended SBG's Cartwright Act Claim Nor Erred in
      Dismissing It..................................................................................................................14

VII.  The Court Did Not Err in Dismissing SBG's Unfair Competition Law Claim, Which
      Depends on SBG's Cartwright Act Claim ...................................................................16

VIII. Conclusion and Relief Sought ....................................................................................16

## I.   SUMMARY

Defendants' ("SBG's") motion for reconsideration repeats arguments SBG previously made that the Court rejected. The arguments remain ineffective, despite their repetition. SBG also relies on legal authority that although earlier available to SBG, it did not previously rely on. The Court cannot have committed manifest error by not considering arguments that SBG never presented to the Court. But most improperly, SBG tries to re-draft its defamation and antitrust-related claims by reading into them facts that SBG never alleged. In fact, SBG's motion depends on the Court blinding itself to SBG's prior statements and representations to the Court and then reading into SBG's claims facts that contradict SBG's prior statements and representations.

These deficiencies would defeat any motion but they are particularly fatal on a motion for reconsideration. Such motions are disfavored and serve a limited purpose: to correct manifest errors of law or fact, or to present newly discovered evidence. SBG bears a heavy burden that it cannot discharge by merely repeating failed arguments and coming up with new arguments (that are incorrect, as well). SBG must prove that the Court's Opinion & Order represents an exceptional circumstance with rare and compelling reasons that require reversal. SBG comes nowhere close to meeting these stringent standards.

## II.   SBG BEARS A HEAVY BURDEN ON RECONSIDERATION

Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Santos v. Williams*, No. 15 C 5325, 2017 WL 2189102, at *1 (N.D. Ill. May 18, 2017) (Aspen, J.). SBG offers no newly discovered evidence, so it can succeed only by establishing that the Court based its Opinion & Order[1] on a manifest error of law

---

[1] The "Opinion & Order" refers to ECF 358, which is the Court's Memorandum Opinion and Order that SBG challenges by its Motion for Reconsideration.

1

or fact. SBG "bears a heavy burden" in that regard. *Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Santos*, 2017 WL 2189102, at *1 (*quoting Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

Moreover, motions to reconsider are "disfavored." *Id*. They are to be granted only in "exceptional circumstances" (*Maher v. Rowen Grp., Inc.*, No. 12 C 7169, 2015 WL 4111426, at *2 (N.D. Ill. July 7, 2015) (Aspen, J.)) or "in the rarest of circumstances and where there is a compelling reason." *Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado*, No. 12 C 6357, 2016 WL 4530175, at *2 (N.D. Ill. Aug. 30, 2016) (Aspen, J.). "Motions for reconsideration are not at the disposal of parties who want to 'rehash' old arguments." *Patrick*, 103 F. Supp. 3d at 911 (quoting *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F. Supp. D 1041, 1045 (N.D. Ill. 2005)).

**III.    THE COURT'S RULING ON MAUI JIM'S PRESS RELEASE IS NOT ERRONEOUS**

**A.    SBG's Argument Requires a Reconstruction of its Defamation Claim and Erasure of SBG's Previous Statements to the Court About the Claim**

SBG's Motion depends on a substantial revision to SBG's defamation claim; namely, that the *entire* press release, not just the fifth paragraph, is defamatory. (ECF 387, at 7.) SBG cannot, however, escape the allegations of its Second Amended Counterclaim (ECF 259) or its statements to the Court in its Defamation Opp. Brief[2] where SBG expressly and repeatedly limited its defamation claim to the fifth paragraph of the press release, and conceded that the remaining paragraphs are not defamatory.

---

[2] SBG's "Defamation Opp. Brief" refers to ECF 231, where SBG opposes Maui Jim's underlying motion to dismiss SBG's defamation claim (ECF 184).

SBG's Second Amended Counterclaim refers to the press release only in ¶ 28. That paragraph refers *only* to the fifth paragraph of the press release. (ECF 259, at 41.) SBG does not complain of – or even refer to – any other paragraph, sentence, phrase, or word of the press release. The absence is not an oversight, given that SBG's *Second* Amended Counterclaim contains 94 paragraphs and spans 18 pages. SBG's pleading cannot be read as alleging defamation in anything but the fifth paragraph of the press release.

SBG's argument to the Court in its Defamation Opp. Brief matched its Counterclaim allegations: "in Paragraphs [28] through [30], SmartBuyGlasses **specifically identifies** the statements in [*sic*] which are defamatory." (ECF 231, at 4; emphasis added.) Paragraphs 29 and 30 do not relate to the press release. Paragraph 28 does, but specifically identifies statements *only* from the fifth paragraph.[3]

Moreover, SBG contrasted the first four paragraphs with the fifth, in which:

> Maui Jim was not simply echoing the allegations in the complaint. … In looking at the context and the predictable effect of the statements, the only **reasonable** construction is that Maui Jim asserted – apart from the allegations in the complaint – that SmartBuyGlasses sells counterfeit Maui Jim sunglasses. The statements were made in the final paragraph of the press release, which was completely devoid of any reference to allegations of the complaint. In looking at the press release as a whole, the first four paragraphs all relate to the allegations being made in the lawsuit, but the fifth paragraph – which includes the defamatory statements – does not signal to the reader that Maui Jim is referring to allegations in its complaint. (ECF 231, at 9; underlining added, italics in original.)[4]

---

[3] At the time that SBG filed its Defamation Opp. Brief, its defamation claim was in its First Amended Counterclaim (ECF 131). SBG carried over the defamation claim into its Second Amended Counterclaim (ECF 259). However, the numbering changed a little. Paragraphs 29 through 31 of SBG's First Amended Counterclaim are identical to Paragraphs 28 through 30 of its Second Amended Counterclaim. *See* ECF 358, at 1-2 fn. 1, and 11 fn. 2.

[4] SBG's reference to "the defamatory statements" of the fifth paragraph, with SBG's use of the definite article "the," further confirms that the fifth paragraph recites *all* of the allegedly defamatory statements. "The" defamatory statements means "all of them."

3

The distinction between the first four paragraphs and the fifth played a central role in SBG's Opposition:

> [T]he false statements alleged in Paragraph [28] are not referencing *allegations* of the complaint. Rather, in the press release, Maui Jim took it one step further, explicitly stating that companies like SmartBuyGlasses *that advertise and sell counterfeit goods* should be stopped. This is the crux of the defamation claim – Maui Jim made false statements to the public [¶ 28], customers [¶ 29] and custom agents [¶ 30] that SmartBuyGlasses' products are fake or counterfeit. These statements are not merely referencing allegations in the lawsuit. Rather, <u>Maui Jim in the final paragraph of its press release makes definitive defamatory statements about SmartBuyGlasses as opposed to statements about any specific allegation in the lawsuit. Where a press release goes beyond notifying the public about the existence of the complaint, the statements are actionable.</u> (ECF 231, at 6-7; underlining added, italics in original.)

Thus, contrary to SBG's argument, the Court's finding that SBG's defamation claim is limited to the fifth paragraph is not based on "a misreading of SmartBuyGlasses' briefs." (ECF 387, at 7.) There no other way to read them.

SBG's new argument would require amendment of its Second Amended Counterclaim and a disregard of SBG's representations and arguments in its Defamation Opp. Brief. The Court should not permit SBG to wipe away the record that SBG created just because SBG does not like its effect.

SBG says that it "never conceded" and "never agreed" that the first four paragraphs of the press release are not defamatory. (ECF 387, at 7.) It surely did, by: its allegations limited to the fifth paragraph and the absence of any allegations about the first four paragraphs; and its express reliance in its Defamation Opp. Brief on the contrast between the fifth paragraph and the rest of the press release.

SBG tries to avoid the record it created by saying that it referred only to the fifth paragraph only because it is the "most defamatory part of the press release." (ECF 387, at 7.) If so, then

adding the first four paragraphs to SBG's defamation claim would change nothing because those paragraphs are, by SBG's admission, not defamatory.[5]

Regardless of which version of SBG's defamation claim the Court considers – the "fifth paragraph only" version that SBG so clearly alleges in its Counterclaim and so clearly urged in its Defamation Opp. Brief, or the "all five paragraphs" version that SBG has suddenly and conveniently tumbled to – the press release is not defamatory under the innocent construction rule, which is a question of law for the Court. *Bryson v. News Am. Publications, Inc.*, 174 Ill. Dec. 77, 90, 672 N.E.2d 1207, 1215 (1996).

> **B.      SBG Repeats the Same Failed Arguments it Made in its Defamation Opposition Brief**

SBG contends that the press release is not subject to an innocent construction by repeating the same failed arguments it made in its Defamation Opp. Brief, and relying on two of the same cases. (ECF 231, at 7-11; relying on *Tuite v. Corbitt*, 224 Ill. Dec. 490 (2006), and *Missner v. Clifford*, 393 Ill. App. 3d 751 (1st Dist. 2009)). Relying on previously rejected arguments and case law cannot support a conclusion that the Court manifestly erred. *Patrick*, 103 F. Supp. 3d at 911.

SBG relies on two cases that it did not previously rely on its Defamation Opp. Brief: *Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.*, 297 Ill. App. 3d 304 (1st Dist. 1998); and *Republic Tobacco Co., v. N. Atlantic Trading Co.*, 381 F.3d 717 (7th Cir. 2004). Those cases, however, are not new; they were decided at least 15 years ago and therefore do not represent an intervening change in the law. *See Maher*, 2015 WL 4111426, at *2; *Santos*, 2017 WL 2189102, at *1. And if

---

[5] SBG's other asserted explanation – that the fifth paragraph "pushed the press release far beyond the scope of the fair report privilege" (ECF 387, at 7) – is irrelevant, even if accurate. Maui Jim has never asserted the fair report privilege. *See infra*, at III.G.

they supported SBG's position as strongly as SBG now contends, SBG could and should have relied on, or at least cited, them in its Defamation Opp. Brief.

### C. The 'Republication Rule' is Neither Available Nor Applicable

1. SBG Waived Any Argument Based on the 'Republication Rule' by Failing to Rely on it in Its Defamation Opposition Brief

SBG now argues that the "republication rule" saves its defamation claim. But SBG did not argue in its Defamation Opp. Brief that the "republication rule" makes Maui Jim's press release defamatory. That failure precludes SBG from now relying on the rule. "A Rule 59(e) motion 'is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment.'" *Leslie v. Roberson*, No. 15 C 02395, 2017 WL 4158887, at *2 (N.D. Ill. Sept. 19, 2017) (Aspen, J.) (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). If the republication rule offered a legal basis for SBG's defamation claim, SBG could and should have raised in its Defamation Opp. Brief. It did not do so then, and cannot do so now.[6]

---

[6] SBG argues that *Republic Tobacco v. North Atlantic Trading Co., Inc.*, 381 F.3d 717 (7th Cir. 2004), presents "an analogous factual situation" to this case. First, the Seventh Circuit decided *Republic Tobacco* 15 years ago. The case therefore cannot represent an intervening change in the law. *See Maher*, 2015 WL 4111426, at *2; *Santos*, 2017 WL 2189102, at *1. And SBG's Defamation Opp. Brief does not include any reference *Republic Tobacco*, so SBG cannot urge an argument based on the case now. *See Leslie*, 2017 WL 4158887, at *2.

In any event, *Republic Tobacco* bears no factual similarity to this case. The defendant in Republic Tobacco sent a letter to one of plaintiff's customers claiming that defendant owned patent and trademark rights in a certain product, that the plaintiff violated those rights, that defendant had filed a lawsuit to protect those rights, and that the lawsuit included a company in the same position as the plaintiff's customer. Every one of the statements was "verifiably false." 381 F.3d at 729. Maui Jim's press release, by contrast, advised the public of the allegations of a lawsuit that Maui Jim had already filed based on its unassailable trademark rights.

2.  The 'Republication Rule' Does Not Apply Because Maui Jim is Both the Original Publisher and the Republisher of the Allegedly Defamatory Statements

Even if the Court were to entertain SBG's belated reliance on the republication rule, the rule does not apply to the press release. The republication rule requires two different speakers: (1) the "original publisher" of the defamatory statement; and (2) the "republisher" of the original publisher's statement. All of the cases on which SBG relies make this clear. The *Missner* case, on which SBG most heavily relies, explains the rule as follows: "the *republisher* of defamatory material bears the same degree of liability for defamation as the *original publisher*." *Missner v. Clifford*, 393 Ill. App. 3d 751, 760 (1st Dist. 2009) (emphasis added). *See also Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.*, 297 Ill. App. 3d 304, 311 (1st Dist. 1998) (distinguishing between the "republisher" and "the party charging the misconduct" of the defamed party); *Owens v. CBS Inc.*, 173 Ill. App. 3d 977, 992 (5th Dist. 1988) ("Under common law, a person who republished a defamatory statement made *by another* was himself liable for defamation" (emphasis added)); *Lawrence v. Bauer Pub. & Printing Ltd.*, 89 N.J. 451, 461 (1982) ("the fact that *defendants* accurately reported information obtained *from another source* will not relieve them of liability" (emphasis added)).[7]

The republication rule requires that the defendant have republished defamatory statements originally made by someone else. Here, there is no "someone else." Maui Jim is the source of both its Complaint and its press release. The republication rule does not apply.

_____

[7] SBG also relies on *Republic Tobacco v. North Atlantic Trading Co., Inc.*, 381 F.3d 717 (7th Cir. 2004), but that case makes no mention of the republication rule.

7

3. The 'Republication Rule' Cannot Turn Non-Defamatory Statements Into Defamatory Statements

SBG's argument suffers from another threshold flaw: the republication rule makes the republisher liable if, *and only if*, the original statement is defamatory. If the statement is not defamatory – as the Court has properly found in this case – then republishing it cannot be defamatory. None of the cases that SBG relies on holds that republishing a *non*-defamatory statement is, or even can be, actionable. Each requires a defamatory statement by an original publisher before the republication rule even comes into play. SBG fails at that threshold.[8]

**D.    The Court Need Not Address the Litigation or Fair Report Privileges**

The Court need not address SBG's arguments on the "litigation privilege" or the "fair report privileges" because Maui Jim did not rely on either privilege in its motion to dismiss, and does not do so here.

**IV.    THE COURT DID NOT ERR IN EXERCISING ITS DISCRETION TO DISMISS SBG'S EU ANTITRUST CLAIM BASED ON *FORUM NON CONVENIENS***

**A.    The Court Applied the Correct Legal Standard**

SBG contends that the Court manifestly erred by failing to place a "high burden" on Maui Jim for dismissal under *forum non conveniens*. (ECF 387, at 13.) The Court, however, placed a "heavy burden" on Maui Jim, relying on Supreme Court and Seventh Circuit precedent. (ECF 358, at 27.) SBG does not explain how, if at all, a "high burden" differs from a "heavy burden" but whatever difference there may be cannot rise to the level of manifest error of law.[9]

---

[8] SBG's argument that "[u]nder the republication rule, the Maui Jim press release is not reasonably susceptible to an innocent construction" (ECF 387, at 5) confuses two concepts. If a statement is reasonably susceptible to an innocent construction, it is not actionable defamation. Period. The republication rule cannot convert a non-defamatory statement into actionable defamation.

[9] SBG also says that the Court applied "a 'lesser-weight' balancing test" (ECF 387, at 13) but the Court's Opinion & Order does not refer to any such test.

### B. The Court Did Not Err in Finding That Most of the Evidence on SBG's EU Antitrust Claim is Likely to be In Europe

SBG contends that the Court "improperly discounted" SBG's argument that the evidence for Maui Jim's tortious interference claim overlaps with the evidence for SBG's EU Antitrust claim. (ECF 387, at 14-15.) SBG made the same "overlap" argument in its FNC Opp. Brief. (ECF 233, at 8: "overlapping subject matter.")[10] The Court rejected it. (ECF 358, at 29-30.) SBG presents no new facts or intervening case law, and therefore does not support reconsideration. *See Patrick*, 103 F. Supp. 3d at 911.

Moreover, the supposed overlap in evidence is not a factor under *forum non conveniens*. The closest factor is "the relative ease of access to sources of proof." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). The Court considered that factor and concluded that because of "the potential reach of SBG's EU Antitrust Claim … most of the evidence regarding this claim is likely to be in Europe." (ECF 358, at 30.) SBG does not challenge that conclusion.

SBG also argues that the Court improperly lowered the bar because it dismissed SBG's EU Antitrust Claim when the private interest factors weighed only "slightly toward" dismissal. (ECF 387, at 15.) The *forum non conveniens* analysis, however, requires that the Court balance "*all* relevant public and private interest factors." *Piper Aircraft*, 454 U.S. at 257, 102 S. Ct. at 266 (emphasis added). The Court did just that: "the balance of private and public interest factors weighs in favor of dismissal." (ECF 358, at 34.)

---

[10] "FNC Opp. Brief" refers to ECF 233, where SBG opposes Maui Jim's underlying motion to dismiss SBG's TFEU claim based on *forum non conveniens* (ECF 196).

> ### C.   The Court Did Not Err in Finding That the Public Factors Weigh Most Heavily in Favor of Dismissal

After considering the several public factors, the Court found that:

> "the local interest in having localized disputes decided at home," "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action," and "the avoidance of unnecessary problems in . . . the application of foreign law" weigh most heavily in favor of dismissal. *Clerides*, 534 F.3d at 628. (ECF 358, at 31.)

SBG challenges none of those findings. Instead, it argues that the Court manifestly erred by failing to understand that "[t]his Court must adjudicate European law issues surrounding Maui Jim's Italian tortious interference claim regardless of whether the TFEU claim is adjudicated here." (ECF 387, at 15.) This is because, SBG says, "SmartBuyGlasses' counterclaim directly overlaps with [] Maui Jim's tortious interference claim." (*Id.*, at 16-17.)

Again, SBG made the same "overlap" argument in its FNC Opp. Brief and the Court rejected it. (ECF 358, at 30-34.) Motions for reconsideration cannot succeed by repeating failed arguments. *Santos*, 2017 WL 2189102, at *1. Moreover, even if the supposed overlap existed, it would not matter because overlapping claims is not a public factor under *forum non conveniens*. *See* ECF 358, at 27.

In any event, the supposed overlap does not exist. SBG presents its "overlap" argument in eight bullet points. None supports SBG's argument. For example, SBG uses circular reasoning. To support its argument that its EU Antitrust Claim "directly overlaps with [] Maui Jim's tortious interference claim," SBG says that "[t]he facts and evidence surrounding [Maui Jim's] 'anti-diversion agreement' necessarily overlap with SmartBuyGlasses' EU antitrust claims." (ECF 387, at 17 (fourth bullet point).) SBG merely says the same thing twice.

Other statements are simply wrong, such as SBG's contention that Maui Jim's Italian contracts violate EU antitrust law. (*Id.*, third bullet point). Even if the contracts are found to be

invalid under applicable contract law, SBG would have to prove more to establish its EU Antitrust Claim. For example, as SBG alleges in its Counterclaim, SBG would *also* have to prove that Maui Jim's contracts in Italy "affect trade between Member States and [ ] have as their object or effect the prevention, restriction or distortion of competition within the internal market." (ECF 259, at 15, ¶ 87.) Maui Jim's tortious interference claim requires no such proof.[11]

Other statements are vague and impart nothing probative. For example, SBG says that its Italian witnesses are "equally connected" to both claims (ECF 387, at 17 (sixth bullet point)), but SBG does not identify any of its witnesses, does not describe the subject matter of the witnesses' testimony, and does not explain what "equally connected" means. And other statements are irrelevant to SBG's argument. *See* ECF 387, at 17 (fifth bullet point).

SBG's argument addressing a non-factor in the *forum non conveniens* analysis cannot support its attack on the Court's Opinion & Order as manifestly erroneous.

**D.    The Court Correctly Evaluated the Importance of International Comity**

SBG next argues that the principle of international comity does not support dismissal because the legal issues on Maui Jim's tortious interference claim, as it applies in Italy, are the same as those on SBG's Europe-wide antitrust claim. (ECF 387, at 18.) SBG again simply re-hashes its "overlap" argument, which the Court rejected. Motions for reconsideration cannot succeed by repeating failed arguments. *Santos*, 2017 WL 2189102, at *1.

Desperate to find something new that might support a different result, SBG now holds up a press release from the European Commission. (ECF 387, at 18.) The press release, however, is

---

[11] *See Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 959 (N.D. Ill. 2002) (listing element or tortious interference claim).

not new; it pre-dates SBG's Opposition (June 21, 2018 v. Aug. 3, 2018) and is therefore unavailable for SBG's use on reconsideration. *See Leslie*, 2017 WL 4158887, at *2.

It is also completely irrelevant to the issues in this case. It reports on the EU Commission's decision to investigate territorial restriction clauses in liquefied natural gas supply contracts with Qatar Petroleum. If anything, the press release supports the Court's conclusion that EU antitrust law is unsettled, under development, and best left to the EC (ECF 358, at 32-33), as the press release cautions that "national courts must avoid giving decisions which would conflict with a decision contemplated by the Commission in proceedings it has initiated." (ECF 387-1, at 2.)

Moreover, and as explained earlier, SBG's EU Antitrust Claim requires additional proofs that are not required for Maui Jim's tortious interference claim. Indeed, the press release says that contracts that restrict the free flow of goods "*may* breach EU antitrust rules." (ECF 387-1, at 1; emphasis added.) Whether an antitrust violation is found depends on additional elements of antitrust law not required for a tortious interference violation.

SBG also points out that "federal courts routinely apply foreign laws." (ECF 387, at 18.) Again, SBG made the same argument in its FNC Opp. Brief. (ECF 233, at 11-12.) Moreover, Maui Jim does not dispute that federal courts can apply foreign laws. The issue is whether the Court manifestly erred in dismissing SBG's EC Antitrust claim after finding that "no United States court has entertained a claim under the TFEU's antitrust provisions or its equivalent predecessors," that EU antitrust law is unsettled and under development, that any decision could undermine efforts by the European Court of Justice to create uniform EC competition law, and that "the local interest in alleged European Union antitrust violations sits more comfortably in the European Union than here." (ECF 358, at 32-334). The Court did not err.

12

      **E.**      **SBG Ignores the Unchallenged Evidence That SBG Could Establish Jurisdiction Over Maui Jim in an EU Member State for SBG's EU Antitrust Claim**

SBG next argues that "Maui Jim never once concedes it will be amenable to service in any specific EU member state" (ECF 387, at 20), and goes so far as to accuse Maui Jim of "evasion of foreign jurisdiction" (*Id*. at 13). SBG misrepresents U.S. law, ignores EU law, and makes up its "evasion" accusation.

SBG's relies on *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947), for its argument that Maui Jim must "concede" its amenability to service in Europe. (ECF 387, at 19-20.) Nothing in *Gulf Oil*, however, says that the non-moving party must so concede.

But regardless, the uncontested testimony of Queens Counsel Robertson establishes that: Maui Jim's UK and Italian subsidiaries are both subject to service of process in UK and Italian courts (ECF 199-2, ¶¶ 12 and 16-18); if SBG were to file such a suit, Maui Jim would be amenable to service of process in the lawsuit (*Id*. at ¶¶ 20-21); and "SmartBuy could establish jurisdiction over the Plaintiff [Maui Jim] in an EU Member State for a claim for damages for breach of Article 101 TFEU." (*Id*. at ¶ 22.) SBG simply ignores that testimony, which SBG never challenged.[12]

**V.**     **DISMISSAL OF MJ'S TORTIOUS INTERFERENCE CLAIM HAS NO SUBSTANTIVE OR PROCEDURAL BASIS**

SBG says that the Court must dismiss Maui Jim's tortious interference claims if it dismisses SBG's EU Antitrust Claim. This is yet another previously rejected argument from SBG's FNC Opp. Brief. (*See* ECF 387, at 20-21, and ECF 233, at 15.) Moreover, it is based on the rejected premise that the two claims are coincident with one another. They are not. SBG's EU Antitrust

---

[12] SBG misplaces reliance on *Fitzgerald v. Willot*, No. 09–1182, 2010 WL 610673 (Feb. 18, 2010 C.D. Ill.). None of the defendants in *Fitzgerald* offered any evidence that they would be subject to the personal jurisdiction of the courts in Brazil. That absence contrasts with Maui Jim's evidence from Queens Counsel Robertson.

Claim is different from, and more extensive than, Maui Jim's tortious interference claim, as discussed earlier.

SBG expresses concern about the "significant risk of inconsistent cross-national rulings." (ECF 387, at 21.) But in the 32 months that this case has been pending, SBG has not filed a TFEU claim anywhere but in this Court. SBG thus shows no interest in bringing the claim in any other forum. In fact, SBG did not even file its TFEU claim in *this* Court until its First Amended Counterclaim (ECF 131), and did so only after this Court dismissed seven of SBG's eight counterclaims in its original Counterclaim (ECF 89). SBG's interest in its TFEU claim is situationally driven to obtain leverage in this case. The "significant risk of inconsistent cross-national rulings" is hypothetical.[13]

## VI. THE COURT NEITHER MISAPPREHENDED SBG'S CARTWRIGHT ACT CLAIM NOR ERRED IN DISMISSING IT

SBG argues that the Court dismissed SBG's Cartwright Act Claim based on a "misapprehension of the claim." (ECF 387, at 21.) The Court, however, relied on SBG's allegations in its Second Amended Complaint, where SBG had the unfettered opportunity (after two earlier attempts) to make out its claim.

SBG's Counterclaim alleges that Maui Jim has threatened to terminate, and has terminated, those of its authorized retailers who sell MAUI JIM products to resellers, including retailers who sell to SBG. (ECF 259, at ¶ 68.) That, SBG alleges, has caused SBG to suffer antitrust injury in the form of "SmartBuyGlasses' lost sales and inability to sell Maui Jim products in the future." (*Id*. at 73.)

---

[13] Procedurally, SBG's request is a motion to dismiss. Motions are governed by Rule 7(b) of the Federal Rules of Civil Procedure, which requires a separate document that "state[s] with particularity the grounds for seeking the order." SBG never filed such a motion. Embedding a motion within an opposition to another motion does not comply with Rule 7(b).

The Court expressly relied on those allegations in evaluating SBG's claim (ECF 358, at 23) and therefore did not misapprehend it. SBG disagrees with the Court's conclusion that SBG has not suffered an antitrust injury, but that is not a ground for reconsideration. "A manifest error is not demonstrated by the disappointment of the losing party." *Santos*, 2017 WL 2189012, at \*1.

SBG now tries to change its claim, saying that its supply of MAUI JIM-branded sunglasses dried up because of Maui Jim's alleged price fixing: "SmartBuyGlasses' counterclaim alleges that Maui Jim terminates its retailers who violate its price-fixing policy <u>by selling to SmartBuyGlasses</u>. (ECF No. 259 at p. 47, ¶ 68.)" (ECF 387, at 23; emphasis in original.) However, neither ¶ 68 of its SBG's Counterclaim nor any other allegation supports that reading of SBG's claim, as the Court found. (ECF 358, at 24: "SBG does not claim that Maui Jim terminated retailers *because of* violations of its alleged price-fixing policy" (emphasis in original).)

SBG alleges that Maui Jim's contracts with its authorized retailers have two illegal provisions: (1) one that "set[s] minimum resale price maintenance prices;" and (2) and another that "restricts to whom those retailers can sell" MAUI JIM sunglasses. (ECF 259, at 46, ¶ 65.) SBG alleges that it has been injured by effects resulting from only the latter provision:

> Shortly after SmartBuyGlasses disclosed in this litigation – on a confidential basis – certain of its suppliers of Maui Jim sunglasses, Maui Jim has closed the accounts of those suppliers and threatened to keep them closed unless the suppliers promise not to sell to SmartBuyGlasses. Likewise, when Maui Jim was able to track SmartBuyGlasses-sold goods detained in customs back to a particular supplier, Maui Jim immediately terminated that supplier, presumably because of its sale to SmartBuyGlasses. (ECF 259, at 42, ¶ 31.)

The Court therefore correctly Court found that:

> SBG does not claim that Maui Jim terminated retailers *because of* violations of its alleged price-fixing policy. … SBG in fact alleges that Maui Jim terminated retailers who sell to SBG for another reason: because of this litigation. ([ECF 259, at 42,] ¶ 31 (alleging that Maui Jim closed accounts of SBG suppliers disclosed in this litigation).) …SBG fails to draw a plausible connection between Maui Jim's alleged price fixing and its reason for terminating retailers that sold product to SBG. (ECF 358, at 24.)

15

Because the Court rejected SBG's claim as actually pled, SBG now tries to spin a different tale from its allegations. But SBG's allegations do not support the story. In fact, SBG's new story makes no sense. Any Maui Jim authorized retailer who sold to SBG violated Maui Jim's Anti-Diversion Provision *regardless of price*. (*See* ECF 259, at 10 ¶ 33.) The Court did not misapprehend SBG's Cartwright Act claim.

## VII. THE COURT DID NOT ERR IN DISMISSING SBG'S UNFAIR COMPETITION LAW CLAIM, WHICH DEPENDS ON SBG'S CARTWRIGHT ACT CLAIM

SBG admits that if the Court did not manifestly err in dismissing SBG's Cartwright Act claim, the Court also did not manifestly err in dismissing SBG's California Unfair Competition Law claim. (ECF 387, at 24.) SBG fails to meet its heavy burden with respect to its Cartwright Act claims, and therefore necessarily fails to meet its burden on its California Unfair Competition Law claim.

## VIII. CONCLUSION AND RELIEF SOUGHT

SBG fails to establish that any portion of the Court's Opinion & Order is manifestly erroneous. Maui Jim therefore requests that the Court deny SBG's motion in its entirety.

Respectfully submitted,

*/s/ John Gabrielides*
John T. Gabrielides
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606

Michelle M. Mikol
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 20006

Attorneys for Plaintiff