**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MAUI JIM, INC., an Illinois Corporation,** ) | |
| ) | **No. 16-cv-09788** |
| **Plaintiff,** ) | |
| ) | **Hon. Marvin E. Aspen** |
| **v.** ) | |
| ) | |
| **SMARTBUY GURU ENTERPRISES, a Cayman Island Company, MOTION GLOBAL LTD., a Hong Kong Company, SMARTBUYGLASSES SOCIETÀ A RESPONSABILITÀ LIMITATA, an Italian company, SMARTBUYGLASSES OPTICAL LIMITED, a Hong Kong company,** ) | **FILED UNDER SEAL** |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON ITS
LANHAM ACT AND RELATED STATE LAW CLAIMS**

John Gabrielides
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606

Michelle M. Mikol
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 20006

Attorneys for Plaintiff

TABLE OF CONTENTS

**Page**

I. MAUI JIM AND ITS MAUI JIM SUNGLASSES ................................................3

    A.    Maui Jim and its MAUI JIM Sunglasses ...............................................3
    B.    Maui Jim and Its Authorized Retailers ..................................................7

II. SBG AND ITS SALE OF MAUI JIM-BRANDED SUNGLASSES.................................9

III. TRADEMARK INFRINGEMENT, COUNTERFEITING, AND UNFAIR
COMPETITION IN VIOLATION OF 15 U.S.C. § 1114(1) AND § 1125(A) ...............17

    A.    The MAUI JIM Marks are Registered With the U.S. Patent & Trademark
Office ..............................................................................................18
    B.    The Law Presumes That SmartBuy's Use of Counterfeit MAUI JIM Marks
on Sunglasses is Likely to Cause Confusion ........................................19
    C.    Even Without the Presumption, SBG's Use of the MAUI JIM Marks Creates
a Likelihood of Confusion ..................................................................20

        1.    The Similarity Between the Marks. ........................................20
        2.    The Similarity of the Products .............................................21
        3.    The Area and Manner of Concurrent Use ...............................21
        4.    The Degree of Care Likely to be Exercised by Consumer ..........21
        5.    The Strength of the MAUI JIM Marks .....................................22
        6.    Actual Confusion ...............................................................22
        7.    SBG's Intent to Present its MAUI JIM-Branded Sunglasses as
Authentic MAUI JIM Sunglasses ..........................................24

IV. SBG CANNOT ESTABLISH THE EXHAUSTION OR FIRST SALE DEFENSE........26

    A.    SBG Cannot Establish That Each Pair of MAUI JIM Sunglasses That It Sold
Was First Sold by Maui Jim to SBG or to One of Maui Jim's Authorized
Retailers .........................................................................................26
    B.    The MAUI JIM-Branded Sunglasses That SBG Sold Were Materially
Different From Genuine MAUI JIM Sunglasses....................................27
    C.    The 'Sponsorship Exception' to the First Sale Doctrine Makes SBG Unable
to Establish the Defense ....................................................................32

V.      FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(A) ..............................36

VI.     REVERSE PASSING OFF IN VIOLATION OF 15 U.S.C. § 1125(A)..........................37

VII.    UNFAIR COMPETITION, IN VIOLATION OF ILLINOIS' UNIFORM
        DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510 *ET SEQ.*................................38

VIII.   CONCLUSION ................................................................................................................38

The material facts in the instant case are simple and not amenable to any genuine dispute. Defendants (collectively, "SBG") trade upon Plaintiff's ("Maui Jim's") reputation and the goodwill of its federally registered MAUI JIM trademarks by selling and offering for sale counterfeit and non-genuine sunglasses under Maui Jim's trademarks. Moreover, in an effort to unfairly compete with Maui Jim and its authorized retailers and to obtain product sales, SBG, among other things, falsely advertises that it is an authorized retailer of authentic MAUI JIM-branded sunglasses, and makes misleading representations that its sunglasses are approved and manufactured by Maui Jim, when they are not. SBG's intentional acts to perpetuate the false impression that Maui Jim has approved of, or partnered with, SBG are egregious, and the evidence of actual confusion is overwhelming. Maui Jim has been, and continues to be, irreparably harmed by SBG's unlawful actions, and when the material facts are applied to well-established law, Maui Jim is entitled to summary judgment.

## I. MAUI JIM AND ITS MAUI JIM SUNGLASSES

### A. Maui Jim and its MAUI JIM Sunglasses

Maui Jim is a leading designer, manufacturer, and provider of premium prescription and non-prescription sunglasses, which are marketed, offered, and sold globally, including in the United States and Italy. (SOF ¶ 1.)

Since at least as early as the 1980s, Maui Jim has continuously used the marks shown in the left-hand column of the chart below (together, the "MAUI JIM Marks") in selling sunglasses in U.S. commerce, to distinguish its sunglasses from those offered by others. (SOF ¶ 2.)

| Mark | Goods | Reg. No. | Reg. Date |
|------|-------|----------|-----------|
| MAUI JIM | Clothing, namely t-shirts; sunglasses | 1404711 | August 12, 1986 |
| *Maui Jim* | Sunglasses[1] | 3443858 | June 10, 2008 |
| *Maui Jim* | Sunglasses[2] | 1465234 | November 17, 1987 |
| *Maui Jim* | Clothing, namely, t-shirts, polo shirts, tank tops, hats, visors, sweatshirts and jackets; sunglasses | 4547944 | June 10, 2014 |

      Maui Jim has registered its MAUI JIM Marks with the U.S. Patent & Trademark Office for sunglasses and, in some cases other goods, as shown in the second, third, and fourth columns of the chart above. (SOF ¶ 5.)

---

[1] This Registration originally covered sunglasses and clothing. (SOF ¶ 3.) Maui Jim deleted clothing from the Registration on October 30, 2013, as reflected in Maui Jim's filings with the U.S. Patent & Trademark Office. *See* https://tsdr.uspto.gov/documentviewer?caseId=sn77151982&docId=S8920180612164322#docIndex=3&page=1.

[2] This Registration originally covered sunglasses and clothing. (SOF ¶ 4.) Maui Jim deleted clothing from the Registration on May 16, 2018, as reflected in Maui Jim's filings with the U.S. Patent & Trademark Office. *See* https://tsdr.uspto.gov/documentviewer?caseId=sn73622271&docId=S8920071115142818#docIndex=5&page=1.

Maui Jim offers over 125 different styles of sunglasses under one or more of its MAUI JIM Marks. (SOF ¶ 6.) Every pair of MAUI JIM sunglasses is 100% polarized and protects against 100% of various types of ultraviolet ("UV") radiation, including UVA, UVB, and UVC rays. (*Id.*)

In addition, every pair of lenses in MAUI JIM sunglasses incorporates Maui Jim's patented, color-infused lens technology that wipes out glare and UV rays, and boosts color via specially designed lens treatments. (SOF ¶ 7.) Maui Jim's proprietary technology—which Maui Jim markets under the POLARIZEDPLUS and POLARIZEDPLUS2 marks—provides remarkable clarity and color enhancement that further distinguishes MAUI JIM sunglasses from its competitors and that consumers have come to expect from MAUI JIM sunglasses. (*Id.*)

Maui Jim has used its POLARIZEDPLUS mark since at least as early as April 1989, and its POLARIZEDPLUS2 mark since at least as early as January 2004. (SOF ¶ 8.) Maui Jim has registered each mark with the U.S. Patent & Trademark Office as shown chart below. (*Id.*)

| Mark | Goods | Reg. No. | Reg. Date |
|---|---|---|---|
| POLARIZEDPLUS | Eyeglasses and eyeglass lenses | 2251175 | June 8, 1999 |
| POLARIZEDPLUS2 | Sunglasses | 3010769 | November 1, 2005 |

Maui Jim also offers other features, lens materials, colors, applications, and treatments unique to MAUI JIM sunglasses to further enhance the distinctiveness and value of its MAUI JIM Marks and the Sunglasses sold under its Marks. (SOF ¶ 9.)

Since 2009, Maui Jim has invested nearly ███████ in advertising, promoting, and marketing its MAUI JIM sunglasses and in establishing its MAUI JIM Marks and the

POLARIZEDPLUS2 mark in the minds of consumers as a source of high quality premium products offered by Maui Jim. (SOF ¶ 10.)

Maui Jim prominently uses its MAUI JIM Marks and the POLARIZEDPLUS2 mark in advertising, marketing, and promotional materials, including but not limited to TV commercials, print advertisements, brochures, social media, and other digital advertising, marketing, and promotional campaigns. (SOF ¶ 11.) As an example, over the past five years Maui Jim's national advertising campaign for MAUI JIM sunglasses has included TV commercials during the national broadcasts of high profile sporting events, such as the Kentucky Derby, PGA Championship, Stanley Cup Playoffs, NBA Playoffs, NCAA March Madness Tournament, MLB Opening Day games, the NFL Draft, and the ESPYs. (*Id*.)

Additionally, Maui Jim's TV commercials have aired on major networks (for example, NBC, CBS, ABC, HGTV, Discover Channel, Food Network, and ESPN) during popular morning shows (for example, Today Show and Good Morning America) and prime-time dramas (for example, Blacklist, 60 Minutes, Hawaii Five-O, Americas Got Talent, The Voice, Madam Secretary, and Chicago PD). (SOF ¶ 11.)

Maui Jim's print advertising strategy has included premium placements in major magazines such as Sports Illustrated, People Magazine, Golf Magazine, Shape, Fast Company, among others. (SOF ¶ 11.) Maui Jim's digital promotion strategy includes advertising on Pandora, Facebook, Instagram, and other online platforms. (*Id*.) All of Maui Jim's advertising and promotional efforts feature the MAUI JIM Marks and the POLARIZEDPLUS2 mark, by design. (*Id*.)

Maui Jim also promotes the MAUI JIM Marks and the POLARIZEDPLUS2 mark through and with high-profile sponsorships and partners; for example, Maui Jim is currently the Official

Vision Partner of Manchester United, the Title sponsor of Maui Jim Maui Invitational men's college basketball tournament, and the Official Eyewear Sponsor of the ATP Men's Tennis Tour. (SOF ¶ 12.)

For the past eight consecutive years, Maui Jim has been consistently recognized by optical retailers and eye care professionals as the Sunglass Company of the Year in Vision Monday and 20/20 Magazine's Annual EyeVote Readers' Choice Award. (SOF ¶ 13.) Additionally, Maui Jim has been voted the Readers' Choice for the Best Prescription Sunglass Company and Brand categories since 2017, when the category was first introduced. (*Id.*)

All MAUI JIM sunglasses have earned the Skin Cancer Foundation's Seal of Recommendation as an effective UV filter for the eyes and surrounding skin. (SOF ¶ 14.)

MAUI JIM sunglasses have become immensely popular with consumers due to (among other things) Maui Jim's high quality standards, superior lens technology, excellent customer service, and reputable retail partnerships. (SOF ¶ 15.) As an example, Maui Jim built its own in-house digital prescription lab at its headquarters in Peoria, Illinois, where Maui Jim produces every single prescription lens used in those MAUI JIM sunglasses that Maui Jim sells in the U.S. with prescription lenses, ensuring its customers the highest quality and service available. (*Id.*)

Maui Jim considers its MAUI JIM Marks and the POLARIZEDPLUS2 mark to be among the company's most valuable and important assets as indicators of source of the company's high quality MAUI JIM sunglasses and related services. (SOF ¶ 16.) As a result of Maui Jim's extensive advertising, promotion, and sale of MAUI JIM sunglasses, Maui Jim has developed enormous goodwill in connection with its MAUI JIM Marks and the POLARIZEDPLUS2 mark. (*Id.*)

### B. Maui Jim and Its Authorized Retailers

To maintain its high quality sunglasses, selection, and customer service, Maui Jim limits the distribution of MAUI JIM sunglasses to its wholly-owned distributors throughout the world.

Maui Jim and its wholly-owned distributors sell MAUI JIM sunglasses through an authorized retailer program, which permits select retail establishments to sell MAUI JIM sunglasses to individuals who are interested in wearing premium eyewear. (SOF ¶ 17.)

Maui Jim promotes its select authorized retailers through its websites. If a retailer is not listed on Maui Jim's websites, it is not a Maui Jim authorized retailer. (SOF ¶ 18.) The link at www.mauijim.com/US/en_US/store-finder/position takes Internet visitors to a list of Maui Jim's U.S. authorized retailers, and the link at https://www.mauijim.com/US/en_US/retailer takes visitors to a list of Maui Jim's online authorized retailers. (SOF ¶ 19.) [3]

Maui Jim's authorized U.S. retailers purchase MAUI JIM sunglasses only from Maui Jim and/or its wholly-owned subsidiary Maui Jim USA, Inc. (SOF ¶ 20.) Each of those authorized retailers enters into a written agreement with Maui Jim and/or Maui Jim USA, Inc. that governs the business relationship, outlines Maui Jim's terms and conditions, and make reference to its U.S. General Policies ("Maui Jim Retailer Agreement"). (SOF ¶ 21.)

Maui Jim requires that all Maui Jim sunglasses be sold with authentic Maui Jim lenses, frames and parts and not modified in any manner. (SOF ¶ 22.) Maui Jim prohibits retailers from inserting sunglass lenses into Maui Jim's sunglass frames, or otherwise modifying the authentic MAUI JIM sunglasses in any way. (*Id*.) Only Maui Jim's authorized retailers can sell MAUI JIM sunglasses with Maui Jim prescription lenses. (SOF ¶ 23.)

Maui Jim requires that authorized retailers display online only those sunglasses that are in its inventory. (SOF ¶ 24.) These polices ensure that customers will receive the highest quality

---

[3] The list of Maui Jim's authorized online retailers used to be at http://www.www.mauijim.com/store-finder/retailer. (SOF ¶ 19.)

sunglasses, service and the expedited service and attention that its customers have come to expect from Maui Jim and its retailers. (*Id*.)

Maui Jim further ensures high quality customer service from its retailers by requiring that each authorized retailer have the necessary technology to service online customers and meet certain service requirements, including but not limited to, the ability to ship product within 48 hours of receiving an order. (SOF ¶ 25.)

In addition, authorized retailers are required to direct all consumer repairs to Maui Jim for low-cost, high quality repairs that are completed by Maui Jim's trained repair technicians and shipped back to its customers in a timely manner. (SOF ¶ 26.)

Maui Jim provides extensive warranty protection for each pair of MAUI JIM sunglasses sold directly by Maui Jim or its authorized retailers. (SOF ¶ 27.) Maui Jim does not extend its warranty to sunglasses sold through unauthorized retailers. (SOF ¶ 28.) Maui Jim voids its warranty for MAUI JIM sunglasses that have been modified to include parts that Maui Jim did not manufacture. (SOF ¶ 29.) Maui Jim's warranty and repair policies are an integral part of its customer service offering that consumers have come to expect and enjoy from the MAUI JIM brand and experience. (SOF ¶ 30.)

SBG is not now, and has never been, an authorized retailers of MAUI JIM sunglasses. (SOF ¶ 31.) Maui Jim has never sold a single pair of MAUI JIM sunglasses to SBG. (SOF ¶ 32.)

## II. SBG AND ITS SALE OF MAUI JIM-BRANDED SUNGLASSES

SBG makes, and has made, prominent use of the MAUI JIM Marks in selling MAUI JIM-branded sunglasses on SBG's website and other digital platforms. For example:





(Exh. 1, MJ42; Exh. 2, MJ15694.)

In these examples, SBG use the MAUI JIM Marks and also tells visitors that "Maui Jim has you covered with their PolarizedPlus2® lens technology." However, only Maui Jim's authorized retailers can sell MAUI JIM sunglasses with Maui Jim prescription lenses. (SOF ¶ 33.) SBG has never been one of Maui Jim's authorized retailers. (SOF ¶ 31.) Nevertheless, SBG sold MAUI JIM-branded sunglasses after removing the original lenses and mounting into the frames prescription lenses that did not come from Maui Jim and that were manufactured using a process over which Maui Jim had no control. (SOF ¶ 34.)

Other examples of SBG's use of the MAUI JIM Marks and logos are shown at SOF 35.

SBG represents to customers that it is one of Maui Jim's authorized retailers. (SOF 36.) SBG, however, is not now, and has never been, an authorized retailers of MAUI JIM sunglasses. (SOF 32.) And Maui Jim has never sold a single pair of MAUI JIM sunglasses to SBG. (SOF 32.)

SBG contends that ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

                        ███████████████████████████████████

                        ████████████████████████████████

                        ███████████

                        ████████████████████████

                        ███████████████████████████████████

                        ███████████████████████████████████

---

[4] Calculated by adding the "Confirmed Invoice QTY"for those companies that do not have "NOT ACCOUNT"handwritten next to them.



Therefore, although SBG contends that all of the ███ pairs of MAUI JIM-branded sunglasses that it sold came through distributors and affiliates that purchase directly from Maui Jim, most and perhaps all could not have and must have come from somewhere else. And SBG has shown no interest in learning where its suppliers get their MAUI JIM-branded sunglasses.

SBG's website represents to visitors that it has one operation center in the U.S.; namely, in New York:



(SOF 40.)

But SBG admits that it does not have any physical location or physical office in New York. (SOF 41.)

12

Similarly, after one of SBG's customers had bought a pair of MAUI JIM-branded sunglasses from SBG, the customer contacted Maui Jim about the order (direct evidence of source confusion). He asked SBG  SBG's lack of presence in the U.S. matters to consumers because it causes shipment delays.

Moreover, SBG submits false information to U.S. Customs and Border Protection and to the Food and Drug Administration when it imports MAUI JIM-branded sunglasses into the United States for sale to U.S. customers. SBG's false submissions include submitting, without Maui Jim's authorization, documents on Maui Jim letterhead that misrepresent to Customs that Maui Jim certifies and guarantees SBG shipments.

Because sunglasses are medical devices regulated by the FDA, SBG must certify that the sunglass lenses being imported into the U.S. are impact resistant, in compliance with a "drop ball test "protocol. *See* 21 C.F.R. §§ 886.5850 (sunglasses are medical devices), 801.410(d) (drop ball testing), and 801.410(g) (testing applies to importers for resale). SBG admits that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It therefore cannot execute its own "drop ball "certification to satisfy the FDA's requirement.

To get around this problem, it represented that Maui Jim guaranteed the lenses in SBG's shipments to be impact resistant. It did so as late as December 2017, more than one year into this lawsuit, when SBG submitted to the FDA a Maui Jim Drop Ball Test Certification. (SOF 43.) The

Certification is on Maui Jim letterhead, is dated June 8, 2009, and was signed by a former Maui Jim Logistics Manager. SBG admits that it included the 2009 Maui Jim Drop Ball Certification to clear the way for shipments to U.S.-based consumers (SOF 44), and that SBG never asked Maui Jim for authorization to use the Certification (SOF 45). The maneuver worked: SBG's U.S. shipments of MAUI JIM-branded sunglasses came into the U.S. based on SBG's misrepresentation that Maui Jim had guaranteed the lenses in SBG's shipments to be impact resistant – when Maui Jim had never, and could never have, made such a guarantee.

Between 2013 and 2017, SBG identified ████████ as the manufacturer of the MAUI JIM-branded sunglasses that SBG shipped and sold to U.S. consumers. ████████ is one of Maui Jim's biggest competitors (SOF 46) and one of SBG's "main partners," as SBG touts on its website, at https://www.smartbuyglasses.com/c/authenticity.

SBG admits that ████████ does not manufacture MAUI JIM-branded sunglasses. (ECF 259, at ¶68; SOF 47.) Nevertheless, SBG identified ████████ as the manufacturer on thousands of invoices included in shipments to U.S. consumers.

SBG ships every pair of MAUI JIM-branded sunglasses that SBG sells into the U.S. from Hong Kong. (SOF 48.) Each shipment includes a Commercial Invoice with information on sunglasses, including the manufacturer of the sunglasses. (The required information is set forth in regulations of U.S. Customs and Border Protection. *See* 19 C.F.R. § 141.86.) SBG creates the Commercial Invoices for the products that it ships. (SOF 49.) As an example, SBG sent the Commercial Invoice shown below to one of its U.S. customers who had purchased MAUI JIM-branded sunglasses:



(SOF 50.)

The highlighted fields show that SBG identified ▮▮▮▮▮▮ as the "Eyewear Manufacturer." The Invoice shown above is not an outlier. SBG hard-coded its Commercial Invoice template so that every Commercial Invoice for every pair of MAUI JIM-branded sunglasses that SBG shipped into the U.S. from 2013 (and perhaps earlier) through 2017 identified

████████ as the manufacturer of the sunglasses. (SOF 51.) SBG sales documents show that it

shipped at least ██████ pairs of MAUI JIM-branded sunglasses into the U.S. from 2013 to 2017.

(SOF 52.) Consumers noticed. More importantly, they were understandably confused by SBG's

representation on its Invoices that ████████ manufactured the MAUI JIM-branded sunglasses they

had purchased from SBG. For example, on January 23, 2017, a customer wrote SBG's Customer

Service:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

On August 4, 2017, another customer likewise about the source of the sunglasses. During

the exchange, SBG first told the customer that SBG sourced the MAUI JIM-branded sunglasses

████████████████████████████████████████████ "SBG

did not correct the customer's understandable confusion:

████████████████████████████████████████████
███████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████
████████████████████████████████████████████
███████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████

Maui Jim has also been contacted by consumers who were confused by SBG's manufacturer representation on its Invoice. On July 12, 2016, a person who had bought MAU JIM-branded wrote to Maui Jim:



And another consumer wrote to Maui Jim on January 23, 2017, asking whether ███████ was authorized to sell Maui Jim, noting ████████████████████████████████ ███████████████████████████

There is no genuine issue on the foregoing material facts and under familiar standards, Maui Jim is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986); *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013).

### III. TRADEMARK INFRINGEMENT, COUNTERFEITING, AND UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1114(1) AND § 1125(A)

SBG uses, without Maui Jim's consent, the MAUI JIM Marks on sunglasses in a manner that is likely to cause confusion, mistake, or deception. Because the Marks are registered with the U.S. Patent & Trademark Office, SBG's unauthorized use violates § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). SBG's unauthorized use of the MAUI JIM Marks is also likely to cause

confusion, mistake, or deception as to the origin, sponsorship, or approval of the sunglasses that it sells under the Marks. That violates § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), which does not require registration. *See Entertainment One UK Ltd. v. 2012Shiliang*, No. 18 CV 4461, 2019 WL 1953096, *2 (N.D. Ill. May 2, 2019).

To prevail under either Section, Maui Jim must prove that: (1) MAUI JIM is a protected mark; and (2) SmartBuy uses a mark that is likely to cause confusion among consumers. *See Entertainment One UK Ltd. v. 2012Shiliang*, No. 18 CV 4461, 2019 WL 1953096, *3 (N.D. Ill. May 2, 2019); *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *2 (N.D. Ill. Dec. 18, 2017) (granting summary judgment of infringement, counterfeiting, and unfair competition); *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F.Supp.2d 872, 880 (N.D. Ill. 2013). A reasonable jury could not find in SBG's favor on either element.

## A. The MAUI JIM Marks are Registered With the U.S. Patent & Trademark Office

The U.S. Patent & Trademark Office has registered the MAUI JIM Marks on the Principal Register. The Registrations constitute *prima facie* evidence of the validity of the Marks and of Maui Jim's exclusive right to use the Marks in commerce in connection with the goods specified in the Registrations. *See* 15 U.S.C. § 1057(b); *Entertainment One UK Ltd. v. 2012Shiliang*, No. 18 CV 4461, 2019 WL 1953096, *3 (N.D. Ill. May 2, 2019). Moreover, three of the marks[5] are incontestable under 15 U.S.C. § 1115(b), which constitutes conclusive evidence of Maui Jim's exclusive right to use each of those Marks. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469

---

[5] MAUI JIM (Reg. No. 1404711), MAUI JIM Stylized (Reg. No. 3443858), and MAUI JIM Stylized with Parrot Design (Reg. No. 1,456,234).

U.S. 189, 192, 105 S. Ct. 658, 660, 83 L. Ed. 2d 582 (1985). Maui Jim has therefore met its burden of showing that its MAUI JIM Marks are protectable. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *2 (N.D. Ill. Dec. 18, 2017) (granting summary judgment of infringement, counterfeiting, and unfair competition).

### B. The Law Presumes That SmartBuy's Use of Counterfeit MAUI JIM Marks on Sunglasses is Likely to Cause Confusion

The likelihood of confusion is presumed where a defendant sells counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, the plaintiff's product. *Entertainment One UK Ltd. v. 2012Shiliang*, No. 18 CV 4461, 2019 WL 1953096, *3 (N.D. Ill. May 2, 2019); *Microsoft Corp. v. Rechanik*, 249 Fed. App'x. 476, 479 (7th Cir. 2007); *NBA Properties, Inc. v. Yan Zhou*, No. 16-CV-11117, 2017 WL 4074020, *3 (N.D. Ill. Sept. 14, 2017) (the marks defendants used "are effectively indistinguishable from the Plaintiffs' trademarks … therefore it is presumed that the merchandise created a likelihood of confusion;" granting summary judgment of trademark infringement, counterfeiting, and unfair competition); *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *3 (N.D. Ill. Dec. 18, 2017).

A "counterfeit mark" is one that is identical with, or substantially indistinguishable from, a registered mark and used for the sale of goods listed in the registration. 15 U.S.C. §§ 1116(d)(1)(B)(i) and 1127. SBG sells sunglasses by using marks that are identical to the MAUI JIM Marks, which are registered with the U.S. Patent & Trademark Office for sunglasses.

SBG uses the counterfeit marks to capitalize on the worldwide popularity and demand for MAUI JIM sunglasses. SBG has recognized the substantial commercial value of the MAUI JIM brand. As far back as 2008, correspondence among three SBG executives shows their interest in selling MAUI JIM-branded sunglasses: ████████████████████

███████████████████████████████████████

█████████████████████████████████████

As a result, the likelihood of confusion is presumed.

**C.    Even Without the Presumption, SBG's Use of the MAUI JIM Marks Creates a Likelihood of Confusion**

Even if SBG were not using counterfeit marks, the traditional "likelihood of confusion" analysis ends at the same place considering: (1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the MAUI JIM Marks; (6) the staggering number of instances of actual confusion; and (7) SBG's intent to present its MAUI JIM-branded sunglasses as authentic MAUI JIM sunglasses. *See Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 779 (N.D. Ill. 2011). No single factor is dispositive, but the Seventh Circuit treats the similarity of the marks, actual confusion, and the defendant's intent as particularly important. *Id*. at 780. Where "the evidence is so one-sided that there can be no doubt about how the question should be answered," the likelihood of confusion can be resolved on summary judgment. *NBA Properties, Inc. v. Yan Zhou*, No. 16-CV-11117, 2017 WL 4074020, *2 (N.D. Ill. Sept. 14, 2017) (quoting *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996)). *See also H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *4 (N.D. Ill. Dec. 18, 2017).

An analysis of the seven factors compels the conclusion that there is a likelihood of confusion.

1.    *The Similarity Between the Marks.*

The marks that SBG uses are identical to the MAUI JIM Marks.

### 2. *The Similarity of the Products*

Maui Jim and SBG both use the same marks on sunglasses.

### 3. *The Area and Manner of Concurrent Use*

Maui Jim and SBG both sell MAUI JIM sunglasses to end users online: SBG at www.smartbuyglasses.com; Maui Jim at www.mauijim.com and through websites of its authorized retailers, including (for example) Nordstrom and Abt Electronics. (SOF 19.)

### 4. *The Degree of Care Likely to be Exercised by Consumer*

Purchasers of the parties' respective sunglasses are individuals who buy the sunglasses for personal use. Such purchasers can be expected to exercise a reasonable degree of care. But even they exercised a heightened degree of care, it would not matter because no amount of care could distinguish the MAUI JIM marks that SBG uses from the identical MAUI JIM Marks that Maui Jim owns, particularly where the parties use the marks on identical products. "[W]here the products are identical and the marks are identical, the sophistication of buyers cannot be relied upon to prevent confusion." *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979). *See also Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988) ("because both parties produce lines of quality apparel under strongly similar marks, this factor does not mitigate against the likelihood of confusion"); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 948–49 (Fed. Cir. 2000) (purchaser sophistication is outweighed by the "strong similarity of marks and identity of goods").

Moreover, the evidence of extensive actual confusion (discussed below) belies any argument that individuals exercise enough care to avoid being confused.

5.     *The Strength of the MAUI JIM Marks*

"The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001). "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 933 (7th Cir. 2008). The trademark owner's efforts and performance in the marketplace are evidence of the mark's economic and marketing strength. *Id.*

For the reasons set forth above and the supporting testimony of Maui Jim's Vice President of Global Marketing Jay Black, the record contains overwhelming and indisputable evidence of the commercial strength of the MAUI JIM Marks. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *4 (N.D. Ill. Dec. 18, 2017).

The MAUI JIM Marks are also inherently strong, because they are arbitrary for use on sunglasses. MAUI JIM is a term made up of two common words used in an unfamiliar way on products that bear no relation to either word or to the term as a whole. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 n.12 (2d Cir. 1976). As arbitrary marks, they are among the strongest marks. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2757, 120 L. Ed. 2d 615 (1992).

6.     *Actual Confusion*

Maui Jim does need evidence of actual confusion to demonstrate a likelihood of confusion. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685-86 (7th Cir. 2001). But where evidence of actual confusion exists, the Seventh Circuit gives it "substantial weight."

> "There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion. Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *World Carpets, Inc. v. Dick Littrells New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971) *1090 (footnote omitted). Indeed, while likelihood of confusion "can be proven without any evidence of actual confusion, such evidence if available, is entitled to substantial weight." [*Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977).]

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089–90 (7th Cir. 1988).

*See also Vacation Rental Partners, LLC v. VacayStay Connect, LLC*, No. 15 CV 10656, 2017 WL 1150806, at *10 (N.D. Ill. Mar. 28, 2017) (summary judgment in favor of trademark owner where, among other things, evidence of actual confusion "overwhelmingly establishes the likelihood of confusion").

Both parties have received unsolicited statements from purchasers and potential purchasers of MAUI JIM sunglasses reflecting actual confusion from SBG's unauthorized use of the MAUI JIM Marks. Even though just "[o]ne instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion," *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685-86 (7th Cir. 2001), discovery exposed 181 instances of actual confusion. They are collected at SOF 58 ("Confusion Chart"). Just a high-level review of each would make this Memorandum well over 100 pages long. Here are just three examples.





The remaining 180 are equally revealing, both in quality and quantity.

       7.     *SBG's Intent to Present its MAUI JIM-Branded Sunglasses as Authentic MAUI JIM Sunglasses*

Wrongdoers rarely admit their bad intent in using marks without permission from the trademark owner, so courts "may infer Defendant's intent to confuse consumers 'from the similarity of the marks where the senior mark has attained great notoriety.'" *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *4 (N.D. Ill. Dec. 18, 2017) (*quoting AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008)).

SBG uses marks that are identical to the MAUI JIM Marks. It uses those marks on sunglasses, as does Maui Jim. Further, the MAUI JIM Marks have achieved overwhelming public recognition over the many years that Maui Jim has used and advertised the Marks, at an investment cost of hundreds of millions of dollars. Given the identity of the marks, the identity of the products, and the strength of the MAUI JIM Marks, SBG necessarily intends to present its MAUI JIM-

branded sunglasses as authentic MAUI JIM sunglasses. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *4 (N.D. Ill. Dec. 18, 2017).

Moreover, the cultivated ignorance by which SBG acquires the MAUI JIM-branded sunglasses it sells further reveals SBG's bad intent. As discussed earlier, Maui Jim has never sold a single pair of MAUI JIM sunglasses to SBG. Because SBG cannot get MAUI JIM sunglasses *from* Maui Jim, SBG has charted a secretive path *around* Maui Jim. SBG contends that it gets the sunglasses through ███████████████████████████████████████████████

████████████████████████████████████████████████████████ Therefore, the MAUI JIM-branded sunglasses that those companies sold to SBG could not have come to those companies "directly from Maui Jim."

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ And SBG admits that it neither knows the sources nor cares to know, for fear of being invested with uncomfortable facts. That is enough to show bad intent. "It is not necessary to produce direct evidence of willfulness to satisfy the statute. Rather, 'it is enough for these purposes that the defendant failed to inquire further because he was afraid of what the inquiry would yield. Willful blindness is knowledge enough.'" *UL LLC v. Am. Energy Prod., LLC*, 358 F. Supp. 3d 753, 760 (N.D. Ill. 2019) (*quoting Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989)).

There are no genuine issues of material fact to contradict the evidence: each "likelihood of confusion "factor points to a likelihood of confusion. Together, the factors require such a finding.

IV.     **SBG CANNOT ESTABLISH THE EXHAUSTION OR FIRST SALE DEFENSE**

SBG relies on the doctrine of exhaustion (also known as "the first sale doctrine") as an affirmative defense, arguing that "Maui Jim placed its sunglasses into the stream of commerce by selling them and exhausted its exclusive statutory right to control distribution of those products. Defendants cannot be prevented from advertising and selling Maui Jim merchandise in competition with Maui Jim." (ECF 259, at 31-32.)

SBG cannot meet its burden of establishing its affirmative defense for each of three reasons: *first*, SBG cannot prove that every pair of MAUI JIM-branded sunglasses that SBG sold were the subject of an authorized first sale by Maui Jim to SBG or to one of Maui Jim's authorized retailers; *second*, the MAUI JIM-branded sunglasses that SBG sells are materially different from the MAUI JIM sunglasses that Maui Jim sells; and *third*, SBG goes far beyond the limited boundaries of the first sale doctrine.

### A.     SBG Cannot Establish That Each Pair of MAUI JIM Sunglasses That It Sold Was First Sold by Maui Jim to SBG or to One of Maui Jim's Authorized Retailers

SBG must establish, among other things, that each pair of MAUI JIM-branded sunglasses that SBG sold had earlier been sold by Maui Jim to SBG or to one of Maui Jim's authorized retailers. *See Ryan v. Volpone Stamp Co.,* 107 F. Supp. 2d 369, 382 (S.D.N.Y. 2000). Without such proof, the first sale doctrine does not apply and the MAUI JIM-branded sunglasses that SBG sold cannot be genuine. *See Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 979 F. Supp. 224, 231 (S.D.N.Y. 1997).

As previously discussed, SBG has never purchased a single pair of MAUI JIM-branded sunglasses from Maui Jim. ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

26

████████████████████████████████ Thus, SBG cannot establish that all of the MAUI JIM-branded sunglasses that it sold were the subject of an authorized first sale by Maui Jim. That alone ends SBG's reliance on the first sale doctrine.

The defendant in *RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 WL 7780975 (E.D. Mich. Dec. 23, 2014), relied on the first sale doctrine but could only speculate as to the origin of the products at issue. Because the defendant could not establish that the first sales of the products were authorized, the Court found that the first sale defense was inapplicable and entered summary judgment in plaintiff's favor. *Id.*, at *8. So, too, here where SBG offers less than speculation; it has deliberately stayed ignorant of the source of the MAUI JIM-branded sunglasses that it purchases from third parties, half of whom have never been Maui Jim authorized retailers.

But even if SBG could jump that hurdle, it immediately falls for two other reasons.

### B.   The MAUI JIM-Branded Sunglasses That SBG Sold Were Materially Different From Genuine MAUI JIM Sunglasses

Where branded goods sold by a reseller materially differ from the branded goods sold by the trademark owner, the first sale doctrine does not apply.

> There is a material difference exception to the First Sale Doctrine. *See Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009) (finding First Sale Doctrine does not apply where an unauthorized reseller resells a product missing a warranty term); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) (finding First Sale Doctrine does not apply to an unauthorized retailer of tanning lotions using a trademark to give consumers the impression they are an authorized retailer). The exception exists primarily because a material difference in a product is "likely to cause consumer confusion and could dilute the value of the trademark." *See Brilliance Audio, Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 370 (6th Cir. 2007). And "a physically identical product is nevertheless 'materially different' from the genuine article if 'the bundle of services' that attach to the genuine article is not available to the consumer." *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F.Supp.2d 208, 224 (E.D.N.Y. 2011) (*quoting Beltronics USA, Inc. v. Midwest Inventory Distrib. LLC*, 522 F.Supp.2d 1318, 1327 (D. Kan. 2007) *aff'd* 562 F.3d 1067, 1071 (10th Cir. 2009)).

*ABG Prime Grp., Inc. v. Innovative Salon Prod., Inc.*, No. 17-12280, 2018 WL 2937327, at *4 (E.D. Mich. June 12, 2018). *See also Duracell US Operations, Inc. v. JRS Ventures, Inc*., No. 17 C 31366, 2018 WL 3920617, at *3 (N.D. Ill. Aug. 16, 2018). Even subtle differences can be material, because "it is by subtle differences that consumers are most easily confused." *Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992). For that reason, the "threshold of materiality must be kept low." *Id*. at 641. If there are differences, "it is incumbent upon the importer to show that the differences are not of the kind that consumers on average, would likely consider in purchasing the product." *Hyundai Const. Equip. U.S.A., Inc. v. Chris Johnson Equip*., Inc., No. 06 C 3238, 2008 WL 4210785, *2 (N.D. Ill. Sep. 10, 2008). "[A] material difference between goods simultaneously sold in the same market under the same name creates a presumption of consumer confusion as a matter of law." *Nestle*, 982 F.2d at 640 (citations omitted).

The MAUI JIM-branded sunglasses that SBG sold materially differ from genuine MAUI JIM sunglasses in several ways. ***First***, customers experience inordinate delays in receiving MAUI JIM-branded sunglasses from SBG because, among other things, SBG fails to comply with regulations of U.S. Customs and Border Protection and the Food & Drug Administration. In fact, the FDA issued an "Import Alert" in August 2018 identifying a "Red List" of companies "who are not registered or have inadequate registration and have imported or offered for import drugs or medical devices when they were not registered and their products listed." (SOF 59.) SBG, identified as Motion Global, is on the Red List of companies. The Alert continues: "The establishments identified below were notified, by Warning Letter and/or other means, that they are in violation of the Act and their articles are subject to imports refusal as misbranded. These firms have not corrected the violations." (*Id*.)

28

The record shows that several SBG shipments were subject of Notices of FDA Action. (SOF 60.) Customer complaints to SBG vividly tell the story of their negative experiences resulting from SBG's non-compliance with U.S. regulations. (Confusion Chart) For example:



SBG's failure to comply with regulations resulting in delivery delays and seizures is a material difference. *See PepsiCo, Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1059 (C.D. Cal. 1999).

Even without having to navigate the FDA red flags triggered by SBG shipments, SBG's failure to manage the process of shipping MAUI JIM-branded sunglasses to the U.S. from a location nearly 8,000 air miles away has led to long delays. As shown in the following paragraph, it can take an unsuspecting U.S. consumer weeks or months to receive MAUI JIM-branded sunglasses from SBG, if it receives them at all. This is in stark contrast to Maui Jim's 48-hour shipment requirement for its U.S. authorized retailers. (SOF 25.)

The record is full of consumer emails to SBG and Maui Jim complaining about SBG's delivery delays. They are compiled at SOF 61 ("Delay Chart"). For example:



And consumers attribute SBG's delays and poor service *to Maui Jim*, as illustrated in this July 4, 2017, email from an SBG customer to Maui Jim's Customer Service: ███████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████ (Delay Chart, at , No. 90.) Of course, SBG is not a vendor but the customer thought otherwise.

The **second** material difference stems from Maui Jim's warranty program, which is an integral part of its customer service (SOF 30) and therefore material to consumers' purchasing decision. Examples of consumer statements reflecting the importance of Maui Jim's warranty are collected at SOF 62. Maui Jim's warranty, however, does not apply to sunglasses purchased outside its network of authorized retailers. (SOF 28.) Needing to plug that hole, SBG offers a warranty for its MAUI JIM-branded sunglasses that differs from Maui Jim' warranty. (SOF 63.) The terms of SBG's warranty are immaterial; the fact that consumers purchase MAUI JIM-branded sunglasses that come with a warranty that differs from Maui Jim's warranty is a material difference. *See Hyundai Const. Equip. U.S.A., Inc. v. Chris Johnson Equip., Inc.*, No. 06-3238, 2008 WL 4210785, at *2 (N.D. Ill. Sept. 10, 2008).

The **third** material difference is that once the sunglasses left Maui Jim's authorized retailer network, Maui Jim lost control over the conditions and environments in which the sunglasses were handled and kept by unauthorized third parties.[6] That lack of control means that someone who bought MAUI JIM-branded sunglasses from SBG may have received MAUI JIM-branded sunglasses that differed from genuine MAUI JIM sunglasses. And that is what happened. For example, SBG sold MAUI JIM-branded sunglasses after removing the original lenses and mounting into the frames prescription lenses that did not come from Maui Jim and that were manufactured using a process over which Maui Jim had no control. (SOF 34.)

In the face of such irrefutable evidence, SBG cannot meet its burden of showing that the differences are not material.

### C.   The 'Sponsorship Exception' to the First Sale Doctrine Makes SBG Unable to Establish the Defense

Even if SBG could overcome the two previous obstacles to its use of the first sale doctrine, SBG could not establish the defense for yet another reason: SBG's conduct goes beyond the mere resale of MAUI JIM-branded sunglasses; it conveys the impression that SBG is an authorized retailer of MAUI JIM sunglasses, when it is not.

"It is the essence of the 'first sale' doctrine that a purchaser who does *no more than stock, display, and resell* a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) (emphasis added). The first sale doctrine offers no protection for

---

[6] This presupposes an unestablished fact: that the sunglasses originated with Maui Jim. The presupposition works in favor of SBG, but Maui Jim makes it for present purposes only.

resellers who use others' trademarks to give the impression that they are favored or authorized dealers for a product when in fact they are not. *See D 56, Inc. v. Berry's Inc.,* 955 F.Supp. 908, 910–20 (N.D. Ill. 1997). "One who resells trademark goods is obligated to do so in a manner that is not likely to cause confusion or imply that the seller is associated with the manufacturer." *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.,* No. 01 C 585, 2001 WL 128164, at *2 (N.D. Ill. Feb. 9, 2001). Any conduct "beyond the mere resale of the goods" triggers liability and renders the first sale doctrine irrelevant. *Enesco Corp. v. K's Merch. Mart, Inc.,* No. 99 C 1070, 2000 WL 1800640 (N.D. Ill. Aug. 29, 2000). Confusion is especially likely where, as here, "the manufacturer has an authorized network in place and the consumer is misled into believing that the defendant is part of that network." *Enesco Corp. v. K's Merch. Mart Inc.*, No. 99 C 1070, 2000 WL 1800640, at *13 (N.D. Ill. Aug. 29, 2000).

SBG far exceeds the "stock, display, and resell" boundaries of the first sale defense and is the poster child for the sponsorship exception. Despite SBG's admission that it is not authorized retailer (SOF 64), it holds itself out to consumers as being just that. For example, ███████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Additional examples are collected at the False Rep Chart.

Moreover, █████████████████████████████████████████████ ████████████████████████████ Because Maui Jim is a leading eyewear manufacture and supplier, SBG misleads consumers into believing that SBG works directly with Maui Jim or that Maui Jim has sponsored or approved SmartBuy, when that is not the case. One example comes from the "Authenticity" page of the SmartBuy website, where SBG advertises:



In yet another example, SBG advertised on its website that it obtains its sunglasses "directly from the world's leading eyewear suppliers" and includes an image, reproduced below (the "Supply Chain Image"), that visually illustrates the direct route that sunglasses travel from manufacturer to customer. SBG emphasizes that its sunglasses avoid the "Traditional Supply Chain" that includes intermediate steps, in favor of "Our Supply Chain" — a direct route between manufacturers and customers. But SBG *does not* work with Maui Jim, nor does it procure MAUI JIM-branded sunglasses directly from Maui Jim.



(SOF 68.)

This demonstrates that consumers take away the message from these representations that SBG is an authorized retailer of Maui Jim. In a recent example from June 2018, a prospective

34

consumer wrote to SBG's Customer Service Department that he understood from reviewing SBG's "Authenticity" page that SBG works directly with Maui Jim and he was outraged when he found out from Maui Jim that SBG was not an authorized retailer.

 (SOF 65, at 11, No. 148.)

In another example, a customer of SBG wrote to SBG's Customer Service indicating that

This is another example of customers interpreting SBG's statements as implying that SBG is an authorized retailer, when it is not.

Last, SBG fraudulently uses Maui Jim's 2009 Drop Ball Certification, without Maui Jim's knowledge or authorization, to mislead Customs into believing that Maui Jim guaranteed that whatever SBG was shipping to U.S. customers had been tested for impact resistance. (SOF 43.)

SBG does far more than merely "stock, display, and resell" genuine MAUI JIM sunglasses. It has embarked on a systemic, prolonged, and sophisticated scheme to mislead consumers and others in material ways. Its scheme has worked, as evidenced by the 182 instances of actual confusion that disqualify SBG from establishing its first sale defense. There is no evidence to the contrary on which a jury could reasonably find for SBG on this issue.

V.     FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(A)

To establish a claim under the false or misleading advertising, Maui Jim must prove that: (1) SBG has made a false or misleading statement of fact about the MAUI JIM-branded sunglasses that it sells in a commercial advertisement or promotion; (2) the statement actually deceived or has the tendency to deceive a substantial portion of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) SBG caused its statement to enter interstate commerce; and (5) Maui Jim has been or is likely to be injured as a result of the statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *See Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819-20 (7th Cir. 1999); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 971 (7th Cir. 1999); *Grove Fresh Distribs., Inc. v. New England Apple Prods. Co.,* 969 F.2d 552, 557 (7th Cir. 1992).

A false statement can be (1) literally false as a factual matter, or (2) literally true or ambiguous, but implicitly conveying a false impression, misleading in context, or likely to deceive consumers. *Hot Wax,* 191 F.3d at 820. Literally false statements give rise to a presumption of deception and materiality. *See, e.g., Hot Wax,* 191 F.3d at 819; *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1089 (7th Cir. 1994); *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Genderm Corp. v. Biozone Labs.,* 1992 WL 220638, at *2 (N.D. Ill. Sept. 3, 1992).

Where a statement is not false on its face, the plaintiff must produce evidence showing that a substantial portion of the intended audience is likely to be misled by it, usually in the form of a consumer surveys. *Sparknet Commc'ns, L.P. v. Bonneville Int'l Corp.,* 386 F. Supp. 2d 965, 978 (N.D. Ill. 2005). SBG's customer service representatives have made numerous literally false statements, as detailed above and at SOF 65. Furthermore, SBG has advertised, and continues to advertise, the follow literally false statement on its website.

36

> Can I trust the authenticity of the products? All of our products have a 100%
> Authenticity Guarantee, no exceptions. SmartBuyGlasses takes great lengths to
> ensure the high quality and product authenticity that our customers have come to
> expect, *and all products are accompanied with official tags and manufacturer*
> *warranties.* (SOF 69) (emphasis added).)

As has been made abundantly evident, Maui Jim does not honor the warranty for sales of MAUI JIM-branded sunglasses by SBG. Additionally, SBG's Supply Chain Image and representations that it has a U.S. location are also literally false statements. As such, deception and materiality are thus presumed.

Maui Jim commissioned a survey to test whether SBG's website misleads consumers into believing that SBG is an authorized retailer of MAUI JIM sunglasses. The results of the survey show that 40.1% of the survey respondents took away the impression that SBG is an authorized retailer of MAUI JIM sunglasses. (SOF 70.) This evidence is entitled to substantial weight, particularly when combined with the evidence discussed earlier of SBG's false and misleading statements. It shows actionable false advertising. See *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 279 n.23 (7th Cir. 1976).

## VI.  REVERSE PASSING OFF IN VIOLATION OF 15 U.S.C. § 1125(A)

By identifying ████████, one of Maui Jim's biggest competitors and one of SBG's "main partners, "as the manufacturer of MAUI JIM-branded sunglasses on Commercial Invoices sent to customers, SBG is liable for "reverse passing off "under the Lanham Act. Reverse passing off occurs when a party misrepresents that someone else's goods are its own (or in this case, are goods manufactured by one of the party's "main partners"). *See Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 26 n. 1, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003); *Smith v. Montoro,* 648 F.2d 602, 605 (9th Cir. 1981) (reverse passing off is accomplished when the wrongdoer removes the trademark on another's product and sells it under a name chosen by the wrongdoer).

SBG's misconduct constitutes reverse passing off because: (1) identified ███████ as the manufacturer – meaning, the origin – of MAUI JIM-branded sunglasses, when ██████ did not manufacture them; (2) SBG caused the sunglasses to enter into commerce; and (3) Maui Jim is likely to be damaged as a result thereof. *See Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1203 (7th Cir. 1990). The damage to Maui Jim is established by showing a likelihood that consumers will be by SBG's identification of ██████ as the manufacturer of MAUI JIM-branded sunglasses. *See Id*. 1204. The record has unassailable evidence of actual confusion, which is the best evidence of a likelihood of confusion. *See Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1006 (N.D. Ill. 2008)

Under the irrefutable facts, "[i]t is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product. "*Johnson v. Jones,* 149 F.3d 494, 503 (6th Cir. 1998) (affirming summary judgment of reverse passing off).

## VII.     UNFAIR COMPETITION, IN VIOLATION OF ILLINOIS' UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510 *ET SEQ.*

Maui Jim is entitled to summary judgment that SBG has violated the UDTPA based on the same evidence that establishes SBG's liability under the Lanham Act. *See Entertainment One UK Ltd. v. 2012Shiliang*, No. 18 CV 4461, 2019 WL 1953096, **3 and 6 (N.D. Ill. May 2, 2019); *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No 16-cv-10096, 2017 WL 6733685, *2 (N.D. Ill. Dec. 18, 2017).

## VIII.   CONCLUSION

Maui Jim requests that the Court enter summary judgment that SmartBuy has violated the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), by infringing Maui Jim's trademark rights, by using counterfeit marks, by engaging unfair competition, and by engaging in false advertising. The

same facts also establish SBG's liability, on summary judgment, under Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a). Such a judgment would resolve Counts I, II, and V of Maui Jim's Second Amended Complaint (ECF 257, at 25-27 and 30-31).

SBG's Second Amended Complaint also alleges that: SBG's use of the MAUI JIM Marks constitutes dilution under the Lanham Act (*Id*., at 27-28, Count III); and SBG has tortiously interfered with Maui Jim's contracts with its authorized retailers (*Id*., at 31-32, Count VI). Maui Jim does not move for summary judgment on those Counts only because the Court's disposition of this Motion may render the relief sought by those Counts duplicative and/or moot as a practical matter. Nothing in this Motion or elsewhere should be construed as a waiver of Maui Jim's right to try those claims, depending on the Court's disposition of this Motion.[7]

Respectfully submitted,

*/s/ John Gabrielides*
John Gabrielides
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606

Michelle M. Mikol
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 20006

Attorneys for Plaintiff

---

[7] The remaining Count of Maui Jim's Second Amended Complaint alleges that SBG has infringed Maui Jim's copyrights in 93 photographs owned by Maui Jim of MAUI JIM sunglasses. (ECF 257, at 28-30, Count IV). Maui Jim is entitled to summary judgment on that claim for the reasons set forth in a separate motion for summary judgment being filed concurrently with this Motion.