**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAUI JIM, INC., an Illinois Corporation | ) | |
| | ) | Case No. 1:16-cv-09788 |
| Plaintiff, | ) | |
| | ) | District Judge Marvin E. Aspen |
| v. | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| SMARTBUY GURU ENTERPRISES, a | ) | |
| Cayman Island Company, MOTION | ) | |
| GLOBAL LTD., a Hong Kong Company, | ) | |
| SMARTBUYGLASSES SOCIETÁ A | ) | |
| RESPONSABILITÁ LIMITATA, an | ) | * PUBLIC VERSION * |
| Italian Company, SMARTBUYGLASSES | ) | |
| OPTICAL LIMITED, a Hong Kong | ) | |
| company, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

SUMMARY OF FACTUAL BACKGROUND ...................................................................... 2

I.      BACKGROUND OF SMARTBUYGLASSES ........................................................... 2

II.     BACKGROUND OF MAUI JIM .............................................................................. 3

III.    SMARTBUYGLASSES' SALE OF AUTHENTIC MAUI JIM SUNGLASSES ......... 3

IV.     MAUI    JIM    HAS    KNOWN    ABOUT    AND    SUPPORTED
        SMARTBUYGLASSES' SALES OF AUTHENTIC MAUI JIM PRODUCTS
        FOR YEARS .......................................................................................................... 4

V.      MAUI JIM KNOWS THAT SMARTBUYGLASSES SELLS AUTHENTIC
        MAUI JIM SUNGLASSES ...................................................................................... 5

VI.     MAUI JIM KNOWS SMARTBUYGLASSES' SALES OF MAUI JIM
        SUNGLASSES ARE LEGAL ................................................................................... 7

VII.    MAUI JIM KNEW ABOUT SMARTBUYGLASSES' SALE OF MAUI JIM
        SUNGLASSES SINCE AT LEAST 2008 AND TOOK NO ACTION ......................... 8

VIII.   MAUI JIM FILED THIS LAWSUIT IN OCTOBER 2016 ........................................ 9

ARGUMENT ..................................................................................................................... 9

I.      SMARTBUYGLASSES IS ENTITLED TO SUMMARY JUDGMENT ON
        ALL OF MAUI JIM'S LANHAM ACT CLAIMS .................................................. 12

        A.      The Doctrine Of Laches Bars Maui Jim's Trademark Claims ......................... 12

                1.      Maui Jim knew SmartBuyGlasses was selling Maui Jim sunglasses
                        no later than 2008 ............................................................................. 12

                2.      Maui Jim unreasonably delayed bringing suit until October 2016. ......... 15

                3.      Maui Jim's unreasonable delay prejudiced SmartBuyGlasses. ............... 15

        B.      Maui Jim Acquiesced In SmartBuyGlasses' Use Of Its Marks ....................... 16

        C.      SmartBuyGlasses Is Entitled To Summary Judgment On Maui Jim's
                Section 32(1) Claim Because SmartBuyGlasses' Maui Jim Sunglasses
                Are Not Counterfeit ...................................................................................... 20

                1.      No dispute exists that SmartBuyGlasses' sells authentic plano
                        Maui Jim sunglasses. ......................................................................... 21

                2.      SmartBuyGlasses' sale of third-party add-on prescription lenses
                        with authentic Maui Jim sunglasses does not somehow transform
                        the authentic glasses into counterfeit ones .......................................... 25

        D.      SmartBuyGlasses Has An Absolute Right To Sell Its Authentic Maui
                Jim Sunglasses Under The First Sale Doctrine ............................................... 31

        E.      Summary Judgment Is Warranted Because Maui Jim Cannot Establish
                That Consumers Are Likely To Be Confused By SmartBuyGlasses' Use
                Of Maui Jim's Marks ..................................................................................... 34

1.    This court should exclude or give no weight to the survey and testimony of Maui Jim's confusion expert.................................................. 35

2.    Maui Jim cannot meet its burden of establishing a likelihood of confusion.................................................................................................. 36

F.    SmartBuyGlasses Has Not Engaged In Any False Advertising ........................ 40

G.    Maui Jim's Dilution Claim Fails Because SmartBuyGlasses' Activities Do Not Tarnish Or Blur SmartBuyGlasses' Marks ............................................. 42

II.    MAUI JIM'S CLAIM UNDER THE UDTPA IS DUPLICATIVE OF ITS LANHAM ACT CLAIMS AND FAILS FOR THE SAME REASONS AS THOSE CLAIMS ........................................................................................................ 44

III.    MAUI JIM CANNOT DEMONSTRATE A DISPUTE OF MATERIAL FACT REGARDING WHETHER SMARTBUYGLASSES INFRINGED MAUI JIM'S COPYRIGHTS ................................................................................................ 45

A.    Maui Jim Did Not Register Some Of The Relevant Images Within The Three Month Period Required By Applicable Law ............................................. 45

B.    Maui Jim Cannot Meet Its Burden Of Proof On Infringement ......................... 46

C.    SmartBuyGlasses' Use Of Maui Jim's Copyrights Was Permissible Under The Doctrine Of Fair Use ....................................................................... 47

IV.    SMARTBUYGLASSES DID NOT TORTIOUSLY INTERFERE WITH MAUI JIM'S AUTHORIZED RETAILER AGREEMENTS ..................................... 49

A.    Maui Jim Has No Evidence Of Valid And Enforceable Contracts And Therefore That Any Contract Was Breached.................................................... 49

B.    Maui Jim Has No Evidence That SmartBuyGlasses Knew The Terms Of The Alleged Contractual Provisions It Claims Were Breached......................... 52

C.    Maui Jim Cannot Establish That It Has Suffered Any Damages As A Result Of SmartBuyGlasses' Alleged Tortious Interference............................. 53

V.    SMARTBUYGLASSES IS ENTITLED TO SUMMARY JUDGMENT ON ITS DEFAMATION AND UNJUST ENRICHMENT COUNTERCLAIMS............ 54

A.    Maui Jim's Statements About SmartBuyGlasses Were Defamatory As A Matter Of Law.............................................................................................. 54

B.    Maui Jim Has Unjustly Enriched Itself At SmartBuyGlasses' Expense ........... 56

CONCLUSION............................................................................................................ 58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BancInsure v. BMB Elec. Co. Inc.*,
No. 03 C 2692, 2004 WL 765124 (N.D. Ill. April 8, 2004) ..................................58

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*,
235 F. 3d 1041 (7th Cir. 2000) ..................................35

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*,
805 F. Supp. 2d 503 (N.D. Ill. 2011) ..................................16, 17, 38, 39

*Bryson v. News America Publications, Inc.*,
174 Ill. 2d 77 (1996) ..................................55, 56

*Bulova Watch Co. v. Allerton Co.*,
328 F. 2d 20 (7th Cir. 1964) ..................................26

*Caterpillar, Inc. v. Walt Disney Co.*,
287 F. Supp. 2d 913 (C.D. Ill. 2003) ..................................36

*Chattanoga Mfg. v. Nike, Inc.*,
301 F. 3d 789 (7th Cir. 2002) ..................................12, 15, 16

*Chicago Bd. of Educ. v. Substance, Inc.*,
354 F. 3d 624 (7th Cir. 2003) ..................................47, 59

*Cleary v. Philip Morris, Inc.*,
656 F. 3d 511 (7th Cir. 2011) ..................................57

*Daubert v. Merrell Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ..................................35

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands International, Inc.*,
616 F. Supp. 2d 805 (N.D. Ill. 2009) ..................................53

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
94 F. 3d 376 (7th Cir. 1996) ..................................36

*FAMEFlynet, Inc. v. Jasmine Enterprises, Inc.*,
344 F. Supp. 3d 906 (N.D. Ill. 2018) ..................................48

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ..................................46

*Feldman v. Allegheny Intern. Inc.*,
    850 F. 2d 1217 (7th Cir. 1988) ........................................................................52, 53

*FM Indus., Inc. v. Citicorp Credit Services, Inc.*,
    614 F. 3d 335 (7th Cir. 2010) ................................................................................45

*Forest River v. Heartland Recreational Vehicles, LLC*,
    753 F. Supp. 2d 753 (N.D. Ind. 2010) ...............................................................47, 48

*Greenbrier Leasing Co. LLC v. Carroll*,
    No. 07 C 2884, 2008 WL 4866037 (N.D. Ill. June 17, 2008) ...............................58

*Hart v. Amazon.com, Inc.*,
    191 F. Supp. 3d 809 (N.D. Ill. 2016) .................................................................31, 32

*Hay Group, Inc. v. Bassick*,
    No. 02 C 8194, 2005 WL 2420415 (N.D. Ill. Sept. 29, 2005)...............................50

*Healy v. Metropolitan Pier & Exposition Authority*,
    804 F. 3d 836 (7th Cir. 2015) ................................................................................49

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
    73 F. 3d 497 (2d Cir. 1996)....................................................................................43

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
    191 F. 3d 813 (7th Cir. 1999) ....................................................................12, 16, 41

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    131 Ill. 2d 145 (1989) ............................................................................................49

*Iberia Foods Corp. v. Romeo*,
    150 F. 3d 298 (3d Cir. 1998)......................................................................... *passim*

*Illinois Tamale v. El-Greg, Inc.*,
    No. 16 C 5387, 2018 WL 6590558 (N.D. Ill. Dec. 14, 2018) ....................13, 14, 15

*Instant Tech., LLC v. Defazio*,
    40 F. Supp. 3d 989 (N.D. Ill. 2014) ......................................................................50

*Integrated Geomics, Inc. v. Kyrpides*,
    No. 06-c-6906, 2010 WL 375672 (N.D. Ill. Jan. 26, 2010)....................................53

*Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*,
    No. 12 C 10275, 2013 WL 4011052 (N.D. Ill. Aug. 6, 2013)................................45

*Kienitz v. Sconnie Nation LLC*,
    766 F. 3d 756 (7th Cir. 2014) ................................................................................48

*King of the Mountain Sports, Inc. v. Chrysler Corp.*,
    185 F. 3d 1084 (10th Cir. 1999) ........................................39

*Kolegas v. Heftel Broad. Corp.*,
    154 Ill. 2d 1 (1992) ..........................................................55, 56

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*,
    502 F. 3d 504 (6th Cir. 2007) ...........................................35

*Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*,
    758 F. Supp. 2d 596 (N.D. Ill. 2010) ...............................32

*Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*,
    756 F. Supp. 280 (W.D. La. 1991) ...................................40

*McCoy v. Mitsuboshi Cutlery, Inc.*,
    67 F. 3d 917 (Fed. Cir. 1995) ......................................31, 32

*Moab Indus. v. FCA U.S., LLC*,
    No. 12-cv-8247, 2016 WL 5859700 (D. Ariz. Oct. 6, 2016) ..............44

*Moseley v. V Secret Catalogue, Inc.*,
    537 U.S. 418 (2003) ..........................................................44

*Muehlbauer v. General Motors Corp.*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ...............................57

*Packman v. Chicago Tribune Co.*,
    267 F. 3d 628 (7th Cir. 2001) ......................................38, 39

*Peters v. West*,
    692 F. 3d 629 (7th Cir. 2012) ...........................................46

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ..........................................................46

*Planet Hollywood (Region IV) v. Hollywood Casino Corp.*,
    80 F. Supp. 2d 815 (N.D. Ill. 1999) ...........................*passim*

*Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*,
    149 F. 3d 722 (7th Cir. 1998) ...........................................38

*Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*,
    548 F. Supp. 2d 619 (N.D. Ill. 2008) ...............................56

*Quill Corp. v. NADA Scientific Ltd.*,
    No. 97 C 7461, 1998 WL 295502 (N.D. Ill. May 21, 1998) ..............33

*Ringling Bros-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*,
   170 F. 3d 449 (4th Cir. 1999) ...............................................................................42

*Rolex Watch USA, Inc. v. Meece*,
   158 F.3d 816 (5th Cir. 1998) ...................................................................26, 29, 30

*S Indus., Inc. v. Diamond Multimedia Sys., Inc.*,
   991 F. Supp. 1012 (N.D. Ill. 1998) ......................................................................42

*Saleh v. Merchant*,
   No. 14-cv-09186, 2018 WL 287748 (N.D. Ill. Jan. 4, 2018).................................49

*SB Designs v. Reebok Intern., Ltd.*,
   338 F. Supp. 2d 904 (N.D. Ill. 2004) ...................................................................44

*Scott Fetzer Co. v. House of Vacuums, Inc.*,
   381 F. 3d 477 (5th Cir. 2004) ...............................................................................35

*Sebastian Intern., Inc. v. Longs Drug Stores*,
   53 F. 3d 1073 (9th Cir. 1995) .............................................................31, 32, 33, 34

*ShopLocal LLC v. Cairo, Inc.*,
   No. 05 C 6662, 2006 WL 495942 (N.D. Ill. Feb. 27, 2006)...................................57

*Smith Fiberglass Products, Inc. v. Ameron, Inc.*,
   7 F. 3d 1327 (7th Cir. 1993) .................................................................................34

*Smith v. Wal-Mart Stores, Inc.*,
   537 F. Supp. 2d 1302 (N.D. Ga. 2008)................................................................36

*Specht v. Google, Inc.*,
   660 F. Supp. 2d 858 (N.D. Ill. 2009) ...................................................................20

*Standard Process, Inc. v. Banks*,
   554 F. Supp. 2d 866 (E.D. Wis. 2008)..................................................................39

*Ty Inc. v. Perryman*,
   306 F. 3d 509 (7th Cir. 2002) ..........................................................................43, 44

*Ty, Inc. v. Publications Intern., Ltd.*,
   292 F. 3d 512 (7th Cir. 2002) ...............................................................................47

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
   746 F. 2d 112 (2d Cir. 1984)................................................................................35

*Voelker v. Porsche Cars N. America, Inc.*,
   353 F. 3d 516 (7th Cir. 2003) ...............................................................................50

**Statutes**

815 ILCS 505/10a(e)...................................................................................................15

15 U.S.C. § 1114.................................................................................................20, 34

15 U.S.C. § 1125.................................................................................................12, 34

17 U.S.C. § 107.................................................................................................47, 48

Lanham Act...........................................................................................................32

**Other Authorities**

Commission Regulation 330/2010.......................................................................51, 52

https://europa.eu/european-union/law_en (*last visited* August 1, 2019) ..................50

## <u>INTRODUCTION</u>

As SmartBuyGlasses has steadfastly declared from the outset, this case is all about Maui Jim's improper attempt to shut down SmartBuyGlasses' <u>legal sales</u> of <u>genuine</u> Maui Jim eyewear. It is not about counterfeit goods. And it is not about contrived Lanham Act violations or supposed tortious interference. Discovery has confirmed that every single pair of Maui Jim sunglasses that SmartBuyGlasses has sold is 100% authentic and comes from or through Maui Jim's authorized retailers. Maui Jim executives, ███████████████████, actively supported SmartBuyGlasses' sales for years before Maui Jim filed its complaint here. Indeed, Maui Jim's senior-most executives have known about SmartBuyGlasses' activities for more than ten years and have admitted repeatedly through the years that SmartBuyGlasses' sales activities are entirely legal.

After years of supporting – and profiting from – SmartBuyGlasses sales, Maui Jim made a belated about-face and decided to shut those sales down to placate its authorized dealer network frustrated that SmartBuyGlasses sells below Maui Jim's recommended retail price. So Maui Jim concocted an absurd and legally indefensible interpretation of the Lanham Act, under which authentic Maui Jim sunglasses are *per se* counterfeit if sold outside Maui Jim's preferred distribution network. Once Maui Jim crafted its baseless legal theory to support its new commercial goal, Maui Jim executives instructed employees to spread the word: SmartBuyGlasses is a counterfeiter. That assertion is false and defamatory, and Maui Jim knows it. Yet Maui Jim persists, despite the serious harm that its actions are causing to SmartBuyGlasses' business and reputation.

Try as it might, Maui Jim cannot turn SmartBuyGlasses' genuine Maui Jim products into counterfeit goods. Nor can it evade well-settled law giving SmartBuyGlasses an absolute right to sell authentic Maui Jim sunglasses regardless of Maui Jim's wishes. And, Maui Jim cannot sit on

the sidelines and support SmartBuyGlasses for years and then suddenly decide to claim SmartBuyGlasses violated the law. The doctrines of laches and acquiescence prohibit such unfair and inequitable conduct.

Maui Jim's remaining claims, for copyright infringement and tortious interference, fail for similar reasons. Its copyright claim cannot stand not only because it failed to timely register many of the copyrights but also because it has failed to meet its burden of proof on infringement. Likewise, Maui Jim's tortious interference claim fails because no evidence exists that SmartBuyGlasses ever saw any of the contracts at issue before this litigation ensued, and – in any event – the primary contractual clauses at issue are unenforceable as a matter of international law.

For these reasons, all of Maui Jim's claims against SmartBuyGlasses and its defenses to SmartBuyGlasses' counterclaims for defamation and unjust enrichment are wholly without merit. Accordingly, this Court should grant summary judgment in SmartBuyGlasses' favor on all the parties' claims.

## SUMMARY OF FACTUAL BACKGROUND

## I.    BACKGROUND OF SMARTBUYGLASSES

SmartBuyGlasses is a leading online retailer of designer eyewear that is highly respected within the optical industry, selling more than 180 brands through its websites and operating physical retail outlets internationally. (SOF ¶ 1.) It was founded in 2006 by three Australians, including its co-Chief Executive Officer Doron Kalinko. (SOF ¶ 3.) SmartBuyGlasses works directly with the eyewear industry's leading players (like Luxottica, the world's largest eyewear company) and has relationships with top industry brands including, among others, Ray-Ban, Oakley, Prada, Gucci, YSL, Bvlgari, Versace, Nike, Burberry, and Michael Kors, that make up the vast majority of its total sales. (SOF ¶ 1.) SmartBuyGlasses sources products through its

trusted network of suppliers, including directly from brand manufacturers, distributors, and authorized retailers. (*Id.*)

For more than 10 years, SmartBuyGlasses has been a key pioneer in the development of online sales in the optical industry, working with manufacturers, local opticians, and top technology innovators to provide virtual frame try-on, eye-test appointments with local opticians, and smartphone prescription lens scanning, all while passing on huge savings to its customers. (SOF ¶ 2.) SmartBuyGlasses is also socially driven, working with top global NGOs, and providing over 85,000 free prescription glasses to extremely poor communities around the world. (*Id.*)

## II.   BACKGROUND OF MAUI JIM

Maui Jim designs and manufactures sunglasses. (SOF ¶ 4.) It has about a ███ market share of the ███ sunglass market and has sold its eyewear through more than ███ authorized retailers in the United States alone, including Target, Sunglass Hut, Costco, Dick's Sporting Goods, Bass Pro Shops, and REI. (*Id.*) Maui Jim has █ European distribution centers and ███ authorized retailers in Europe. (*Id.*)

## III.   SMARTBUYGLASSES' SALE OF AUTHENTIC MAUI JIM SUNGLASSES

SmartBuyGlasses prides itself on supplying authentic, genuine eyewear from leading designers, including Maui Jim, and guarantees the authenticity of all of its products. (SOF ¶¶ 5, 46, 47.) Every pair of Maui Jim sunglasses SmartBuyGlasses sells is authentic and manufactured by Maui Jim. (*Id.*)

SmartBuyGlasses sold about ███ of Maui Jim sunglasses into the United States between 2009 and 2019. (SOF ¶ 6.) More than ███ of those sunglasses were "plano" (*i.e.*, nonprescription) sunglasses. (*Id.*) For those sales, SmartBuyGlasses' customers received the original Maui Jim sunglasses in the original packaging as they came from Maui Jim's authorized

retailers. (*Id.*) The remaining ███ of sales were Maui Jim sunglasses with a third-party prescription add-on lens glazed into the Maui Jim frame. (*Id.*) For those sales, SmartBuyGlasses' customers received the original Maui Jim packaging, the original Maui Jim frames with the third-party prescription add-on lens glazed into the frame, and the original Maui Jim plano lenses in a separate envelope. (*Id.*) ████████████████████████████

████████████████████████████████████

████████████████████████ (SOF ¶ 7.)

## IV. MAUI JIM HAS KNOWN ABOUT AND SUPPORTED SMARTBUYGLASSES' SALES OF AUTHENTIC MAUI JIM PRODUCTS FOR YEARS

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████ ████████████████

████████████████████████████████

████████████████████████████████

███

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

---

[1] All of Maui Jim's sunglasses, whether released in the United States or Europe, are identical. (SOF ¶ 8.)

███████████████████████████████████████████████████

██████

    ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

## V.  MAUI JIM KNOWS THAT SMARTBUYGLASSES SELLS AUTHENTIC MAUI JIM SUNGLASSES

Maui Jim knows that the Maui Jim sunglasses SmartBuyGlasses sells are authentic because, among other things, Maui Jim made numerous test purchases through SmartBuyGlasses' website over many years ████████████████████████████ ███████████████. (SOF ¶¶ 11, 14.) Critically, Maui Jim has no evidence that SmartBuyGlasses procured the Maui Jim sunglasses it sells on its website through any means other than Maui Jim's own authorized retailers. (SOF ¶ 11.) ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.*) ████████████████████████████████████████████████████ ██████████████████████████ (SOF ¶ 11.) Maui Jim maintains a set of

---

[2] Moreover, SmartBuyGlasses' suppliers have submitted letters attesting to the authenticity of the Maui Jim branded products they supplied to SmartBuyGlasses. (SOF ¶ 19.)

procedures to determine whether a pair of Maui Jim sunglasses is authentic and ███████

██████████████████████████████████████████████████████████████████

███████. (SOF ¶ 14.) ███████████████████████████████████████████

█████████████████████████. (*Id.*) Yet, Maui Jim testified that ██████████

██████████████████████████████████████████. (SOF ¶ 12.) It

did, however, admit that it was unaware of any pair of Maui Jim sunglasses that

SmartBuyGlasses sold to a customer that was not originally sourced from Maui Jim. (SOF ¶ 7.)

Indeed, Maui Jim's executives over the years repeatedly referred to SmartBuyGlasses as a "gray

market" seller. (SOF ¶¶ 74, 77.)

Maui Jim admitted during its depositions that:

- 

- None of the Maui Jim frames received from SmartBuyGlasses were fake. (SOF ¶ 15.)

- All the frames and lenses received in test purchases of nonprescription glasses were 100% genuine. (*Id.*)

- All of the plano sunglasses Maui Jim's European operation received from test orders from SmartBuyGlasses were authentic with genuine Maui Jim frames and lenses (SOF ¶ 16.)

- Maui Jim does not contend that SmartBuyGlasses was selling stolen or damaged merchandise. (SOF ¶ 12.)

- Maui Jim's strategy for these test purchases was to identify and shut down the Maui Jim authorized retailers who were selling authentic product to SmartBuyGlasses. (*Id.*)

- All test orders Maui Jim made that included the SmartBuyGlasses prescription add-on lenses used third-party lenses in authentic Maui Jim frames. (SOF ¶ 17, 18.)

- ███████████████████████████████████████████████████
███████████████████████████

- ███████████████████████████████████████████████████
███████████████████████████

Beyond test orders, Maui Jim admits that simply because a company is not on Maui Jim's authorized retailer list does not mean that a pair of Maui Jim sunglasses purchased from that company is not authentic: ███████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████

## VI.  MAUI JIM KNOWS SMARTBUYGLASSES' SALES OF MAUI JIM SUNGLASSES ARE LEGAL

Senior Maui Jim executives have repeatedly admitted over the years that SmartBuyGlasses' sale of Maui Jim sunglasses is legal. ███████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



Critically, no Maui Jim executive ever contradicted Mr. Penzek's opinion, despite his repeated insistence over the course of many years that ███████████████████. (SOF ¶ 21-22.) To the contrary, other senior Maui Jim employees echoed Mr. Penzek's position. █ Moreover, Maui Jim's representatives admit that ███████████████.

(*Id.*)

## VII. MAUI JIM KNEW ABOUT SMARTBUYGLASSES' SALE OF MAUI JIM SUNGLASSES SINCE AT LEAST 2008 AND TOOK NO ACTION

Maui Jim knew that SmartBuyGlasses was selling Maui Jim sunglasses online since at least 2008 but took no legal action against SmartBuyGlasses until the filing of the Complaint in October 2016. (SOF ¶ 24.) In fact, Maui Jim's most senior executives – including its president – have known since at least 2011 that SmartBuyGlasses was selling Maui Jim sunglasses online. (SOF ¶ 25.) And Maui Jim senior executives have known since at least August of 2011 of SmartBuyGlasses' practice of glazing third-party prescription lenses into authentic Maui Jim plano frames. (*Id.*)

Indeed, on September 1, 2011, Michael Dalton – Maui Jim's President and Chief Operating Officer – received an internal email concerning test purchases of Maui Jim eyewear

from SmartBuyGlasses 

## VIII.   MAUI JIM FILED THIS LAWSUIT IN OCTOBER 2016

In 2016, after years of supporting SmartBuyGlasses' sales of Maui Jim sunglasses ███████████████████████████████, Maui Jim's headquarters in the United States sought to shut SmartBuyGlasses' sales down because certain Maui Jim authorized retailers complained that SmartBuyGlasses sold Maui Jim sunglasses below Maui Jim's recommended retail price. (SOF ¶ 10.) On October 17, 2016, Maui Jim filed this lawsuit alleging violations of the Lanham Act for selling counterfeit goods and copyright infringement. (ECF No. 1.)

Maui Jim filed its Second Amended Complaint on September 17, 2018, which included claims under the Lanham Act, a claim for violation of the Uniform Deceptive Trade Practices Act, a claim for tortious interference, and a claim for copyright infringement. (ECF No. 257.) On October 1, 2018, SmartBuyGlasses filed its Answer, Affirmative Defenses, and Second Amended Counterclaim to Plaintiff's Second Amended Complaint.  (ECF No. 259.)  Among other causes of action, SmartBuyGlasses asserted counterclaims for defamation and unjust enrichment. (*Id.*)

## ARGUMENT

SmartBuyGlasses is entitled to summary judgment on both Maui Jim's claims and SmartBuyGlasses' counterclaims. All of Maui Jim's claims are fatally flawed both legally and factually. And, undisputed evidence establishes both SmartBuyGlasses' defamation counterclaim and its counterclaim for unjust enrichment.

Maui Jim's Lanham Act claims fail for six independent reasons. First, the doctrines of laches and acquiescence bar Maui Jim's Lanham Act claims because Maui Jim knew about SmartBuyGlasses' sales for more than eight years, actively supported them since 2011, and yet did nothing to enforce its alleged rights until October 2016. Second, even if laches and acquiescence were not a bar to Maui Jim's Lanham Act claims, Maui Jim cannot maintain its counterfeiting claim under Section 32(1) of the Lanham Act because it has no evidence whatsoever that SmartBuyGlasses sells fake or otherwise non-genuine goods. Third, the first sale doctrine independently bars all of Maui Jim's Lanham Act claims because SmartBuyGlasses has the absolute right to resell authentic Maui Jim sunglasses. Fourth, Maui Jim's claims under Sections 32(1) and 43(a) also fail as a matter of law because Maui Jim cannot establish consumer confusion. Fifth, Maui Jim's claims under Section 43(a) additionally fail because Maui Jim cannot establish any false advertising. Sixth, Maui Jim's dilution claim fails because SmartBuyGlasses' activities neither tarnish nor blur Maui Jim's marks. As a result, SmartBuyGlasses is entitled to summary judgment all of Maui Jim's Lanham Act claims.

SmartBuyGlasses is also entitled to summary judgment on Maui Jim's claims under the Uniform Deceptive Trade Practices Act ("UDTPA") for the same reasons as with its Lanham Act claims. Under well-settled law, UPTPA claims rise and fall with the related Lanham Act claims.

SmartBuyGlasses is entitled to summary judgment on Maui Jim's copyright claims because (1) Maui Jim failed to register some of the purported copyrighted images within three months of creation, as the law requires; (2) Maui Jim has not met its burden of proof to establish that SmartBuyGlasses used Maui Jim's copyrighted work; and (3) the fair use doctrine protects SmartBuyGlasses.

SmartBuyGlasses is entitled to summary judgment on Maui Jim's tortious interference claim because Maui Jim failed to establish any of the requisite elements, including that it cannot show that SmartBuyGlasses knew the terms of the agreements that it allegedly induced Maui Jim's retailers to breach. And, if Maui Jim is seeking to enforce its anti-diversion agreements with respect to ▮▮▮▮▮▮, those agreements are illegal and unenforceable under European law.

Finally, SmartBuyGlasses is entitled to summary judgment on its counterclaims for defamation and unjust enrichment. Undisputed evidence shows that senior Maui Jim officials instructed its customer service representatives to inform customers that SmartBuyGlasses was selling stolen or counterfeit sunglasses despite knowing those allegations were false and would severely damage SmartBuyGlasses' business. Maui Jim's customer service representatives followed those instructions, and their statements are defamatory as a matter of law. Moreover, by filing this lawsuit, Maui Jim has attempted to use trademark and copyright law to shut down SmartBuyGlasses' Maui Jim sales. But SmartBuyGlasses obtained its products from Maui Jim's own authorized retailers, and Maui Jim profited from every single Maui Jim sale that SmartBuyGlasses has made. Under the circumstances, it would be fundamentally unjust to allow Maui Jim to retain the profits it made from SmartBuyGlasses' sales while seeking to put a halt to those sales. SmartBuyGlasses is thus entitled to summary judgment on its unjust enrichment claim.

This Court should therefore grant SmartBuyGlasses' motion for summary judgment on both Maui Jim's claims and SmartBuyGlasses' counterclaims.

## I. SMARTBUYGLASSES IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF MAUI JIM'S LANHAM ACT CLAIMS

### A. The Doctrine Of Laches Bars Maui Jim's Trademark Claims

As a threshold matter, the doctrine of laches bars all of Maui Jim's Lanham Act claims because Maui Jim sat on its alleged legal rights for years. It is undisputed both that Maui Jim knew that SmartBuyGlasses was selling authentic Maui Jim sunglasses no later than 2008 and that it frequently discussed those sales activities internally. Despite that knowledge, Maui Jim consciously and unreasonably chose to wait eight years before bringing suit.

"The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg. v. Nike, Inc.*, 301 F. 3d 789, 792 (7th Cir. 2002) (affirming summary judgment for defendant based on application of the doctrine of laches to trademark claims); *see also Hot Wax, Inc. v. Turtle Wax, Inc*., 191 F. 3d 813, 822 (7th Cir. 1999) (affirming summary judgment based on laches, holding that "[t]he Lanham Act specifically contemplates that both injunctive relief and awards of damages for violations of 15 U.S.C. § 1125 shall be subject to the principles of equity, which include the doctrine of laches."). Laches applies when: (1) the plaintiff had knowledge of the defendant's alleged infringement; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant would suffer prejudice if the plaintiff were allowed to belatedly assert the claim. *See Chattanoga*, 301 F. 3d at 792-93 Each element is satisfied here.

#### 1. Maui Jim knew SmartBuyGlasses was selling Maui Jim sunglasses no later than 2008.

Maui Jim's inaction satisfies the first element of laches because it is undisputed that Maui Jim knew at least eight years before filing this lawsuit – *i.e.*, no later than 2008 – that SmartBuyGlasses was selling Maui Jim products without an authorized retailer agreement. In September 2008, a Maui Jim representative emailed SmartBuyGlasses, stating █████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ (SOF ¶ 22.) That letter began the clock for laches

purposes. *See Illinois Tamale v. El-Greg, Inc.*, No. 16 C 5387, 2018 WL 6590558, at *1 (N.D. Ill.

Dec. 14, 2018) (holding that defendant's sending of cease-and-desist letter established

knowledge for purposes of laches doctrine).

Maui Jim's knowledge of SmartBuyGlasses' sales activities continued after 2008. No

later than August 2011, Maui Jim initiated test purchases in an effort to ████████████████

████████████████████████████████████████████████████. (SOF ¶¶ 25, 81.)

From 2011 to 2016, Maui Jim conducted numerous test purchases from SmartBuyGlasses. (SOF

¶ 81.) Each of those test purchases confirmed that SmartBuyGlasses was selling authentic Maui

Jim sunglasses. (SOF ¶¶ 12, 15-16, 25, 77, 84.) While Maui Jim shut down certain authorized

retailers in response to those test purchases, it did not file suit or in fact take any action against

SmartBuyGlasses.

Maui Jim also admitted that it had knowledge since 2011 that from time-to-time

SmartBuyGlasses glazed an add-on, third-party lens into an authentic Maui Jim frame. (SOF ¶¶

16, 24.) Despite this knowledge, Maui Jim again did nothing.

Senior Maui Jim employees also discussed SmartBuyGlasses' conduct internally during

this period but declined to take any meaningful action to assert Maui Jim's purported rights. On

September 20, 2011, for example, Harry Rhodes, Maui Jim's Vice President for Sales, received

an email from David Menning, a senior SmartBuyGlasses officer, about ████████████████

████████████████████████████████████████████████████

████████████████. (SOF ¶ 26.) Mr. Rhodes forwarded the email to ████████████████

████████████████████████████ and told Mr.

██████████████████████████████████████████████████. ██████

██████████████████████████████████████████ (*Id.*) Maui Jim did

not take any legal action in response to Mr. Rhodes' or Mr. Menning's emails. ████████

██████████████████████████████████

    Maui Jim's senior executives continued to display full knowledge of SmartBuyGlasses'

sales activities in the ensuing years. I████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

      █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

No question exists therefore that Maui Jim knew about SmartBuyGlasses' alleged infringement since at least 2008.

### 2. Maui Jim unreasonably delayed bringing suit until October 2016.

Despite its knowledge and frequent internal discussions, Maui Jim waited until October 17, 2016, *eight years* after it first learned of SmartBuyGlasses' activities, to file this lawsuit. That delay was unreasonable.

In determining whether a plaintiff's delay is unreasonable and supports a laches defense, courts look to the most analogous state statute of limitations. *See Chattanoga Mfg.*, 301 F. 3d at 794. In trademark actions, the analogous statute of limitations is the three-year statute of limitations under the Illinois Consumer Fraud and Deceptive Business Practices Act. *See Illinois Tamale*, 2018 WL 6590558, at *2; 815 ILCS 505/10a(e). If the plaintiff fails to bring its claim within the three-year window, a presumption of laches applies. *See Chattanoga Mfg.*, 301 F. 3d at 793. Maui Jim's eight-year delay means that its suit falls well outside this window, and this Court should therefore apply the doctrine of laches to Maui Jim's claims.

### 3. Maui Jim's unreasonable delay prejudiced SmartBuyGlasses.

Finally, Maui Jim's failure to assert its claims timely caused severe prejudice to SmartBuyGlasses. The Seventh Circuit has recognized that "[a] delay prejudices a defendant when the assertion of a claim available for some time would be inequitable in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Chattanoga Mfg.*, 301 F. 3d at 795. Significantly, "[p]rejudice may be shown if the plaintiff's unexcused failure to exercise its rights caused the defendant to rely to its detriment and build up a valuable business . . . ." *Id.* The longer the plaintiff delays in bringing its claim, the greater the likelihood of prejudice. *See Id.*

It is undisputed that SmartBuyGlasses invested substantial time and resources in building up its Maui Jim business during the eight years that Maui Jim was sitting idly by. For example, SmartBuyGlasses spent approximately ███████████████ on sales and marketing relating to Maui Jim products, expenditures that it could have avoided if Maui Jim had sued when it first learned of SmartBuyGlasses' activities in 2008. (SOF ¶ 45.) SmartBuyGlasses also invested significant resources, time and effort in building up its sales, marketing and operations ██████████████████████████████████████████████████ based on its understanding that Maui Jim did not object to SmartBuyGlasses' sales of Maui Jim sunglasses. (SOF ¶ 112.)

The Seventh Circuit has held that such expenses constitute undue prejudice for laches purposes. *See Chattanoga Mfg.*, 301 F. 3d at 795 (granting summary judgment on behalf of defendant and holding defendant suffered prejudice when it spent millions of dollars in building up business as a result of plaintiff's inaction); *Hot Wax*, 191 F. 3d at 824 (granting summary judgment on behalf of defendant and finding defendant suffered prejudices for laches purposes where it "could have invested its time and money in other areas" had plaintiff asserted claims promptly).

Because the undisputed evidence demonstrates that Maui Jim's conduct satisfies all the elements of laches, this Court should grant summary judgment to SmartBuyGlasses on all of Maui Jim's Lanham Act claims.

### B. Maui Jim Acquiesced In SmartBuyGlasses' Use Of Its Marks

In addition to laches, the doctrine of acquiescence bars all of Maui Jim's Lanham Act claims because Maui Jim actively supported SmartBuyGlasses' sales from 2011 through the filing of its complaint and therefore acquiesced in SmartBuyGlasses' use of Maui Jim's marks.

Acquiescence is "an equitable defense to trademark infringement that applies where the trademark owner, by affirmative word or deed, conveys its implied consent to another." *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 512-13 (N.D. Ill. 2011) (granting summary judgment on behalf of defendant on plaintiff's trademark infringement and dilution claims based on the doctrine of acquiescence). Consent "is implied by conduct on the plaintiff's part that amounts to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." *Id.* at 513.

18



As noted above, Maui Jim's conduct also caused significant prejudice to SmartBuyGlasses because SmartBuyGlasses invested substantial time and money in building up its Maui Jim business based on its understanding that Maui Jim approved of SmartBuyGlasses' sales.

As a result, Maui Jim acquiesced in SmartBuyGlasses' Maui Jim sales as a matter of law and cannot now assert trademark claims based on those sales. This Court should therefore grant

summary judgment on Maui Jim's Lanham Act claims for the independent reason that Maui Jim acquiesced to SmartBuyGlasses' conduct.

### C. SmartBuyGlasses Is Entitled To Summary Judgment On Maui Jim's Section 32(1) Claim Because SmartBuyGlasses' Maui Jim Sunglasses Are Not Counterfeit

Even if the doctrines of laches or acquiescence do not bar Maui Jim's Lanham Act claims, this Court should grant summary judgment against Maui Jim on the merits of the claims. Despite admitting often that SmartBuyGlasses sells authentic Maui Jim Sunglasses (and ironically filing a tortious interference claim claiming that SmartBuyGlasses procured authentic Maui Jim eyewear from Maui Jim's authorized retailers), Maui Jim has asserted a Section 32(1) claim alleging that those authentic sunglasses are "counterfeit" for purposes of the Lanham Act. Maui Jim's Section 32(1) claim borders on absurdity.

Under Section 32(1) of the Lanham Act, a party may not "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" in connection with the sale, offering for sale, distribution, or advertising of goods or services if such use "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. §1114(1)(a). Courts in this district have recognized that "[c]ounterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (citation omitted). "As a matter of doctrine, a trademark owner attempting to use § 32 to prevent an infringement must establish that the products sold by the alleged infringer are not 'genuine.'" *Iberia Foods Corp. v. Romeo*, 150 F. 3d 298, 302 (3d Cir. 1998). Maui Jim cannot come close to meeting this burden – indeed, the undisputed facts demonstrate the opposite.

1. **No dispute exists that SmartBuyGlasses' sells authentic plano Maui Jim sunglasses.**

Far from being able prove that SmartBuyGlasses sells reproductions, the undisputed evidence demonstrates that the Maui Jim plano (*i.e,* nonprescription) sunglasses SmartBuyGlasses sold were 100% original with the original packaging, frames, and lenses. (SOF ¶ 6.) These sunglasses accounted for ████ ████ of SmartBuyGlasses' sales of Maui Jim eyewear. (*Id*.) And, SmartBuyGlasses' witnesses testified extensively about how they procure and sell authentic Maui Jim plano sunglasses. (SOF ¶¶ 5, 6, 18, 27, 29, 30, 34, 38-41.) ████ ████ also offered sworn testimony that every pair of Maui Jim sunglasses that ████ ████ distributed to SmartBuyGlasses (1) was manufactured by Maui Jim; (2) was in its original condition; (3) was in its original packaging; and (4) contained original Maui Jim tags and product literature. (SOF ¶ 30.)

Moreover, as SmartBuyGlasses' expert on retail and online sales, designer and luxury goods, and marketing attests, SmartBuyGlasses' Maui Jim sunglasses are not counterfeit according to accepted industry definitions. In the context of retail and online sales, an authentic or genuine product is a product manufactured by the designer to whom it is attributed. (SOF ¶ 76.) By contrast, a counterfeit product in the context of retail and online sales is a replica manufactured by a third party that is designed to imitate the product it attempts to copy. (*Id*.) Because SmartBuyGlasses sells authentic Maui Jim sunglasses obtained from or through authorized Maui Jim retailers, its products are genuine, not counterfeit.

In response, Maui Jim cannot offer *any* admissible evidence suggesting that SmartBuyGlasses has ever sold a *single pair* of counterfeit Maui Jim plano sunglasses. (SOF ¶ 7.) Maui Jim cannot produce any evidence showing, for example, that SmartBuyGlasses ever sold plano frames with different markings or logos than "authentic" Maui Jim frames, used

improper source identifiers, or sold products with any irregularities. Rather, Maui Jim admits that it never ran any tests to find out whether SmartBuyGlasses' Maui Jim products were authentic. (SOF ¶¶ 7, 11) ███████████████████████████████████████

███████████████████████████████████████

███

Maui Jim did not need to run tests as it has admitted that it knows all test orders yielded product sourced from and manufactured by Maui Jim. (SOF ¶ 7.) Maui Jim representatives (including the head of sales for Europe) testified ███████████████████████

███████████████████████████████████████

███. (SOF ¶¶ 7, 15.) Maui Jim's numerous test purchases from SmartBuyGlasses over many years have not yielded a single pair of Maui Jim sunglasses manufactured by anyone other than Maui Jim. (SOF ¶¶ 7, 19.) ████████████████████████████

███████████████████████████████████████. And, Maui Jim has not registered for gray market protection with U.S. Customs and Border Protection, presumably because it cannot establish any material differences between its products and those sold by SmartBuyGlasses or other dealers in the parallel market. (SOF ¶ 80.)

Moreover, Maui Jim's internal communications bolster this undisputed evidence of authenticity. ██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████ And Mr. Penzek admitted many times that ████████████████████████

███████████████████████████████████████

███████████████. (SOF ¶¶ 19-20.)

In the absence of any evidence that SmartBuyGlasses sells fake Maui Jim sunglasses, Maui Jim has concocted an unsupportable definition of "counterfeit" for purposes of this litigation, under which any Maui Jim sunglasses sold through unofficial channels are *per se* counterfeit. Maui Jim's witnesses have been remarkably frank about this position. ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ But that is not the law.

Goods sold outside authorized distribution channels – through the so-called parallel distribution channel – are often called "gray market" goods. (SOF ¶¶ 75, 83.) Gray market goods "are not counterfeit goods. They are genuine goods that bear a legitimately registered trademark. They have 'leaked' out of the authorized channel of distribution and are offered for sale through an alternate channel." (*Id.*)

The parallel or gray market is a generally accepted, widespread and encouraged practice in the United States and globally. (SOF ¶ 78.) It encompasses many consumer goods, including clothing and accessories such as watches or glasses. (*Id.*) If gray market sales were associated with counterfeit product, then companies like Amazon, Costco, Walmart, Sears, Ebay, and other major retailers may not exist or would operate in entirely different ways. (*Id.*) A 1988 Harvard Business School review estimated that $7 to $10 billion dollars in gray market products are sold in the U.S. each year. (*Id.*) That number is significantly higher today. (*Id.*)

In the optical industry, retailers, distributors, and brand owners consider gray market goods to be authentic and often support such sales to sell more products in the marketplace.

(SOF ¶ 79.) In fact, the gray market is a legal and integral part of the global consumer products industry in general not only to increase total sales but also to help even inventory levels of products across markets and turn stock of lower-selling products or products approaching the end-of-their-life cycles. (*Id.*) Brand owners, distributors, manufacturers, and retailers actively and routinely engage in this practice around the world. (*Id.*) Businesses sometimes attempt to limit gray market sales and at other times try to maximize it, depending on their overall business goals in driving revenue and economies of scale. (*Id.*)

Even Maui Jim executives in candid moments in their testimony admitted that their concocted definition of counterfeit (that would include all gray market goods) is not reality. Maui Jim representatives have repeatedly admitted over many years that SmartBuyGlasses is a gray market seller. (SOF ¶ 77.) ██████████████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████████████ ████████████████████████████████ █████████████████████████ Maui Jim communications with customers abound with admissions like:

Maui Jim's own actions in making many test orders show the fallacy of its definition of "counterfeit." ████████████████████████████████████████████

████████████████████████████████████████████████████

████████ (SOF ¶ 11.) That said, if gray market goods were inherently counterfeit (as Maui Jim now attempts to claim), such test purchases would have been gratuitous as Maui Jim claims SmartBuyGlasses was never an authorized retailer.

Courts recognize this distinction between counterfeit and gray market goods and have held that "[i]f there are no material differences between the products sold, then the products offered by the alleged infringer are 'genuine' and an infringement action under § 32 of the Lanham Act must fail." *Iberia Foods*, 150 F.3d at 303. As stated above, if this Court were to accept Maui Jim's position, it would invalidate all manner of common ways to sell products, from eBay to Amazon to used car dealerships as well as retailers like Walmart, Costco, and Sears. Under settled law, SmartBuyGlasses' sales of Maui Jim's plano sunglasses are therefore not "counterfeit" and are not proscribed by Section 32(1). Maui Jim inadvertently admitted as much when it conceded that SmartBuyGlasses (as discussed below) glazes third-party lenses into *authentic* Maui Jim frames – plano frames that Maui Jim claims SmartBuyGlasses acquired through the gray market. (SOF ¶ 6.) This Court thus should grant SmartBuyGlasses summary judgment on Maui Jim's Section 32(1) claim.

### 2. SmartBuyGlasses' sale of third-party add-on prescription lenses with authentic Maui Jim sunglasses does not somehow transform the authentic glasses into counterfeit ones.

For a period of time, SmartBuyGlasses permitted customers to purchase Maui Jim plano sunglasses with an add-on of a third-party prescription lens, which SmartBuyGlasses glazed into the authentic Maui Jim frame for the customer. (SOF ¶ 6.) Significantly, ██ ██ ██ ██ SmartBuyGlasses' sales (██ ██ ██ of sunglasses – including Maui Jim's test purchases)

involved this add-on option. (*Id.*) Customers who chose the prescription lens customization received the original plano lenses in the box along with their customized sunglasses. (*Id.*; SOF ¶ 59.) It is undisputed that SmartBuyGlasses expressly disclosed to customers at the time of purchase that they were selecting third-party lenses from outside manufacturers, including Essilor and SmartBuyGlasses' house brand. (SOF ¶ 59.)

Adding a customer-requested customization to the Maui Jim plano sunglasses does not transform them into counterfeit goods.



(SOF ¶ 65.)

The law concurs with ████████ understanding of the optical industry. *See, e.g.,* *Bulova Watch Co. v. Allerton Co.*, 328 F. 2d 20, 23-24 (7th Cir. 1964) (holding that use of a trademark to describe a customized product is appropriate as long as there is "a complete and full disclosure.") In *Bulova Watch*, the Seventh Circuit held that the product "must be [described] in such a way that the public is not deceived. . . . [It is] essential that the public be informed not only of what the defendants actually do but also that it is done independently of [the plaintiff], with which defendants have no connection." *Id.*; *see also Rolex Watch USA, Inc. v. Meece*, 158

F.3d 816, 825 (5th Cir. 1998) (requiring full disclosure of any product modifications). And that is exactly what SmartBuyGlasses did here.

SmartBuyGlasses' website expressly advises customers that it has no affiliation with the brands it sells unless stated otherwise:



(SOF ¶ 48.) On every Maui Jim product page, SmartBuyGlasses reiterates to potential customers that it is not affiliated with nor an official reseller for Maui Jim:



(SOF ¶ 51.) Specifically with regard to prescriptions, SmartBuyGlasses emphasizes that a customer may purchase the Maui Jim glasses with "a wide range of prescription lenses from premium lens producer Essilor as well as our [*i.e.*, SmartBuyGlasses'] premium quality house brand. . . . Please refer to the other Premium Lenses information to learn more about prescription lenses at SmartBuyGlasses USA." (SOF ¶ 55.)



In its prescription lens guide, SmartBuyGlasses lays out the various options for prescription lenses:



(SOF ¶ 56.) Thus, SmartBuyGlasses informs consumers that they can add in either SmartBuyGlasses' house brand lens or one from Essilor. Nowhere does SmartBuyGlasses state that it is using a Maui Jim lens or any Maui Jim lens technology.

Moreover, customers receive from SmartBuyGlasses clear disclosure that the prescription add-on lenses are SmartBuyGlasses' own lenses. Specifically, customers receive the Maui Jim

sunglasses with the third-party prescription lenses glazed into the frames along with all the original Maui Jim packaging, the original accoutrement, and the original Maui Jim plano lenses in a separate envelope along with a lens card explaining the SmartBuyGlasses or Essilor prescription lenses. (SOF ¶ 59.) The lens card and envelope look as follows:



 

(*Id.*)

In the designer goods industry, consumers often customize their purchases. (SOF ¶ 68.) For example, in the watch context, this customization can take the form of personal engravings or added product features, such as a unique watch band. (*Id.*) This customization does not render an authentic good inauthentic or counterfeit. (*Id.*) Here, the prescription lens add-on is merely an option that consumers could exercise. (*Id.*) The inclusion of a third-party add-on lens does not render the Maui Jim product consumers purchased counterfeit where, as here, the original plano lenses are included and SmartBuyGlasses clearly disclosed the third-party nature of the prescription lenses. (*Id.*) This is no different than buying a new car from a dealer and requesting custom wheels to be added. (*Id.*) That does not mean the car itself is counterfeit or fake. (*Id.*)

Maui Jim witnesses concede that ███████████████████████████ ███████████████. (SOF ¶ 65.) Indeed, ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ Notably, while Maui Jim now claims that such customizations render its sunglasses counterfeit, its authorized retailer agreement did not even ████████████████████████████████████████████████████████ ███████████████. (SOF ¶ 73.) Nor did the agreement ██████████████████████ ████████████████████████████████████████████. (*Id.*) Maui Jim's representatives have stated tha███████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████. (SOF ¶ 69.) One of Maui Jim's authorized retailers, Zappos.com, even directs customers on its website to non-Maui Jim prescription lens providers. (*Id.*)

And, Maui Jim admits that SmartBuyGlasses ████████████████████████ ████████████████████████████████████████████████████████ (SOF ¶¶ 16, 67.) If that makes SmartBuyGlasses a counterfeiter, than so are ███████████ Maui Jim's authorized retailers with which it still does business – and Maui Jim is clear that it will not do business with counterfeiters. (SOF ¶¶ 71-72.)

---

[3] Hoya is a Japan-based manufacture of high-quality prescription lenses. (SOF ¶ 69, fn 2.)

Crucially, Maui Jim's own witnesses also concede that third-party lens customizations do *not* render Maui Jim sunglasses *per se* counterfeit. Maui Jim witnesses acknowledge, for example, that a customer may ██████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████. (SOF ¶ 22.) The *only* difference between that situation and SmartBuyGlasses' sales process is that SmartBuyGlasses offers customers the customization option at the time of purchase, rather than requiring them to arrange the customization at a later time on their own. SmartBuyGlasses' prescription lens add-ons thus do not render the sunglasses counterfeit, and SmartBuyGlasses is entitled to summary judgment on Maui Jim's Section 32(1) claim.

### D. SmartBuyGlasses Has An Absolute Right To Sell Its Authentic Maui Jim Sunglasses Under The First Sale Doctrine

The first sale doctrine dictates that SmartBuyGlasses has an absolute right to sell its authentic Maui Jim products – with or without Maui Jim's authorization – without facing liability for trademark infringement. *See, e.g.*, *Sebastian Intern., Inc. v. Longs Drug Stores*, 53 F. 3d 1073, 1074 (9th Cir. 1995) (reversing district court's preliminary injunction because first sale doctrine permitted defendant's sales). It is therefore an independent basis to grant SmartBuyGlasses summary judgment on all of Maui Jim's Lanham Act counts.

Under the first sale doctrine, "[r]esale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Id*. at 1074. The logic behind the first sale doctrine is that, "[w]hen a retailer . . . merely resells a genuine, unaltered good under the trademark of the producer, the use of the producer's trademark by the reseller will not deceive or confuse the public as to the nature, qualities, and origin of the good." *Hart v. Amazon.com, Inc*., 191 F. Supp. 3d 809, 818 (N.D. Ill. 2016); *see also McCoy v.*

*Mitsuboshi Cutlery, Inc.*, 67 F. 3d 917, 923-24 (Fed. Cir. 1995) (holding that "[i]t is a tautology that a consumer purchasing genuine goods receives exactly what the consumer expects to receive: genuine goods. The consumer is not confused or deceived about the source or quality of the product."). The first sale doctrine is the mechanism by which e-commerce giants like Amazon and eBay, as well as brick-and-mortar retailers like Costco, Sears, and Walmart resell goods at below-market prices that benefit their customers.

Notably, the first sale doctrine does not depend at all on the source of the goods at issue or whether the defendant had authorization to sell those goods. *See Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*, 758 F. Supp. 2d 596, 603 (N.D. Ill. 2010) (holding that "[m]ere unauthorized sale of a trademark item does not result in a Lanham Act violation"). Indeed, Courts both within and outside the Seventh Circuit recognize a defendant's right to sell so-called gray market goods under the first sale doctrine. For example, in *Longs Drug Stores*, 53 F. 3d at 1074, the plaintiff alleged that Longs Drug Stores violated the Lanham Act by obtaining the plaintiff's products from a distributor and placing them on its shelves. The *Longs Drug Stores* court held that the first sale doctrine protected Longs Drug Stores, as "[n]othing in the record suggests that Longs did anything more than stock and resell genuine Sebastian products lawfully acquired on the open market under the true Sebastian trademark — the precise conduct excluded from the Lanham Act by the 'first sale' rule." *Id*. at 1076.

Similarly, in *Mitsuboshi Cutlery*, 67 F. 3d at 924, the Federal Circuit rejected the plaintiff's argument that Mitsuboshi violated the Lanham Act by reselling the plaintiff's knives without its approval. As the *Mitsuboshi Cutlery* court held, "the sale of genuine goods, even if unauthorized, cannot cause confusion and consequently cannot constitute trademark infringement or unfair competition." *Id*.; *see also Hart*, 191 F. Supp. 3d at 818 (holding that

"[p]laintiff does not plausibly allege that the books sold through Amazon were anything other than authentic original copies protected under the first-sale doctrine."); *Quill Corp. v. NADA Scientific Ltd.*, No. 97 C 7461, 1998 WL 295502, at *2 (N.D. Ill. May 21, 1998) (finding that the first sale doctrine protected defendant's right to resell "genuine, unchanged Quill products").

The same applies here. As discussed above, it is undisputed that SmartBuyGlasses obtains authentic Maui Jim sunglasses manufactured by Maui Jim from or through authorized Maui Jim retailers. (SOF ¶¶ 5, 6, 18, 27, 29, 30, 34, 38-41.) It is also undisputed that SmartBuyGlasses does not physically alter plano sunglasses in any way prior to sale. (SOF ¶ 6.) It is further undisputed that, for the prescription add-on, customers purchase authentic, unaltered Maui Jim plano sunglasses, and then voluntarily select the customization at the time of purchase. (SOF ¶ 6, 15, 16, 17, 24, 54-57.) Thus, like the defendant in *Longs Drug Stores*, SmartBuyGlasses is merely "stock[ing] and resell[ing] genuine . . . products lawfully acquired under the open market" under the true Maui Jim trademark.

Not surprisingly, Senior Maui Jim executives have admitted in internal communications that ████████████████████████████████████████████ (SOF ¶ 19.)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

Nor is it relevant under the first sale doctrine that some consumers could conceivably be confused as to SmartBuyGlasses' relationship with Maui Jim. As the *Longs Drug Stores* court held:

> The "first sale" rule is not rendered inapplicable merely because consumers erroneously believe the reseller is affiliated with or authorized by the producer . . . When a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the statute.

*Longs Drug Stores*, 53 F. 3d at 1076.

The first sale doctrine thus protects SmartBuyGlasses' sales of Maui Jim sunglasses, and SmartBuyGlasses is entitled to summary judgment on Maui Jim's Lanham Act claims on that basis alone.

### E. Summary Judgment Is Warranted Because Maui Jim Cannot Establish That Consumers Are Likely To Be Confused By SmartBuyGlasses' Use Of Maui Jim's Marks

Even if SmartBuyGlasses did not have an absolute right to sell Maui Jim sunglasses under the first sale doctrine, it would still be entitled to summary judgment because Maui Jim cannot demonstrate that consumers are likely to be confused by SmartBuyGlasses' use of Maui Jim's marks.

The central issue under both Section 32(1) and Section 43(a) is whether a defendant's use of the plaintiff's marks is likely to cause confusion among consumers. *See Smith Fiberglass Products, Inc. v. Ameron, Inc*., 7 F. 3d 1327, 1329 (7th Cir. 1993); 15 U.S.C. § 1114(1) (providing that a party may not use any counterfeit, copy, or colorable imitation of a registered mark if such use "is likely to cause confusion"); 15 U.S.C. § 1125(a) (providing that a party may not use a term, name, symbol, or device, or any false designation or origin, false or misleading description or representation of fact that is "likely to cause confusion"). The party asserting

infringement bears the burden of proving confusion. *See Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F. 3d 1041, 1043 (7th Cir. 2000).

Maui Jim cannot meet this burden. To begin with, Maui Jim's purported consumer confusion survey is fundamentally flawed, and this Court should exclude or disregard it under Rules 403 and 702 of the Federal Rules of Evidence. And, without its fatally defective survey, Maui Jim has no material evidence to establish that consumers are likely to be confused by SmartBuyGlasses' use of Maui Jim's marks.

> **1.    This court should exclude or give no weight to the survey and testimony of Maui Jim's confusion expert.**

To support its claims of confusion, Maui Jim has produced a survey conducted by its expert, Brian M. Sowers. As detailed in SmartBuyGlasses' Motion to Exclude Testimony of Brian M. Sowers, filed contemporaneously with this motion, Mr. Sowers' survey is fatally flawed, and this Court should exclude it and any related testimony under Rules 403 and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Even if this Court were to decline to exclude the survey in its entirety, it should give the survey no weight in ruling on the parties' motions for summary judgment. "In some cases . . . serious flaws in a survey will make any reliance on that survey unreasonable." *See Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F. 3d 477, 488 (5th Cir. 2004). "Otherwise, any survey, no matter how tendentious, would force the parties to trial." *Id*. Thus, a survey can be "so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion." *Universal City Studios, Inc. v. Nintendo Co, Ltd.*, 746 F. 2d 112, 118 (2d Cir. 1984) (finding the survey did not create question of fact on consumer confusion); *see also Scott Fetzer*, 381 F. 3d at 488 (same); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F. 3d

504, 518-19 (6th Cir. 2007) (holding that "[t]he district court did not err in refusing to assign the consumer study . . . considerable weight in its likelihood of confusion analysis"); *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1334 (N.D. Ga. 2008) (finding that the survey was "so flawed that it does not establish a genuine issue of material fact" on confusion). Given its fatal flaws, Mr. Sowers survey cannot create a material issue of fact on consumer confusion.

**2.    Maui Jim cannot meet its burden of establishing a likelihood of confusion.**

Without Mr. Sowers' flawed survey, Maui Jim has no meaningful, admissible evidence establishing a likelihood of confusion. Courts consider seven factors when determining likelihood of confusion: (1) similarity between the parties' marks; (2) similarity of the products; (3) area and manner of concurrent use; (4) the degree of care consumers are likely to exercise; (5) the strength of the plaintiff's mark; (6) the existence of actual confusion; and (7) whether the defendant intended to pass its product off as the product of the plaintiff. *See Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F. 3d 376, 381 (7th Cir. 1996). The proper weight of each factor varies by case. *See id.*

Because SmartBuyGlasses sells authentic Maui Jim sunglasses and is not using a competing mark, the first three factors are inapplicable or irrelevant here. *See, e.g.*, *Caterpillar, Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 921 (C.D. Ill. 2003) (finding that "[t]his is not a case where the Court can apply the traditional likelihood of confusion factors with any degree of comfort. For example, there are no competing trademarks at issue in this case, there is only one.")

The remaining factors weigh heavily in favor of SmartBuyGlasses. As for the degree of care consumers are likely to exercise, "courts must consider the level of sophistication of potential purchasers of the products and services at issue." *See Planet Hollywood (Region IV) v.*

*Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 882 (N.D. Ill. 1999). "Where consumers are sophisticated, deliberate buyers, confusion is less likely than where the consumers are prone to make uninformed, impulse purchases." *Id*.

Undisputed evidence from both parties establishes that potential consumers of Maui Jim products are sophisticated and take great care when purchasing sunglasses. ███████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████ This factor thus weighs in SmartBuyGlasses' favor.

Maui Jim also cannot show meaningful levels of actual confusion among consumers. Without Mr. Sowers' fatally flawed survey, Maui Jim can point to nothing more than

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████. (SOF ¶ 87.) But Maui Jim was unable to put ███████ in context – it had no evidence that ████████████████████████████████ in comparison to ███████████████████. (*Id*.) As a result, Maui Jim cannot create a triable issue on the existence of actual confusion.

Moreover, the few communications Maui Jim did receive from its consumers about SmartBuyGlasses are inadmissible hearsay. The communications are out-of-court statements being offered for the truth of the matter asserted (*i.e.*, that some customers thought their SmartBuyGlasses purchases may not be authentic) and are therefore inadmissible hearsay under Federal Rule of Evidence 802. Even if such communications were admissible, however, they could not create a dispute of material fact as "some incidence of actual confusion, if *de minimis*, is insufficient to establish a likelihood of confusion." *Bobak Sausage*, 805 F. Supp. 2d at 521 (citing *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F. 3d 722, 729 (7th Cir. 1998)); *see also Packman v. Chicago Tribune Co.*, 267 F. 3d 628, 645 (7th Cir. 2001) (holding "the district court properly discounted such de minimis evidence of confusion").

Maui Jim has no evidence suggesting that ███████████ consumer inquiries that Maui Jim has received represents anything more that *de minimis* confusion. Maui Jim's 30(b)(6) witness on the topic concedes that  ███████████████████████████████████████████. (SOF ¶ 86.)

There is also substantial evidence that some consumers will express concerns about authenticity regardless of the source of Maui Jim sunglasses. During discovery, Maui Jim produced communications f████████████████████████ ███████████████████████████████████ ███████. (SOF ¶ 88.) Specifically, c██████████████████ ███████████████████████████████████. (*Id.*) In one particular instance, ███████████████████████ ███████████████████████████████████ (*Id.*) In

another instance, ███████████████████████████████████████████

████████████████████████████████████ (*Id.*)

Maui Jim has done nothing to establish how the ███████████████ about

SmartBuyGlasses compares to the ███████████████ it receives about its own authorized

retailers. Absent any such context, the few instances Maui Jim points to regarding actual

confusion cannot create a dispute of material fact on the issue. *See King of the Mountain Sports,*

*Inc. v. Chrysler Corp.*, 185 F. 3d 1084, 1092-93 (10th Cir. 1999) (holding that *de minimis*

instances of actual confusion were insufficient to establish a likelihood of confusion); *Bobak*

*Sausage*, 805 F. Supp. 2d at 521 (finding *de minimis* instances of confusion insufficient to satisfy

burden of proving confusion).

Finally, there is no dispute of material fact as to whether SmartBuyGlasses intended to

pass its products off as Maui Jim sunglasses. "Intent to 'palm off' requires a determination that

the alleged infringer intentionally appropriated the goodwill of the trademark owner for its own

use." *Planet Hollywood*, 80 F. Supp. 2d at 884. Maui Jim has adduced no evidence suggesting

that SmartBuyGlasses intended to palm off its own products as those of Maui Jim. Indeed, the

products SmartBuyGlasses sold *were* Maui Jim sunglasses, clearly labeled as such.

It is also undisputed that SmartBuyGlasses' website contains disclaimers on every page

stating that SmartBuyGlasses is not owned by or affiliated with of any manufacturer unless

expressly stated otherwise. (SOF ¶ 48.) Courts have recognized that "a disclaimer expressly

declaring that the seller is 'not affiliated' with the owner of the trademark or is 'not an authorized

distributor' of the trademark owner's products has been held to be an effective means of

preventing confusion in the minds of consumers as to affiliation with the owner of the

trademark." *Standard Process, Inc. v. Banks*, 554 F. Supp. 2d 866, 869 (E.D. Wis. 2008)

(granting defendant's motion for summary judgment based on finding that resale of supplements through website did not give rise to likelihood of confusion).

In *Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280 (W.D. La. 1991), for example, the defendant sold the plaintiff's hair care products without the plaintiff's authorization but placed a written disclaimer on its shelves stating that it was "not an authorized distributor" of Matrix Essential products. *Id.* at 281. The court held that the disclaimer eliminated any consumer confusion as a matter of law. According to the court, "the only reasonable conclusion is that Drug Emporium's disclaimer effectively prevents confusion in the minds of consumers as to affiliation with Matrix . . . ." *Id.* at 282. As a result, the court granted summary judgment to the defendant on the plaintiff's Lanham Act claims. *Id.*

The same applies here. SmartBuyGlasses includes a disclaimer on every page of its site stating that it is "not owned by or affiliated with the brands it sells unless stated otherwise." (SOF ¶ 48.) As in *Matrix Essential*, that disclaimer eliminates any potential consumer confusion as a matter of law. The likelihood of confusion factors therefore weigh strongly in SmartBuyGlasses' favor, and this Court should grant SmartBuyGlasses summary judgment on Maui Jim's Section 32(1) and 43(a) claims.

### F.     SmartBuyGlasses Has Not Engaged In Any False Advertising

This Court should also grant SmartBuyGlasses summary judgment on Maui Jim's false advertising claim for the independent reason that Maui Jim cannot point to a single false statement that SmartBuyGlasses has made in any advertising about its sales of Maui Jim sunglasses.

To prevail on a Section 43(a) claim for false advertising, a plaintiff must prove: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment

of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Hot Wax*, 191 F. 3d at 819. Moreover, to recover damages, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages. *Id*. at 819-20.

Here, Maui Jim cannot point to any false statement SmartBuyGlasses has made or any false advertising it has engaged in about its Maui Jim products. With regard to its Maui Jim plano sunglasses, SmartBuyGlasses truthfully advertises that it sells 100% authentic Maui Jim sunglasses that it does not physically alter in any way. Moreover, as noted above, SmartBuyGlasses includes disclaimers on every page stating that it is "is not owned by or affiliated with the brands it sells unless stated otherwise" and that "[a]ll trademarks and brand names shown on our pages are the property of their respective companies which retain all rights." (SOF ¶ 48.) Thus, Maui Jim has no basis for a false advertising claim on the ███ of SmartBuyGlasses' sales of plano Maui Jim sunglasses.

As for the ███ of SmartBuyGlasses sales involving Maui Jim sunglasses with prescription lens add-ons, as set forth above, SmartBuyGlasses fully disclosed that customers were customizing their purchases with lenses from third-party lens manufacturers. (SOF ¶¶ 54-59.) SmartBuyGlasses' website stated, under a capitalized header reading "PRESCRIPTION LENSES," that the lenses were "SmartBuyGlasses Prescriptions" and noted that "All of *our* lenses come with" a variety of features. (SOF ¶ 54.) (emphasis added). SmartBuyGlasses also included a hyperlink on the same page, titled "Read more about our Prescription Lenses," which contained additional detail about SmartBuyGlasses' third-party lenses. (SOF ¶ 55.) The

Prescription Lenses Guide made clear that customers may select either "House Brand" or "Essilor" lenses – *not* Maui Jim prescription lenses. (SOF ¶ 56.) Nowhere in the purchase process did SmartBuyGlasses state or imply that customers were buying Maui Jim prescription lenses. (SOF ¶¶ 54-59.) Maui Jim thus cannot create a triable issue on its false advertising claim concerning the Maui Jim plano sunglasses sold with the prescription add-on. This Court should therefore grant summary judgment in SmartBuyGlasses' favor on Maui Jim's claim under Section 43(a) of the Lanham Act.

### G. Maui Jim's Dilution Claim Fails Because SmartBuyGlasses' Activities Do Not Tarnish Or Blur SmartBuyGlasses' Marks

Maui Jim's claim that SmartBuyGlasses' sales of authentic Maui Jim sunglasses somehow dilute the strength of Maui Jim's marks in violation of Section 43(c) of the Lanham Act is similarly unavailing. To prevail on a dilution claim under Section 43(c), a plaintiff must show that (1) its mark is famous; and (2) the defendant's use of an identical or similar mark creates a likelihood of dilution through blurring or tarnishment. *See S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1020 (N.D. Ill. 1998). SmartBuyGlasses concedes that Maui Jim's mark is famous. Even so, Maui Jim cannot show that SmartBuyGlasses' activities either tarnish or blur Maui Jim's marks.

"Dilution by blurring . . . occurs where consumers mistakenly associate the famous mark with goods and services of the junior mark." *Planet Hollywood*, 80 F. Supp. 2d at 897 (quoting *Ringling Bros-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F. 3d 449, 452 (4th Cir. 1999)). To maintain an action for dilution by blurring, a plaintiff must show that (1) the defendant used a junior mark sufficiently similar to the famous mark to evoke a mental association between the two marks; and (2) the defendant's use causes actual economic harm to the plaintiff. *Id*. By contrast, "[t]he *sine qua non* of tarnishment is a finding that

plaintiff's mark will suffer negative associations through defendant's use." *Id*. at 904 (quoting *Hormel Foods Corp. v. Jim Henson Prods., Inc*., 73 F. 3d 497, 504 (2d Cir. 1996)). Tarnishment generally arises when the defendant's use links the plaintiff's mark to shoddy quality or "where a distinctive mark is depicted in a context of sexual activity, obscenity, or illegal activity." *Id*.

SmartBuyGlasses' activities do not tarnish or blur Maui Jim's marks in any way. As an initial matter, SmartBuyGlasses' sales of Maui Jim sunglasses cannot cause blurring with another mark because there is no other mark involved. Nor do SmartBuyGlasses' sales of authentic Maui Jim sunglasses create negative associations among consumers. As for the plano sunglasses, SmartBuyGlasses sales of genuine, unaltered Maui Jim products that do not even leave the box before shipment cannot tarnish Maui Jim's marks in any way. (SOF ¶ 6.)

The Seventh Circuit's decision in *Ty Inc. v. Perryman*, 306 F. 3d 509 (7th Cir. 2002), is directly on point. There, the plaintiff, the manufacturer of Beanie Babies, alleged that the defendant violated Section 43(c) by reselling second-hand Beanie Babies online. *Id*. at 510. The court held that the defendant's conduct neither tarnished nor blurred the plaintiff's mark. *Id*. at 514. As the court found, "Perryman is not producing a product, or a service . . . that is distinct from any specific product; rather, she is selling the very product to which the trademark sought to be defended against her 'infringement' is attached." *Id*. The Seventh Circuit also noted that the plaintiff's argument would eliminate secondary markets and aftermarkets:

> You can't sell a branded product without using its brand name, that is, its trademark. Supposing that Perryman sold only Beanie Babies . . . we would find it impossible to understand how she could be thought to be blurring, tarnishing, or otherwise free riding to any significant extent on Ty's investment in its mark. To say she was would amount to saying that if a used car dealer truthfully advertised that it sold Toyotas, or if a muffler manufacturer truthfully advertised that it specialized in making mufflers for installation in Toyotas, Toyota would have a claim of trademark infringement.

As the Seventh Circuit held, rather than diluting the plaintiff's marks, the defendant was "doing what she has a perfect right to do, namely sell Beanie Babies." *Id*. at 515. The Seventh Circuit's holding applies with equal force to SmartBuyGlasses' sales of authentic Maui Jim sunglasses, and Maui Jim's dilution claim fails as a matter of law.

Similarly, Maui Jim cannot demonstrate a dispute of material fact regarding whether SmartBuyGlasses' use of third-party lenses for the prescription lens add-ons actually tarnished Maui Jim's marks. *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433-34 (2003) (holding that proof of actual dilution is required rather than a likelihood of dilution). As noted above, SmartBuyGlasses fully disclosed to consumers that they were customizing authentic plano frames with third-party lenses. And Maui Jim has produced no evidence suggesting that SmartBuyGlasses' third-party lenses are inferior in any way to Maui Jim's own prescription lenses or that the prescription lens add-ons decreased the value of Maui Jim's marks. Maui Jim's failure to bring forth such evidence is fatal to its tarnishment claim. *See also Moab Indus. v. FCA U.S., LLC,* No. 12-cv-8247, 2016 WL 5859700, at *9 (D. Ariz. Oct. 6, 2016) (holding that plaintiff's resale of defendant's vehicles did not violate Section 43(c) where there was no evidence that plaintiff's products were inferior or decreased value of defendant's marks). SmartBuyGlasses is therefore entitled to summary judgment on Maui Jim's dilution claim.

## II. MAUI JIM'S CLAIM UNDER THE UDTPA IS DUPLICATIVE OF ITS LANHAM ACT CLAIMS AND FAILS FOR THE SAME REASONS AS THOSE CLAIMS

Because SmartBuyGlasses is entitled to summary judgment on Maui Jim's Lanham Act claims, it is also entitled to summary judgment on Maui Jim's claim under the UDTPA. It is well-settled law that, where a UDTPA claim is based on the same facts as a claim arising under the Lanham Act, the court must resolve the UDTPA claim under the principles of the Lanham Act. *See SB Designs v. Reebok Intern., Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004) (granting

summary judgment on UDTPA claim given summary judgment ruling on Lanham Act claim).

Maui Jim's UDTPA claim thus fails for the same reasons as its Lanham Act claims.

## III. MAUI JIM CANNOT DEMONSTRATE A DISPUTE OF MATERIAL FACT REGARDING WHETHER SMARTBUYGLASSES INFRINGED MAUI JIM'S COPYRIGHTS

This Court should grant SmartBuyGlasses summary judgment on Maui Jim's copyright infringement claim for three reasons: (1) Maui Jim failed to timely register some of the alleged copyrighted works; (2) Maui Jim did not meet its burden of showing that SmartBuyGlasses used Maui Jim's copyrighted images; and (3) SmartBuyGlasses' use of the alleged copyrighted images was permissible under the doctrine of fair use.

### A. Maui Jim Did Not Register Some Of The Relevant Images Within The Three Month Period Required By Applicable Law

To begin with, SmartBuyGlasses is entitled to summary judgment on several of the purported copyrighted images because Maui Jim did not timely register its copyrights in those images.

"Statutory damages are available only for [copyright] infringement after registration, and then only if the registration occurred within three months of the work's publication." *FM Indus., Inc. v. Citicorp Credit Services, Inc.*, 614 F. 3d 335, 336 (7th Cir. 2010) *see also Intercom Ventures, LLC v. City Media Plus Ex-Yu Streaming*, No. 12 C 10275, 2013 WL 4011052, at *5 (N.D. Ill. Aug. 6, 2013) ("§ 412 provides that a copyright plaintiff seeking statutory damages or attorney fees must complete copyright registration before infringement occurs (or, for published works, within three months of first publication)").

Here, Maui Jim failed to timely register many the allegedly copyrighted photographs. Specifically, Maui Jim has asserted copyright claims over 22 photographs that, by Maui Jim's own admission, were taken between March 27, 2015 and October 22, 2015, but were not

registered until August 8, 2016. (SOF ¶ 108.) Maui Jim cannot seek statutory damages or attorneys' fees for any of those photographs, and it has not even sought to prove that it suffered actual damages.[4] SmartBuyGlasses is therefore entitled to summary judgment on Count IV as to those 22 photographs.

### B. Maui Jim Cannot Meet Its Burden Of Proof On Infringement

As for Maui Jim's timely registered images, SmartBuyGlasses is entitled to summary judgment because Maui Jim failed to establish that Maui Jim owned the copyright in any images on the SmartBuyGlasses site. "[A] copyright plaintiff bears the burden of proving infringement." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 665 (2014). To meet this burden, a plaintiff must prove: (1) that the plaintiff owned a valid copyright; and (2) that the defendant copied original elements of the work. *See Peters v. West*, 692 F. 3d 629, 632 (7th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Maui Jim has done nothing to meet this burden. While Maui Jim's complaint includes photographs that it alleges SmartBuyGlasses used on its website, Maui Jim has proffered no evidence – through witness testimony or otherwise – establishing that SmartBuyGlasses *actually used* Maui Jim's images on its site. Maui Jim's 30(b)(6) witness testified only that he looked at SmartBuyGlasses' website and thought that the disputed images looked similar to Maui Jim's copyrighted works. (SOF ¶ 105.) Maui Jim has done nothing else to link the disputed images to Maui Jim's copyrights. Maui Jim, for example, never produced the original image files from SmartBuyGlasses' website that it claims were infringing, never contacted the photographer of the original images, and has no evidence it ever examined the metadata of the images on SmartBuyGlasses' site. (SOF ¶ 106.) Maui Jim thus failed to satisfy its burden of establishing

---

[4] Nor is injunctive relief appropriate because SmartBuyGlasses removed all images in question just after the filing of the lawsuit in October 2016.

that SmartBuyGlasses used Maui Jim's copyrights, and SmartBuyGlasses is therefore entitled to summary judgment on Maui Jim's copyright claim.

### C.   SmartBuyGlasses' Use Of Maui Jim's Copyrights Was Permissible Under The Doctrine Of Fair Use

Even if Maui Jim had met its burden of proof to show that SmartBuyGlasses used Maui Jim's copyrighted images, SmartBuyGlasses' use of those images is protected under the doctrine of fair use. Fair use is an affirmative defense to copyright infringement that "confers a privilege to use copyrighted material in a reasonable manner without the owner's consent." *Forest River v. Heartland Recreational Vehicles, LLC*, 753 F. Supp. 2d 753, 761 (N.D. Ind. 2010). Section 107 sets forth four factors that a court should consider in determining whether a particular use is fair: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. These factors are "a checklist of things to be considered rather than a formula for decision." *Ty, Inc. v. Publications Intern, Ltd.*, 292 F. 3d 512, 522 (7th Cir. 2002).

SmartBuyGlasses concedes that it operates a commercial enterprise. SmartBuyGlasses also concedes that, if it used Maui Jim's images, it used the entirety of those images. But, "there is no per se rule against copying in the name of fair use an entire copyrighted work if necessary." *Forest River*, 753 F. Supp. 2d at 765 (citing *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F. 3d 624, 629 (7th Cir. 2003)). Moreover, the remaining factors two weigh in SmartBuyGlasses' favor on the question of fair use.

As for the second factor, the nature of the copyrighted work, "[w]orks that are creative in nature are closer to the core of intended copyright protection than are more fact-based works."

*Forest River*, 753 F. Supp. 2d at 764. Maui Jim's allegedly copyrighted images are works of low creativity designed mainly to display Maui Jim sunglasses for purchase. As such, the images are not at the core of what copyright laws were designed to protect. This factor is therefore, at best, neutral for Maui Jim. *See FAMEFlynet, Inc. v. Jasmine Enterprises, Inc.*, 344 F. Supp. 3d 906, 913 (N.D. Ill. 2018) (holding that the factor regarding nature of copyrighted work was "neutral" where "photographs appear to fall somewhere in the grey area between factual and creative work").

The fourth factor, the effect of use upon the potential market, is typically the most important. *See Kienitz v. Sconnie Nation LLC*, 766 F. 3d 756, 758 (7th Cir. 2014). Crucially, "[t]he relevant market is the market for 'the copyrighted work.'" *Forest River*, 753 F. Supp. 2d at 765; 17 U.S.C. § 107(4). Thus, Maui Jim must show that SmartBuyGlasses' activity lowered the value for the pictures at issue, not the value of Maui Jim's sunglasses business as a whole. But Maui Jim has presented no evidence proving that the images at issue have independent commercial value. Maui Jim is not in the business of selling photographs of sunglasses; it is in the business of selling sunglasses. Maui Jim does not claim that it sells the images to third parties. Nor has it established the licensing fee, if any, that it charges its retailers to use those images. (SOF ¶ 107.) Thus, Maui Jim cannot show that there is any market at all for its photographs, or that the photographs have independent value. *See Forest River*, 753 F. Supp. 2d at 765 (holding "the Floor Plan does not, itself, have a market or any value that was impacted by the Defendant's use. The Plaintiff does not purport to be in the business of selling RV floor plans, but to be in the business of manufacturing and selling travel trailers.") (internal quotation omitted). SmartBuyGlasses is therefore entitled to summary judgment on Maui Jim's copyright claim based on the fair use defense.

## IV.   SMARTBUYGLASSES DID NOT TORTIOUSLY INTERFERE WITH MAUI JIM'S AUTHORIZED RETAILER AGREEMENTS

Maui Jim's claim that SmartBuyGlasses tortiously interfered with Maui Jim's authorized retailer agreements is similarly without merit. As an initial matter, Maui Jim cannot produce any admissible evidence demonstrating that SmartBuyGlasses was aware pre-litigation of the provisions that it allegedly induced Maui Jim's retailers to breach. Moreover, Maui Jim did not even produce in discovery a single contract for an authorized retailer for which it claims SmartBuyGlasses tortiously interfered ██████████████████████████████ ██████████████████████████████████████.

To state a claim for tortious interference, a plaintiff must establish five elements: (1) a valid and enforceable contract; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) that a breach occurred and was caused by the defendant's conduct; and (5) damages. *See Healy v. Metropolitan Pier & Exposition Authority*, 804 F. 3d 836, 842 (7th Cir. 2015) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154-55 (1989)). Maui Jim cannot establish any of these elements.

### A.   Maui Jim Has No Evidence Of Valid And Enforceable Contracts And Therefore That Any Contract Was Breached

Maui Jim failed to produce any contract with any U.S. authorized retailer from which SmartBuyGlasses procured any product. (SOF ¶¶ 102-103.) Although Maui Jim produced sample contracts for the United States, it has known SmartBuyGlasses' suppliers for more 18 months but has failed to produce any contracts with such suppliers. Because Maui Jim did not produce those contracts, it cannot establish as a matter of law their existence or validity. *See Saleh v. Merchant*, No. 14-cv-09186, 2018 WL 287748, at *10 (N.D. Ill. Jan. 4, 2018) (holding

that tortious interference claim failed where plaintiff did not identify the terms of the purported

contract).



███████ (SOF ¶¶ 102-103.) And, the clauses at issue in ██████████████ are

unenforceable as a matter of law. Only "valid and enforceable" contracts can serve as the basis

for a tortious interference claim. *See Voelker v. Porsche Cars N. America, Inc*., 353 F. 3d 516,

528 (7th Cir. 2003) (dismissing tortious interference claim where plaintiff "failed to allege the

existence of a valid and enforceable contract"); *Hay Group, Inc. v. Bassick*, No. 02 C 8194, 2005

WL 2420415, at *10 (N.D. Ill. Sept. 29, 2005) (granting summary judgment on tortious

interference claim because noncompete agreement was unenforceable). Further, an

unenforceable clause in an otherwise enforceable contract cannot be the basis of a tortious

interference claim. *See, e.g.*, *Instant Tech., LLC v. Defazio*, 40 F. Supp. 3d 989, 1016 (N.D. Ill.

2014) (holding that "[b]ecause the court finds the Restrictive Covenants unenforceable, Instant's

claim for tortious interference with contract . . . also fails.")

Here, the restrictions in downstream distribution in the ████████ agreement are

unenforceable and cannot serve as the basis of a tortious interference claim. Specifically, ██████

(SOF ¶ 104.) S██████████████

██████████████████. (SOF ¶ 104.) EU states –

██████████ – all incorporate and agree to enforce the EU statutes and directives. *See*

https://europa.eu/european-union/law_en (*last visited* August 1, 2019).

Article 101 of the Treaty on the Functioning of the European Union ("TFEU") prohibits agreements between manufacturers and retailers that "affect trade between Member States and which have as their object or effect the prevention, restriction or distortion of competition within the internal market . . ." TFEU, Art. 101(1). Among other things, Article 101(1) expressly prohibits agreements that (1) "directly or indirectly fix purchase or selling prices or any other trading conditions"; and (2) "limit or control production, markets, technical development, or investment." Article 101(1) therefore prohibits manufacturers from limiting redistribution of their products to specific resellers or sale of their products on the Internet. *See, e.g.*, Case C-439/09, *Pierre Fabre Dermo-Cosmétique SAS v. President de l'Autorité de la Con- currence, Ministre de l'Économie, de l'Industrie et de l'Emploi*, 2011 E.C.R. I-09419 (holding that restrictions on redistribution of goods – such as over the Internet -- violates Article 101(1) of the TFEU); *see also* Commission Regulation 330/2010 of 20 April 2010 on the application of Article 101(3) of the Treaty on the Functioning of the European Union to categories of vertical agreements and concerted practices. In particular, Regulation 330/2010 Art. 4(b)(iii) prohibits restrictions of sales to "unauthorized" distributors, which is exactly what ███████████ ███ agreement purports to do. It is therefore unenforceable under EU law.

Accordingly, Maui Jim has failed to produce a single valid and enforceable contract as the first element of the tortious interference test requires. Further, because Maui Jim cannot produce a single valid and enforceable contract, it also cannot establish SmartBuyGlasses' intentional and unjustified inducement of a breach of a contract or that such a breach occurred and was caused by the SmartBuyGlasses' conduct – the third and fourth elements of the test.

**B.    Maui Jim Has No Evidence That SmartBuyGlasses Knew The Terms Of The Alleged Contractual Provisions It Claims Were Breached**

Maui Jim similarly cannot establish that SmartBuyGlasses knew that any authorized retailer agreement prohibited retailers from supplying SmartBuyGlasses with authentic Maui Jim sunglasses. Maui Jim does not contend that it ever sent SmartBuyGlasses a copy of its authorized retailer contracts. (SOF ¶¶ 100-101.) Nor does it claim that it ever told SmartBuyGlasses about the specific terms of those agreements. (SOF ¶ 101.) ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ (SOF ¶ 33.) ██████████████████████████████

████████████████████████████████████████████████████

██████████████ (*Id.*) Nor is there a single piece of evidence suggesting that any other retailer provided SmartBuyGlasses with a copy if its retailer agreement with Maui Jim. (SOF ¶ 100.)

At most, Maui Jim can show that SmartBuyGlasses knew generally that Maui Jim had contractual relationships with its authorized retailers. Such generalized knowledge, however, cannot support a tortious interference claim absent evidence that SmartBuyGlasses was aware of the specific anti-diversion provisions it allegedly induced Maui Jim's retailers to breach. The Seventh Circuit's decision in *Feldman v. Allegheny Intern. Inc.*, 850 F. 2d 1217 (7th Cir. 1988), is instructive in this regard. In that case, the plaintiff alleged that a defendant tortiously interfered with a letter of intent giving the plaintiff an exclusive right to negotiate a deal to acquire Allegheny. *Id.* at 1224. The Seventh Circuit affirmed the district court's grant of a directed verdict to the defendant because the plaintiff could not establish that the defendant knew of the exclusivity provision in the letter of intent. As the court noted, the plaintiff's evidence "merely demonstrate[s] that [the defendant] had general knowledge of the letter of intent, but not its

terms, and in particular, not that it contained an exclusivity provision." *Id*. Because the plaintiff "failed to demonstrate that [the defendant] knew of his exclusive negotiations with Allegheny," the defendant was entitled to a directed verdict. *Id*.; *see also Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands International, Inc*., 616 F. Supp. 2d 805, 825 (N.D. Ill. 2009) (granting summary judgment where defendant was unaware of relevant contract or its terms). The Seventh Circuit's holding applies with equal force here, and Maui Jim cannot avoid summary judgment on its tortious interference claim by pointing to SmartBuyGlasses' knowledge that Maui Jim had contractual relationships with its authorized retailers or that Maui Jim believed that SmartBuyGlasses' sales of Maui Jim products violated those contracts.

Because Maui Jim cannot establish that SmartBuyGlasses knew the specific anti-diversion terms of any particular contract with an authorized retailer from which it bought Maui Jim sunglasses, Maui Jim's fails to satisfy the second prong of the tortious interference test, and its claim fails as a matter of law.

C.    **Maui Jim Cannot Establish That It Has Suffered Any Damages As A Result Of SmartBuyGlasses' Alleged Tortious Interference**

Even if Maui Jim could establish the other elements of tortious interference, it has absolutely no evidence at all that it suffered any damages as a result of SmartBuyGlasses' alleged conduct. Maui Jim failed to quantify any damages whatsoever in discovery and, in any event, received compensation for each sale of Maui Jim sunglasses SmartBuyGlasses made because each of them was originally sourced through Maui Jim. (SOF ¶¶ 7, 32.) Maui Jim's tortious interference claim therefore fails. *See Integrated Geomics, Inc. v. Kyrpides*, No. 06-c-6906, 2010 WL 375672, at *13 (N.D. Ill. Jan. 26, 2010) (holding that failure to establish damages was fatal to tortious interference claim).

Because Maui Jim cannot establish any of the elements of tortious interference, this Court should grant SmartBuyGlasses summary judgment on the claim.

## V. SMARTBUYGLASSES IS ENTITLED TO SUMMARY JUDGMENT ON ITS DEFAMATION AND UNJUST ENRICHMENT COUNTERCLAIMS

In addition to Maui Jim's claims, SmartBuyGlasses has brought two counterclaims that are pending before this Court: (1) a claim for defamation under Illinois law based on Maui Jim's statements to customers falsely accusing SmartBuyGlasses of selling counterfeit or stolen goods; and (2) an unjust enrichment claim that seeks to recover the profits that Maui Jim has unjustly earned through its defamatory statements and improper use of trademark and copyright law. SmartBuyGlasses is entitled to summary judgment on both claims.

### A. Maui Jim's Statements About SmartBuyGlasses Were Defamatory As A Matter Of Law[5]

Maui Jim knowingly and repeatedly published defamatory *per se* statements that SmartBuyGlasses sells stolen and counterfeit goods. As discussed above, Maui Jim has no evidence whatsoever that SmartBuyGlasses sells anything but genuine Maui Jim sunglasses. Yet,



. (SOF ¶ 97.) Those statements are defamatory *per se* under Illinois law.

---

[5] In its counterclaim, SmartBuyGlasses alleged that Maui Jim defamed SmartBuyGlasses by issuing a press release that, among other things, accused SmartBuyGlasses of selling counterfeit goods. *See* Amended Counterclaims, ¶ 28 [Dkt. 259]. On May 10, 2019, this Court dismissed SmartBuyGlasses' defamation counterclaim as it pertained to the press release. *See* 5/10/19 Memorandum Opinion and Order [Dkt. 358]. SmartBuyGlasses has moved to reconsider that ruling, which is currently pending before the Court. *See* Defendants' Motion for Reconsideration of ECF 358 With Respect to Counts II, IV, V, and VI of Defendants' Counterclaim or, in the Alternative, For Dismissal of Plaintiff's Tortious Interference Claim. [Dkt. 378]. In the event the Court grants SmartBuyGlasses' motion for reconsideration, SmartBuyGlasses reserves the right to file a motion for summary judgment regarding the defamatory statements in Maui Jim's press release.

The first step in a defamation analysis is to determine whether a particular statement is defamatory. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 10 (1992). Statements are defamatory if they "tend[] to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Id*. Illinois recognizes two forms of defamation: defamation *per quod* and defamation *per se*. *Id*. Defamation *per se* claims involve four categories of statements that Illinois courts consider so apparent on their face that they give rise to a cause of action for defamation without a showing of special damages. *See Bryson v. News America Publications, Inc*., 174 Ill. 2d 77, 87 (1996). The categories are: "(1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Kolegas*, 154 Ill. 2d at 10.

Maui Jim's statements clearly fall within at least *per se* categories 1, 3 and 4. By stating that SmartBuyGlasses sold "stolen" goods, Maui Jim imputed the commission of a criminal offense. And, by stating that SmartBuyGlasses sold "counterfeit," "damaged," or "used" goods, Maui Jim imputed both a want of integrity in SmartBuyGlasses' duties of office and words that prejudiced SmartBuyGlasses in its business. The statements are therefore defamatory *per se*.

Because the statements are defamatory *per se*, SmartBuyGlasses is entitled to summary judgment if the statements were false – and the undisputed evidence demonstrates that they were false.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

Maui Jim has admitted that these statements were false. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Maui Jim's statements are therefore false.

While SmartBuyGlasses was damaged by Maui Jim's statements, damages are presumed in a case involving defamation *per se*. *See Bryson*, 177 Ill. 2d at 87 (holding that "[i]f a defamatory statement is actionable per se, the plaintiff need not plead or prove actual damage to her reputation to recover."). Accordingly, because the undisputed evidence demonstrates Maui Jim's statements were false, SmartBuyGlasses is entitled to summary judgment on its defamation claim.

## B.  Maui Jim Has Unjustly Enriched Itself At SmartBuyGlasses' Expense

Finally, this Court should grant summary judgment on SmartBuyGlasses' claim that Maui Jim has unjustly enriched itself at SmartBuyGlasses' expense because Maui Jim has benefitted from SmartBuyGlasses' sales of Maui Jim products while alleging baseless intellectual property and tort claims. "Unjust enrichment is a quasi-contract theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Prudential Ins. Co.*

*of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008). To establish a claim for unjust enrichment, a party must establish that (1) the defendant unjustly retained a benefit to the detriment of the plaintiff; and (2) allowing the defendant to retain the benefit would violate "fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris, Inc.*, 656 F. 3d 511, 516 (7th Cir. 2011). An unjust enrichment claim under Illinois law may be predicated either on a contract theory or a tort theory. *See ShopLocal LLC v. Cairo, Inc.*, No. 05 C 6662, 2006 WL 495942, at *2 (N.D. Ill. Feb. 27, 2006).

The undisputed evidence here clearly satisfies both these elements. As to the first element (that Maui Jim retained a benefit to the detriment of SmartBuyGlasses), an unjust enrichment claim may be premised on either a direct or indirect conferral of benefits. *See Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 853 (N.D. Ill. 2006) (holding that consumer stated a valid claim that car manufacturer unjustly enriched itself by failing to disclose defective brake systems). Maui Jim has unjustly retained benefits to the detriment of SmartBuyGlasses in at least two ways. First, Maui Jim's defamatory statements enabled it to divert business away from SmartBuyGlasses and toward its own authorized retailers and its own website, thereby enriching Maui Jim at SmartBuyGlasses' expense. Second, Maui Jim actively supported, and profited handsomely from, each of SmartBuyGlasses' sales that it now claims were unlawful.

███████████████████████████████████████████████████████████████

████ (SOF ¶ 32.) Every single pair of Maui Jim glasses that SmartBuyGlasses purchased –

██████████████████████████ – was sourced from Maui Jim either from or through one of its authorized retailers. (SOF ¶ 5, 6, 30.) That means that Maui Jim's authorized retailers paid Maui Jim for every single pair of Maui Jim sunglasses that SmartBuyGlasses sold. Moreover, Maui

Jim receives sales through SmartBuyGlasses' website that it might not have otherwise received because of SmartBuyGlasses' discounted prices. (SOF ¶ 111.)

It would be fundamentally unfair and would violate the principles of justice, equity, and good conscience to permit Maui Jim to retain these benefits. As detailed above, Maui Jim actively supported SmartBuyGlasses' sales of Maui Jim products from 2011 through the filing of the complaint. Yet despite its active support for many years, Maui Jim is now seeking to use trademark and copyright laws to shut down SmartBuyGlasses' lawful sales and disgorge SmartBuyGlasses' profits because those sales occur outside Maui Jim's authorized distribution channels. It would violate fundamental notions of justice to allow Maui Jim to retain these benefits while pursuing concocted intellectual property and tort claims – as well as defaming SmartBuyGlasses over those sales. *See Greenbrier Leasing Co. LLC v. Carroll*, No. 07 C 2884, 2008 WL 4866037, at *6 (N.D. Ill. June 17, 2008) (granting summary judgment to plaintiff on unjust enrichment claim where defendant's retention of benefit "violate[d] fundamental principals of justice, equity, and good conscience"); *BancInsure v. BMB Elec. Co. Inc.*, No. 03 C 2692, 2004 WL 765124, at *3 (N.D. Ill. April 8, 2004) (same).

Because Maui Jim's conduct violates both elements of unjust enrichment, SmartBuyGlasses is therefore entitled to summary judgment on its unjust enrichment claim.

## **CONCLUSION**

For all these reasons, this court should grant SmartBuyGlasses' motion for summary judgment on all counts of Maui Jim's complaint, and should also grant SmartBuyGlasses summary judgment on its defamation and unjust enrichment counterclaims.

Dated: August 2, 2019              Respectfully submitted,

SMARTBUY GURU ENTERPRISES, MOTION GLOBAL LTD., SMARTBUYGLASSES SOCIETÁ A RESPONSABILITÁ LIMITATA, SMARTBUYGLASSES OPTICAL LIMITED

By: /s/ Stephen J. Rosenfeld
One of their attorneys

Stephen J. Rosenfeld (Bar No. 6216769)
Jennifer D. Armstrong
Jacob D. Radecki
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 642-6103
Attorneys for Defendants
Email: srosenfeld@mcdonaldhopkins.com
        jarmstrong@mcdonaldhopkins.com
        jradecki@mcdonaldhopkins.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 2, 2019, Stephen J. Rosenfeld, an attorney, caused to be served a true and correct copy of the foregoing document via electronic mail on all counsel of record who have consented to electronic service.

/s/ *Stephen J. Rosenfeld*

{8153304:7 }