# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAUI JIM, INC., an Illinois Corporation ) | |
| ) | Case No. 1:16-cv-09788 |
| Plaintiff, ) | |
| ) | District Judge Marvin E. Aspen |
| v. ) | Magistrate Judge Jeffrey T. Gilbert |
| ) | |
| SMARTBUY GURU ENTERPRISES, a ) | |
| Cayman Island Company, MOTION ) | |
| GLOBAL LTD., a Hong Kong Company, ) | |
| SMARTBUYGLASSES SOCIETÁ A ) | |
| RESPONSABILITÁ LIMITATA, an ) | |
| Italian Company, SMARTBUYGLASSES ) | |
| OPTICAL LIMITED, a Hong Kong ) | |
| company, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING MOTIONS FOR SUMMARY JUDGMENT PURSUANT TO DECEMBER 5, 2019 COURT ORDER

Pursuant to this Court's December 5, 2019 order [Dkt. 495], SmartBuyGlasses hereby submits this supplemental brief regarding authorized sales and the first sale doctrine.

{8528512:2 }

**INTRODUCTION**

Maui Jim attempts to avoid the first sale doctrine through its disingenuous suggestion that SmartBuyGlasses sells non-genuine eyewear. But the overwhelming evidence – as detailed in SmartBuyGlasses' briefing – is that SmartBuyGlasses procured its inventory of genuine Maui Jim eyewear from highly reputable industry suppliers. Indeed, the vast majority of SmartBuyGlasses' sales of Maui Jim eyewear came through authorized retail codes of ▬▬▬ ▬▬▬▬▬▬▬ with their clear knowledge. Despite having the burden of proof on the issue of whether an authorized first sale occurred, Maui Jim failed to offer any evidence whatsoever that SmartBuyGlasses' inventory of Maui Jim eyewear were anything but genuine goods procured through Maui Jim's authorized supplier network.

This brief addresses three related questions that the Court's request for supplemental briefing on the first sale doctrine implicates: (1) which party bears the burden of proof on the issue; (2) whether all sales in the procurement chain need to be authorized to implicate the first sale doctrine; and (3) whether the requirements of an authorized first sale is satisfied here. As stated above, Maui Jim – as the party seeking to establish a trademark violation – bears the burden of proof to establish an unauthorized first sale. Once a first sale is established, the doctrine does not require that subsequent sales are authorized or that the defendant establish the complete chain of title. Here, while Maui Jim bears the burden of proof, the undisputed evidence establishes an authorized first sale existed as SmartBuyGlasses obtained every pair of Maui Jim sunglasses that it sold from or through Maui Jim's authorized retailers.

**I.  MAUI JIM BEARS THE BURDEN OF PROVING AN AUTHORIZED FIRST SALE DID NOT OCCUR**

As an initial matter, Maui Jim, as the party pursuing claims for trademark infringement, bears the burden of proving that an authorized first sale did not occur. "The exhaustion or first-

sale rule is not an affirmative defense. Rather, it defines an area of commerce beyond the reach of trademark law." *Taylor Made Golf Co., Inc. v. MJT Consulting Group, LLC*, 265 F. Supp. 2d 732, 739 (N.D. Tex. 2003). Thus, "it remains Plaintiff's burden to persuade the Court that the summary-judgment evidence demonstrates beyond peradventure Plaintiff's right to judgment as a matter of law." *Id*. 739-40 (holding that the plaintiff was not entitled to summary judgment because it could not prove that the defendant acquired the products through a means other than an authorized first sale); *see also See Food Sciences Corp. v. Nagler*, No. 09-1798, 2010 WL 1186203, at *7 (D.N.J. March 22, 2010) (holding that the first-sale doctrine is not an affirmative defense and that the plaintiff has the burden of proving factors rendering the doctrine inapplicable). Maui Jim therefore has the burden of proof to establish that the initial sale of the goods **was not** authorized. It has not done so and cannot do so.

## II. ONCE AN INITIAL AUTHORIZED SALE OCCURS, A MANUFACTURER LOSES ALL RIGHT UNDER THE LANHAM ACT TO CONTROL ITS DISTRIBUTION CHAIN

Under the first sale doctrine, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Sebastian Int'l Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). Once that initial first sale occurs, "[r]esale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Id*.; *see also Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 818 (N.D. Ill. 2016) (citing *Longs Drug Stores*).

Because the first sale doctrine eliminates a manufacturer's ability to control product distribution after the initial sale, Maui Jim's argument that it must have authorized every sale in the chain leading to SmartBuyGlasses is without merit. In its reply brief in support of its motion for summary judgment, Maui Jim asks two questions that it apparently believes are critical to the first sale inquiry: "[h]ow many intermediate transactions were behind each unauthorized

retailer's purchase of the MAUI JIM-branded sunglasses?" and "were *all* of the intermediate companies authorized Maui Jim retailers?" (Maui Jim Reply at 7.) Neither question is relevant. All that matters is whether Maui Jim made an authorized first sale to one of its retailers. Once that initial first sale occurred, Maui Jim lost all right under the Lanham Act to control the distribution chain of its product or to prevent resale to SmartBuyGlasses.

Indeed, the issue of an authorized first sale typically arises in cases where it is obvious that no initial sale occurred, most commonly where a licensee manufactures goods for the licensor and then seeks to sell those goods after the license expires. In *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000), a case Maui Jim has previously relied on, the defendant manufactured and sold Nolan Ryan sports memorabilia pursuant to a license between the parties. *Id*. at 373. The defendant continued to sell the products after the license expired, and Ryan sued for trademark infringement. *Id*. at 375. The court held that the first sale doctrine did not apply because there was no sale prior to the defendant acquiring them and Ryan had not authorized the subsequent sale by the defendant. *Id*. at 383; *see also Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc*., 979 F. Supp. 224, 231 (S.D.N.Y. 1997) (holding that first sale doctrine did not apply where licensee attempted to sell overruns it manufactured for the plaintiff); *Asmodus, Inc. v. Junbiao Ou*, No. 16-2551, 2017 WL 2954360, at *16 (C.D. Cal. May 12, 2017) (finding that "the products at issue here were never sold by Asmodus so the First Sale Doctrine provides no defense to Plaintiffs' claims").

Unlike these expired license cases, "the majority of cases in which the exhaustion doctrine was properly invoked were cases that involve downstream purchasers who purchased the goods from the plaintiff, or from someone to whom the plaintiff had initially sold those goods." *Microban Products Co. v. API Industries, Inc*., No. 14 Civ. 41, 2014 WL 1856471, at *11

(S.D.N.Y. May 8, 2014). As discussed below, that is exactly what happened here – SmartBuyGlasses is a downstream purchaser from someone who bought directly from Maui Jim.

And a party relying on the first sale doctrine is *not* required to trace the complete chain of title for each product sold. Maui Jim has not cited a single case imposing that requirement, and SmartBuyGlasses is unaware of any such case. To the contrary, the court in *Longs Drug Stores*, the seminal case on this issue, held that the first sale doctrine applied without requiring the defendant to establish the precise source of its products. *See Longs Drug Stores*, 53 F. 3d at 1074. The Ninth Circuit recognized that Longs "*presumably* purchases Sebastian products from a salon or distributor who sells the product to Longs in violation of its agreement with Sebastian." *Id*. (emphasis added). In finding that the first sale doctrine shielded Longs from trademark liability, the Ninth Circuit held that "[n]othing in the record suggests that Longs did anything more than stock and resell genuine Sebastian products lawfully acquired on the open market under the true Sebastian trademark—the precise conduct excluded from the Lanham Act by the 'first sale' rule." *Id*. at 1076. The same holds true here. Whether Maui Jim claims that SmartBuyGlasses should not have been entitled to purchase inventory from or through Maui Jim's authorized retailers, Maui Jim's initial sale to those authorized retailers put the goods into the stream of commerce, and Maui Jim cannot control subsequent sales under the first sale doctrine.

### III. THE UNCONTROVERTED EVIDENCE IS THAT EACH PAIR OF MAUI JIM SUNGLASSES SMARTBUYGLASSES SOLD WAS THE SUBJECT OF AN AUTHORIZED FIRST SALE

Maui Jim has not come close to meeting its burden of proving that SmartBuyGlasses acquired its products through something other than an authorized first sale. To the contrary, SmartBuyGlasses has established that it acquired every pair of Maui Jim sunglasses from or through Maui Jim's authorized retailers. (SOF ¶ 32.) SmartBuyGlasses submitted a declaration

from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – detailing how ▮▮▮▮▮▮ purchased its Maui Jim sunglasses directly from Maui Jim's sales representatives. (SOF ¶ 34-44.) Besides ▮▮▮▮▮▮, eleven other retailers who supplied SmartBuyGlasses with Maui Jim products (and represented, along with ▮▮▮▮▮▮, more than 97% of SmartBuyGlasses' total supply) further re-affirmed to SmartBuyGlasses in writing that each pair of Maui Jim sunglasses they sold to SmartBuyGlasses was entirely authentic. (SOF ¶ 18.) Finally, SmartBuyGlasses' CEO and its head of supply chain has attested that SmartBuyGlasses sources **all** of its products through trusted industry suppliers who they know acquire genuine goods through legitimate means. (SOF ¶ 1.)

Maui Jim has offered nothing to rebut this evidence. Nor has Maui Jim offered any alternative source – plausible or otherwise – for SmartBuyGlasses' Maui Jim products other than an authorized first sale from Maui Jim to one of its authorized retailers. Indeed, Maui Jim personnel have recognized internally for more than a decade that SmartBuyGlasses obtains its Maui Jim products from or through Maui Jim's authorized retailers. In September 2008, Michelle Munson, a Maui Jim representative from its headquarters, emailed SmartBuyGlasses' customer service account stating "Obviously, you must have procured these products from one of Maui Jim's authorized accounts." (SOF ¶ 23.) Senior Maui Jim executives confirmed that understanding in depositions in this case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Maui Jim's inability to offer any other plausible source of its

products besides authorized first sales distinguishes this case from the expired license cases on which Maui Jim has previously relied. Unlike those cases, the undisputed evidence is that Maui Jim *did* release all those sunglasses SmartBuyGlasses purchased into the stream of commerce by selling them to an authorized retailer.

Other than the expired license cases, Maui Jim has relied only on *RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 WL 7780975 (E.D. Mich. Dec. 23, 2014), a case in which the defendant randomly found items in a storage locker and resold them on Amazon, without any way of knowing from whom the items were purchased or even how the items ended up in the locker. *Id*. at 3. Those bizarre circumstances bear no relation to ▓▓▓▓▓▓ direct purchases from Maui Jim's own sales representatives, or to SmartBuyGlasses' sourcing of Maui Jim products through trusted, established industry stalwarts.

Maui Jim's failure to establish any evidence of an unauthorized first sale or SmartBuyGlasses obtaining fake goods (despite years of discovery) mandates application of the first sale doctrine. Even if SmartBuyGlasses were to have the burden of proof on the issue (and it does not), SmartBuyGlasses' uncontroverted testimony and evidence that it obtained each pair of Maui Jim sunglasses from or through Maui Jim's authorized retailers is sufficient to entitle SmartBuyGlasses to summary judgment. At a bare minimum, even if SmartBuyGlasses were to have the burden of proof on the issue, SmartBuyGlasses' undisputed evidence creates a factual dispute that warrants denial of Maui Jim's motion for summary judgment.

IV. **THE FIRST SALE DOCTRINE IS NOT INAPPLICABLE SIMPLY BECAUSE MAUI JIM WAS PURPORTEDLY UNAWARE THAT SMARTBUYGLASSES WAS THE ULTIMATE PURCHASER**

During the parties' original briefing, Maui Jim appeared to suggest that its sales to ▓▓▓▓ ▓▓▓▓ do not constitute authorized first sales because Maui Jim allegedly was unaware that ▓▓▓▓ ▓▓▓▓ was buying the products to resell them to SmartBuyGlasses. The law is clear, however, that

{8528512:2 }                                          6

an authorized first sale does not become unauthorized simply because the plaintiff was unaware of all relevant facts or the ultimate purchaser of the goods. Indeed, courts have applied the first sale doctrine even where the initial sale was procured by outright fraud. In *Hidalgo Corp. v. J. Kugel Designs, Inc.*, No. 05-20476, 2006 WL 8433271 (S.D. Fla. Nov. 6, 2006), for example, the plaintiff argued that the first sale doctrine was inapplicable because the defendant had used a sham corporation to make the initial purchase. *Id*. at *4. The plaintiff argued that the sales were not "legitimate," and thus that the first sale doctrine did not apply. The court rejected that argument, noting that trademark law is designed to protect consumers from fraud, not to protect trademark owners from "being deceived by those who they choose to sell their product." *Id*. at *5. As the court held, "[t]here is no dispute that a sale (as that term is understood under the first sale doctrine) in fact occurred here . . . Plaintiff thus placed the goods in the stream of commerce. That is all that the first sale doctrine requires." *Id*. at *6; *see also Ferris Mfg. Corp. v. Thai Care Co. Ltd.*, No. 17-cv-01024, 2019 WL 2541000, at *5 (N.D. Tex. May 23, 2019) (holding that "Ferris has not cited any authority to show a purportedly fraudulent purchase makes a first sale unauthorized under the Lanham Act . . . the undersigned concludes that the circumstances of the sales from Ferris to Thai Care does not prevent the first sale doctrine from otherwise applying to the facts of this case.")

      SmartBuyGlasses' purchases of Maui Jim products through ▮▮▮▮▮▮ occurred with the full knowledge and support of Maui Jim, including i▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, even if Maui Jim were unaware that the products it sold to ▮▮▮▮▮▮ were destined for SmartBuyGlasses (which it was not) – or even if ▮▮▮▮▮▮ actively deceived Maui Jim about its ultimate customer (which it did not) – the first sale doctrine would nonetheless apply. After placing its goods into commerce, Maui Jim has no basis to avoid the first sale doctrine.

| | |
|---|---|
| Dated: January 15, 2020 | Respectfully submitted,<br><br>SMARTBUY GURU ENTERPRISES, MOTION GLOBAL LTD., SMARTBUYGLASSES SOCIETÁ A RESPONSABILITÁ LIMITATA, SMARTBUYGLASSES OPTICAL LIMITED<br><br>By: /s/ Stephen J. Rosenfeld<br>One of their attorneys<br><br>Stephen J. Rosenfeld (Bar No. 6216769)<br>Jennifer D. Armstrong<br>Jacob D. Radecki<br>MCDONALD HOPKINS LLC<br>300 North LaSalle, Suite 1400<br>Chicago, IL 60654<br>Phone: (312) 642-6103<br>Attorneys for Defendants<br>Email: srosenfeld@mcdonaldhopkins.com<br>         jarmstrong@mcdonaldhopkins.com<br>         jradecki@mcdonaldhopkins.com |

**CERTIFICATE OF SERVICE**

This is to certify that on January 15, 2020, Stephen J. Rosenfeld, an attorney, caused to be served a true and correct copy of the foregoing document via electronic mail on all counsel of record who have consented to electronic service.

/s/ *Stephen J. Rosenfeld*

{8528512:2 }