UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MAUI JIM, INC.**, an Illinois Corporation, ) ) | |
| ) | No. 16-cv-09788 |
| Plaintiff, ) | |
| ) | Hon. Marvin E. Aspen |
| v. ) | |
| ) | |
| **SMARTBUY GURU ENTERPRISES**, a Cayman Island Company, **MOTION GLOBAL LTD.**, a Hong Kong Company, **SMARTBUYGLASSES SOCIETÀ A RESPONSABILITÀ LIMITATA**, an Italian company, **SMARTBUYGLASSES OPTICAL LIMITED**, a Hong Kong company, ) ) ) ) ) ) ) ) ) | **FILED UNDER SEAL** |
| Defendants. ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON 'THE ISSUE OF AUTHORIZED FIRST SALES AS PART OF THE FIRST SALE DOCTRINE' PURSUANT TO THE COURT'S DECEMBER 5, 2019 ORDER (ECF 495)**

John Gabrielides
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606

Michelle M. Mikol
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 20006

Attorneys for Plaintiff

## I. INTRODUCTION

On December 5, 2019, the Court asked the parties to file supplemental briefing on their motions for summary judgment regarding "the issue of authorized first sales as part of the first sale doctrine." (ECF 495.) A "first sale" authorized by the trademark owner is a necessary threshold condition for application of the "first sale" doctrine, also known as the "exhaustion" doctrine[1]. Without an authorized first sale, the defense cannot be invoked. Under the first sale doctrine, the right of a producer to control the distribution of its trademarked product terminates *after the first sale* of the product, unless one of several well-defined exceptions to the first sale doctrine applies, such as the material differences exception and sponsorship exception. *Delta Air Lines, Inc. v. TDM Investments, LLC*, No. 18-CV-968, 2018 WL 3819108, at *2 (N.D. Ill. Aug. 10, 2018). Because SmartBuy cannot establish that the MAUI JIM-branded sunglasses it sold were the subject of authorized "first sales" by Maui Jim, the first sale defense does not apply.

## II. THE 'FIRST SALE' DOCTRINE REQUIRES AN AUTHORIZED 'FIRST SALE'

This fundamental principal is explained in the *Ryan*, *RFA Brands*, *Microban*, and *Liz Claiborne* cases discussed below.[2] Indeed, the Courts in *Ryan*, *RFA Brands*, and *Microban* granted summary judgment or a preliminary injunction to the plaintiffs over the defendants' reliance on the first sale doctrine, precisely because the defendants had failed to prove that the plaintiffs had authorized the initial sales of the products.[3]

---

[1] *See Microban Prods. Co. v API Industries, Inc.*, No. 14 Civ. 41(KPF), 2014 WL 1856471, *9 (S.D.N.Y. May 8, 2014). *See also* ECF 259, at 31-32 (SBG raises affirmative defense of "Exhaustion," based on the "first sale doctrine and/or the doctrine of exhaustion").

[2] *See also* Maui Jim's summary judgment briefs: ECF 427, at 26-27; ECF 464, at 19-22; ECF 490, at 5-14.

[3] Even if a reseller establishes that the goods were the subject of an authorized first sale by the trademark owner, that does not end the first sale doctrine analysis. If the goods that are later sold materially differ from those that were sold with the trademark owner's authorization, or if the

1.   *Ryan v. Volpone Stamp*

Nolan Ryan, the Hall of Fame pitcher, licensed the defendant to manufacture and sell NOLAN RYAN watches, train sets, teddy bears, and more. 107 F.Supp.2d 369, 373 (S.D.N.Y. 2000). After Ryan terminated the license, defendant continued to manufacture and sell NOLAN RYAN-branded goods as it had done pre-termination. *Id*. at 374-75. Ryan sued for trademark infringement. Defendant invoked the first sale doctrine, relying on the fact that Ryan had authorized the production of the goods before termination and the goods were manufactured before termination. *Id*. at 379. Therefore, defendant argued, the goods were genuine and "consumers received exactly what they expected," making confusion impossible. *Id*. at 380.[4]

The Court rejected the argument, explaining the critical role of the "*first sale*" in the "first sale" doctrine. Even though the NOLAN RYAN-branded goods that defendant sold after termination of the license had been manufactured before the license was terminated, they were not genuine.

---

reseller sells the goods in a manner that creates confusion, then the first sale doctrine does not apply *even if* the trademark owner authorized the first sale of the goods. *See Microban*, 2014 WL 1856471, *12-13 (Court finds that even if defendant had been able to establish the required "authorized first sale," defendant would not have been able successfully invoke the doctrine because both the "material difference" and "sponsorship" exceptions applied); *RFA Brands LLC v. Beauvais*, No 13-14615, 2014 WL 7780975, *9 (E.D. Mich. Dec. 23, 2014) (defendant's reliance on the first sale doctrine would have failed under the "material difference" exception even if plaintiffs had authorized the first sales). As discussed in Maui Jim's main briefs, the sunglasses that SBG sold materially differ from the sunglasses that Maui Jim sold, and SBG sold MAUI JIM-branded sunglasses by using the MAUI JIM mark in a manner that gave the false impression that SBG was one of Maui Jim's authorized retailers. (ECF 427, 27-35; ECF 464, 19-25; ECF 490, 14-30.) Thus, in this case, the first sale defense fails for *each* of three independent reasons.

[4] SBG makes the same argument here: "SmartBuyGlasses provided consumers exactly what they expected: authentic Maui Jim eyewear (identical to what Maui Jim sells)." ECF 483, at 30.

> Defendant erroneously concentrates on the date the goods were manufactured rather than whether their subsequent sale was authorized. …
>
> *If the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established*.

*Id*. at 382 (emphasis added). Because Nolan Ryan did not approve of the original sale of the products:

> [defendant] had no right to sell Nolan Ryan products after its license was terminated regardless of when the goods were manufactured. Plaintiff had not authorized the initial sale or released them into the stream of commerce. As such, neither the first sale rule nor the genuine goods doctrine serves as a proper defense in the case at bar.

*Id*. at 383. The Court emphasized the indispensability of an authorized first sale in the first sale doctrine: "the goods sold by [defendant] after termination of the license cannot be considered genuine because Plaintiff never consented to the sale of those goods in the first sale." *Id*.

### 2. *RFA Brands v. Beauvais*

This case similarly illustrates that a product that was not the subject of an authorized first sale by the trademark owner is not covered by the first sale doctrine. The *RFA Brands* plaintiffs sold electronic devices through authorized distributors and retailers. No. 13-14615, 2014 WL 7780975, *1 and *4 (E.D. Mich. Dec. 23, 2014). Defendant was not one of plaintiffs' distributors or retailers but nevertheless obtained and re-sold plaintiffs' products, at prices below plaintiffs' wholesale prices. 2014 WL 7780975, *1.

Defendant relied on the first sale doctrine but the Court held, on summary judgment, that the doctrine did not apply because defendant could not establish that "the trademark owner authorized the first sale of the goods." *Id*. at *7. The Court found "defendant at best can only *speculate* as to the origin of such products." *Id*. at 8 (emphasis in original). The goods were not genuine because "goods are not genuine goods until their sale is authorized by the trademark owner." *Id*. at *8 (quoting *FURminator, Inc. v. Kirk Weaver Enterprises, Inc.*, 545 F. Supp. 2d

3

685, 690 (N.D. Ohio 2008)). "Accordingly, defendant has not established that the first sales of the products at issue were 'authorized' and plaintiffs are entitled to summary judgment on their trademark infringement claim." 2014 WL 7780975, *8.[5]

### 3. *Microban Products v. API Industries*

In this case, the plaintiff supplied the defendant with a compound that defendant then incorporated into a product (trash bags) and sold under plaintiff's marks by license from plaintiff. No. 14 Civ. 41(KPF), 2014 WL 1856471, *1 and *2 (S.D.N.Y. May 8, 2014). After the agreement terminated, defendant continued to use plaintiff's marks in selling the trash bags arguing that it had an "'absolute' right" to do so because defendant was selling "genuine goods." 2014 WL 1856471, *3, 5, and 9. The Court disagreed and entered summary judgment in plaintiff's favor, concluding that the first sale doctrine did not apply because defendant "introduced no evidence indicating that [plaintiff] approved any initial sale." *Id*. at *10. That was a threshold requirement: "the exhaustion doctrine applies only if [plaintiff] authorized the initial sale." *Id*. at *10. Defendant's right to use plaintiff's marks – even on trash bags that defendant had manufactured while the agreement remained in effect – expired when the agreement terminated.

> The exhaustion doctrine is inapplicable here because [defendant] had no legal right to sell Microban-branded trash bags after the Agreement terminated, regardless of when the bags were manufactured, because [plaintiff] "had not authorized the initial sale or released them into the stream of commerce." *Id*. at *11 (quoting *Ryan*, 107 F.Supp.2d at 382-83).

---

[5] The particular manner by which the *RFA Brands* defendant obtained the plaintiffs' products – he found them in a storage locker he had purchased at an auction – is a distinction without a difference. The Court rejected the first sale doctrine because the *RFA Brands* defendant could not establish the threshold fact that plaintiffs had authorized the original sale of the products. Had defendant been able to do so, he could have relied on the first sale doctrine *even though* he found them in the storage locker (but would have had to also clear the "material difference" and "sponsorship" hurdles before succeeding; see footnote 3, *supra*).

4

### 4. *Liz Claiborne v. Mademoiselle Knitwear*

The defendant in this case manufactured knitwear for plaintiff to sell under plaintiff's mark. 979 F.Supp. 224, 226 (S.D.N.Y. 1997). The defendant was also authorized to sell the knitwear to third parties but the parties disagreed "on the scope of the authority granted by [plaintiff]" to defendant to sell the knitwear to third parties. *Id*. After defendant sold knitwear to third parties in circumstances that plaintiff believed exceeded defendant's authority, plaintiff filed suit. Defendant insisted that the knitwear was "genuine" because defendant had manufactured it for plaintiff as per their agreement. The Court explained the oversimplicity of defendant's argument: "The question of whether a good is genuine … presupposes the initial sale was authorized." *Id*. at 230. If defendant sold knitwear that was not the subject of an authorized first sale, the garments were not genuine and could not be protected by the first sale doctrine:

> Whether the goods are genuine is merely duplicative of the central question: whether [defendant's] alleged sales of, and offers to sell, [plaintiff's] garments were authorized. If the first sale by [defendant] was not authorized, then the garments cannot be genuine for infringement purposes. *Id*. at 231.[6]

### 5. *Iberia*

SmartBuy acknowledges that the first sale doctrine requires an authorized first sale. In opposing Maui Jim's motion for summary judgment, SmartBuy tells the Court that SmartBuy has "presented irrefutable evidence that its Maui Jim sunglasses result from a legitimate first-sale." (ECF 458, at 9.) SmartBuy's incorrect interpretation of the facts notwithstanding (*see* ECF 490, 5-14), SmartBuy's argument carries meaning only if a legitimate first sale is legally required under

---

[6] The Court denied plaintiff's motion for summary judgment because there was a genuine issue as to the scope of authority plaintiff had granted to defendant.

5

the first sale doctrine. And the law shows, clearly, that a legitimate first sale is required.[7]

Even the primary case Smart relies on, *Iberia Foods Corp. v. Romeo*, 150 F.3d 298 (3d Cir. 1998),[8] illustrates that an authorized first sale is a necessary element of the first sale doctrine. The plaintiff in *Iberia* gave a third party the exclusive right to manufacture and sell certain products to distributors in Puerto Rico under the plaintiff's trademark. The distributors then sold the products to retailers in Puerto Rico, who sold the products to the defendant in Puerto Rico. When defendant offered the products for sale in the U.S., plaintiff sued. The Court found in defendant's favor because plaintiff had authorized the third party manufacturer's first sale of the products to distributors. That critical fact is missing here. As Maui Jim explains in its summary judgment briefs (and briefly recaps below), SmartBuy has failed to establish that Maui Jim authorized the first sale of ████████████████████ MAUI JIM-branded sunglasses that SmartBuy bought from its suppliers. That difference makes *Iberia* irrelevant, and makes the first sale doctrine inapplicable for that reason alone.[9]

### III. APPLICATION OF THE CASE LAW THAT REQUIRES AN AUTHORIZED 'FIRST SALE'

As Maui Jim explains in its summary judgment briefs, SmartBuy cannot establish that the MAUI JIM-branded sunglasses it sold were the subject of authorized "first sales" by Maui Jim.

---

[7] *See also* ECF 483, at 29, where SmartBuy argues: "Maui Jim cites no cases for the proposition that a legitimate first sale to an authorized retailer becomes unauthorized simply because the company does not like where the product ultimately ends up." This argument is incorrect on many fronts but for present purposes, its significance lies in SmartBuy's acknowledgement that "a legitimate first sale" is required. SmartBuy would have no reason to make the argument if the law were otherwise. But SmartBuy does *not* establish that the MAUI JIM-branded sunglasses it sold were the subject of legitimate, authorized "first sales", as is required. *See* Section III, *infra*.

[8] *See* ECF 416, at 20, 25; ECF 458, at 4, 9, 15, and 16; and ECF 483, at 22, 30, and 31.

[9] The *Iberia* Court also found that the "material difference" exception did not apply, and the plaintiff in *Iberia* did not argue that the "sponsorship" exception applied. *See* footnote 2, *supra* The case before this Court differs from *Iberia* in each of those respects as well.

(ECF 490, 5-14; ECF 464, 19-22.) That alone ends SmartBuy's reliance on the first sale doctrine. Indeed, SmartBuy asserts that ▇ purchased ▇ pairs of MAUI JIM-branded sunglasses using fraudulent and deceptive means through the ▇ scheme it devised with ▇. (ECF 490, at 8-10.) Where the first sale is fraudulent, the sale is not authorized and a downstream reseller's sale of the products that were the subject of the fraudulent transaction does not qualify for protection under the first sale doctrine, or else the reseller would "profit from the malfeasance of an intermediary." *FURminator*, 545 F. Supp. 2d at 690, 691 (granting summary judgment over infringer's reliance on the first sale doctrine). *See also Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1237 (10th Cir. 2006) (defendants did not lawfully acquire plaintiffs' goods where they "purchased Products using deceptive means, not the open market, relying on tortious act like using a fake name and dishonestly stating that they operated a network of ten salons to purchase Products").

SmartBuy has also failed to establish that Maui Jim authorized the first sale of ▇ pairs sunglasses to ▇ companies to whom Maui Jim has never sold a single pair of MAUI JIM sunglasses. (ECF 490, at 7-8; 10-14.) And SmartBuy has failed to establish that ▇ pairs of MAUI JIM-branded sunglasses it purchased from ▇, and ▇ pairs of MAUI JIM-branded sunglasses it purchased from ▇ were the subject of authorized first sales by Maui Jim. (*Id*. at 10-14.)

IV. **CONCLUSION**

Because SmartBuy has presented no evidence that ▇ ▇ of MAUI JIM-sunglasses it sold were the subject of authorized first sales by Maui Jim, the "first sale" doctrine does not apply as a matter of law. *See*, *e.g.*, *Ryan*, 107 F.Supp.2d at 382 ("If the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.")

7

Respectfully submitted,

*/s/ John Gabrielides*
John Gabrielides
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606

Michelle M. Mikol
BARNES & THORNBURG LLP
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 20006

Attorneys for Plaintiff